4:22-cv-02789-YGR
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **In re**<br><br>**ANTHONY SCOTT LEVANDOWSKI,**<br><br>Debtor. | District Court Case Nos.<br>    4:22-cv-02781-YGR<br>    4:22-cv-02783-YGR<br>    4:22-cv-02786-YGR<br>    4:22-cv-02789-YGR<br>    (Jointly Administered) |
| **THE UNITED STATES OF AMERICA on behalf of THE INTERNAL REVENUE SERVICE**<br><br>- and -<br><br>**CALIFORNIA FRANCHISE TAX BOARD,**<br><br>Appellants,<br><br>v.<br><br>**ANTHONY SCOTT LEVANDOWSKI,**<br><br>Appellee.<br><br>*All papers shall be filed in the Lead Case,*<br>*No. 22-cv-02781-YGR* | Bankruptcy Court Case No.<br>    3:20-bk-30242-HLB |

**APPELLANT FRANCHISE TAX BOARD'S OPENING BRIEF
[APPEAL OF TAX ORDER]**

Rob Bonta
Attorney General of California
Tamar Pachter
Senior Assistant Attorney General
Michael D. Gowe
Supervising Deputy Attorney General

Cara M. Porter
Deputy Attorney General
State Bar No. 266045
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3508
  Fax:  (415) 703-5480
  E-mail:  Cara.Porter@doj.ca.gov
*Attorneys for Appellant*
*California Franchise Tax Board*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................. 1

Jurisdictional Statement .................................................. 2

Statement of Issues Presented ........................................... 3

Standard of Appellate Review ............................................ 4

Statement of the Case ..................................................... 5

Summary of Argument .................................................... 10

Argument .................................................................... 12

 I. The Bankruptcy Court Did Not Have Authority to Rule That the Settlement Payment Is Not Includable in Gross Income ........................................................... 12

  A. The Bankruptcy Court Did Not Determine the Amount or Legality of A Tax As Permitted by Statute, but Issued an Impermissible Declaratory Judgment about An Issue that Precedes A Tax Determination ..................................................... 12

  B. Section 505 Does Not Permit Declaratory Judgments about Hypothetical Future Tax Consequences ................................................... 16

  C. All Caselaw the Bankruptcy Court Relied on to Make Its Findings Concerned Determinations of Liability for Past Tax Periods Where the Liability Already Existed ............................................... 19

 II. To the Extent the Bankruptcy Court Determined a Tax, It Violated Basic Principles of Tax Procedure and Accounting, and Acted on an Insufficient Evidentiary Record ......................................................... 20

 III. The Bankruptcy Court Erred In Finding the Settlement Payment is Not a Taxable Insurance Payment ..................... 24

  A. There Is No Blanket Exemption Against Taxation of Insurance Payments ................................... 24

i

**TABLE OF CONTENTS**
**(continued)**

Page

B.  The Indemnification Agreement Cannot Be an Insurance Contract Because It Fails to Meet the Definition of Insurance ...............................................27

    1.  Insurance to Protect from Past Unlawful Conduct Does Not Exist in California ...............27

    2.  The Indemnification Agreement Lacks Risk Distribution Among Similarly Situated Persons ........................................................29

C.  Judicial Estopped Should Apply Because Debtor Previously Argued that the Indemnification Agreement is Not an Insurance Contract.....................31

Conclusion.................................................................................35

Certificate of Compliance .......................................................36

Certificate of Service ..............................................................37

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allis-Chalmers Corporation v. Goldberg (In re Hartman Material Handling Systems, Inc.)*
141 R.R. 802 (Bankr. S.D.N.Y. 1992) ................................................................. 17

*Bachmann v. Comm'r*
97 T.C.M. (CCH) 1278 (T.C. 2009) .................................................................... 25

*Bank of the West v. Super. Ct.*
2 Cal.4th 1254 .................................................................................................... 28

*Celerio v. United Fin. Cas. Co.*
2020 WL 5702109 (S.D. Tex. 2020) .................................................................... 33

*Central Valley AG Enterprises v. United States*
531 F.3d 750 (9th Cir. 2008) ............................................................................... 19

*Certain Underwriters at Lloyd's London v. ConAgra Grocery Products Co., LLC*
77 Cal.App.5th 729 (2022) .................................................................................. 27

*Clougherty Packing Co. v. Commissioner*
811 F.2d 1297 (9th Cir. 1987) ............................................................................. 30

*Cullinan v. McColgan*
80 Cal.App.2d 976 (Cal. Ct. App. 1947) ...................................................... 14, 21

*Grimes v. Comm'r*
806 F.2d 1451 (9th Cir. 1986) ............................................................................. 26

*In re Barr's Estate*
104 Cal.App.2d 506 (1951) ................................................................................. 29

*In re Dycoal, Inc.*
327 B.R. 220 (Bankr. W.D. Pa. 2005) ................................................................. 16

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re GYPC, Inc.*
  2021 WL 4618410 (Bankr. S.D. Ohio October 5, 2021).............................13, 15

*In re Hartman Material Handling Systems, Inc.*
  141 B.R. 802 (Bankr. S.D.N.Y. 1992)..................................................................17

*In re Holly's, Inc.*
  172 B.R. 545 (Bankr. W.D.Mich. 1994) ..............................................................17

*In re Kilen*
  129 B.R. 538 (Bankr. N.D. Ill. 1991) ..................................................................20

*In re UAL Corp.*
  336 B.R. 370 (Bankr. N.D. Ill. 2006) ......................................................16, 17, 18

*Internal Revenue Service v. Sulmeyer (In re Grand Chevrolet, Inc.)*
  153 B.R. 296 (C.D. Cal. 1993) .................................................................13, 15, 16

*Matter of Inter Urban Broad. of Cincinnati, Inc.*
  180 B.R. 153 (Bankr. E.D. La 1995)...........................................................13, 15

*Nat'l Private Truck Council v. Oklahoma Tax Comm'n*
  515 U.S. 582 (1995)...............................................................................12, 18

*Neilson v. United States of America (In re Olshan)*
  356 F.3d 1078 (9th Cir. 2004) ...........................................................................4

*New Colonial Ice Co. v. Helvering*
  292 U.S. 435 (1934)..............................................................................26

*New Hampshire v. Maine*
  532 U.S. 742 (2001)....................................................................34, 35

*Pa. Cement Co. v. Bradley Contracting Co.*
  274 F. 1003 (S.D.N.Y. 1920)..............................................................21

# TABLE OF AUTHORITIES
## (continued)

Page

*Pac. Rock & Gravel Co. v. United States*
297 F.2d 122 (9th Cir. 1961) .............................................................20

*Pope Estate Co. v. Johnson*
43 Cal.App.2d 170 (1941) ...........................................................21, 22

*Schwartz v. Gardiner (In re Schwartz)*
192 B.R. 90 (Bankr. N.J. 1996) ........................................................20

*Simpson v. Burkart (In re Simpson)*
557 F.3d 1010 (9th Cir. 2009) .............................................................4

*Smith v. United States Internal Revenue Service (In re Smith)*
828 F.3d 1094 (9th Cir. 2016) .............................................................4

*Standard Ins. Co v. Morrison*
537 F.Supp.2d 1142 (D. Mont. 2008)................................................29

*Title Ins. Co. v. State Bd. of Equalization*
4 Cal.4th 715 (1992) .........................................................................29

*Towers v. United States of America (In re Pac.-Atl. Trading Co.)*
64 F.3d 1292 (9th Cir. 1995) .............................................................21

*United States v. Hinkson*
585 F.3d 1247 (9th Cir. 2009) (en banc) .............................................4

*United States v. Lewis*
340 U.S. 590 (1951).........................................................................12

*Unsecured Creditors' Comm. of Goldblatt Bros., Inc. v. United States*
*(In re Goldblatt Bros., Inc.)*
106 B.R. 522 (Bankr. N.D. Ill. 1989) ................................................17

*Welch v. Helvering*
290 U.S. 111 (1933).........................................................................26

v

## TABLE OF AUTHORITIES
### (continued)

Page

*White v. United States*
305 U.S. 281 (1938)........................................................................26

*Wyatt v. Northwestern Mutual Ins. Co. of Seattle*
304 F.Supp. 781 (D. Minn. 1969)....................................................30

**STATUTES**

United States Code, Title 11
§ 505.................................................................................................3
§ 505(a)....................................................................................*passim*
§ 1146(b)...................................................................................17, 18

United States Code, Title 26
§ 1............................................................................................22, 24
§ 61..........................................................................................22, 24
§ 63...............................................................................................22
§§ 101-140.....................................................................................22
§ 101(a)(1).....................................................................................25
§ 105(a).........................................................................................25
§ 105(b).........................................................................................25
§§ 151-153.....................................................................................22
§ 161-199A.....................................................................................22
§ 441(a)...................................................................................12, 20
§ 441(b).........................................................................................20
§ 441(c).........................................................................................20
§ 6401...........................................................................................23
§ 6402...........................................................................................23
§ 7701(a)(23)..................................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page

United States Code, Title 28
   § 157(a) ...................................................................................................3
   § 157(b)(1) .............................................................................................3
   § 157(b)(2)(A) ........................................................................................3
   § 158(a) ..................................................................................................4
   § 158(a)(1) .............................................................................................3
   § 158(c)(1)(B) ........................................................................................3
   § 1334 .....................................................................................................3
   § 1334(b) ............................................................................................2, 3

California Insurance Code
   § 22 .......................................................................................................27
   § 533 ...............................................................................................27, 32
   § 533.5 ..................................................................................................32
   § 2773 ...................................................................................................32
   § 2774 ...................................................................................................32

California Revenue and Taxation Code
   § 17010 ...........................................................................................14, 20
   § 17011 ...........................................................................................14, 20
   § 17021.7 ..............................................................................................22
   § 17041 ...............................................................................14, 20, 22, 24
   § 17071 ...........................................................................................22, 24
   § 17131 ..................................................................................................25
   §§ 17131-17158.3 ................................................................................22
   § 17132.5 ..............................................................................................25
   § 17141 ..................................................................................................25
   §§ 17201-17299.9 ................................................................................23
   § 17551 ..................................................................................................14
   §§ 19301-19443 ...................................................................................23

**COURT RULES**

Federal Rules of Bankruptcy Procedure
   Rule 8005(a)............................................................................................3

## TABLE OF AUTHORITIES
### (continued)

Page

OTHER AUTHORITIES

H. Rep. No. 95-595, 95th Cong., 1st Sess (1977)....................................................17

S. Rep. No. 95-989, 95th Cong., 2d Sess (1978)....................................................18

S. Rep. No. 95-1106, 95th Cong., 2d Sess (1978)...................................................18

## INTRODUCTION

The Bankruptcy Court erred in finding that it had authority under 11 U.S.C. section 505(a) (Section 505) to determine the taxability of a future payment that Uber Technologies, Inc. would make to Google LLC on behalf of Debtor Anthony Levandowski.  In 2020, Google obtained a $179 million judgment against Debtor for restitution and disgorgement after he pled guilty to trade secret theft related to his change in employment from Google to Uber, and the concurrent sale of Debtor's autonomous driving company to Uber.  As part of the company's sale and Debtor's employment agreement, Uber agreed through an indemnification agreement to pay Google for any judgment it obtained against Debtor concerning his past unlawful conduct.  The same day that Google obtained the judgment against him, Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

After two years of negotiations, Google, Uber, and Debtor agreed to settle the outstanding judgment that included Uber making a payment to Google on Debtor's behalf in an undisclosed amount.  Before the Bankruptcy Court approved the settlement agreement or confirmed Debtor's proposed plan of reorganization, Debtor sought the Bankruptcy Court's determination that the settlement payment did not constitute gross income for Debtor or his bankruptcy estate.  The Bankruptcy Court granted Debtor's motion by finding that it had jurisdiction to make such a declaration, and ruling that the payment could not be taxed as

Debtor's gross income because it was effectively an insurance payment and insurance payments are not taxable.

Debtor's motion was erroneous because Section 505(a) does not permit a court to declare the tax consequences of a proposed reorganization plan. Even if Section 505(a) allowed the Bankruptcy Court to make such a determination, the court erred by ruling that the settlement payment was effectively an insurance payment that was exempt from taxation because it does not meet the elements of non-taxable insurance in California. Unless reversed, the tax ruling expands the bankruptcy court's authority beyond what Congress has provided, invites debtors and creditors to request bankruptcy courts to issue prospective tax rulings, and erodes public trust in the voluntary tax system and the bankruptcy process. Accordingly, the Court should reverse the Bankruptcy Court's tax decision.

## JURISDICTIONAL STATEMENT

This is an appeal from a final order (Tax Order) of the United States Bankruptcy Court for the Northern District of California (Bankruptcy Court), entered May 3, 2022, in Debtor's Chapter 11 bankruptcy case, Case No. 3:20-bk-30242-HLB. 1-ER-FTB-(0001-0004) [Dkt. 1028].[1] The Bankruptcy Court had jurisdiction over the Chapter 11 case under 28 U.S.C. § 1334(b) and District Court

---

[1] Citations to FTB's Excerpts of Record are formatted as [volume number]-ER-FTB-([page number(s)]: [line number(s)]), followed by the Bankruptcy Court's docket number.

General Order 24, which refers all cases described in 28 U.S.C. § 1334(b) to the bankruptcy judges of the Northern District of California.  Assuming jurisdiction exists under 28 U.S.C. § 1334, the Bankruptcy Court had jurisdiction to enter the final order under 28 U.S.C. §§ 157(a), (b)(1) and (b)(2)(A).

FTB filed a notice of appeal from the Bankruptcy Court's order on May 3, 2022.  5-ER-FTB-(0860-0868) [Dkt. 1036].  Pursuant to 28 U.S.C. §§ 158(a)(1) and (c)(1)(B), and Rule 8005(a) of the Federal Rules of Bankruptcy Procedure, FTB filed a statement of election to have this appeal heard by the district court.  5-ER-FTB-(0861:24-26) [Dkt. 1036].

## STATEMENT OF ISSUES PRESENTED

FTB presents the following issues on appeal.

1.    Did the Bankruptcy Court lack authority to make a determination under 11 U.S.C. section 505(a) concerning a debtor's tax liability for a payment not yet made, in a tax period that has not concluded?

2.    Is a determination under 11 U.S.C. section 505 of the potential tax effects of a proposed plan of reorganization prior to confirmation of the plan of reorganization an impermissible advisory opinion?

3.    Did the Bankruptcy Court err in concluding that a third party's agreement to indemnify a taxpayer for actions the taxpayer performed prior to entering into the indemnification agreement was akin insurance?

## STANDARD OF APPELLATE REVIEW

In reviewing a bankruptcy court's decision, the District Court is authorized to affirm, reverse, modify, or remand the Bankruptcy Court's ruling. 28 U.S.C. § 158(a).

An appellate court reviews the bankruptcy court's interpretation of the Bankruptcy Code and other statutory authorities *de novo*. *Smith v. United States Internal Revenue Service (In re Smith)*, 828 F.3d 1094, 1096 (9th Cir. 2016); *Simpson v. Burkart (In re Simpson)*, 557 F.3d 1010, 1014 (9th Cir. 2009).

The issue of whether a specific agreement, when considered together with the debtor's intent, demonstrate that the product's primary purpose and effect are insurance or another financial instrument is a factual determination subject to review for clear error. *In re Simpson*, *supra*, 557 F.3d at 1014.  A bankruptcy court clearly errs if its findings were illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc).

The issue of whether insurance is excluded from taxable gross income is a question of law, reviewed *de novo*. *Neilson v. United States of America (In re Olshan)*, 356 F.3d 1078, 1083 (9th Cir. 2004).

## STATEMENT OF THE CASE

In late 2015, Debtor considered leaving Google, and the self-driving car project within Google that Mr. Levandowski co-founded, to start a new self-driving company, Ottomotto (Otto).  FTB's Request for Judicial Notice (RJN), RJN-FTB-(003 at ¶ 1; 004 at ¶ 4) [CR Dkt. 1]; RJN-FTB-(027:19-24; 028:11-22) [CR Dkt. 102].[2]  A few months later, Debtor did sell Otto to Uber and left Google's employment to join Uber's self-driving program.  2-ER-FTB-(0103:16-19) [Dkt. 147]; RJN-FTB-(029:5-10) [CR Dkt. 102].  Debtor anticipated that Google would sue him, and as a condition of the sale of Otto and his employment with Uber, Uber agreed to indemnify him against possible damages (Indemnification Agreement).  2-ER-FTB-(0102-0103, ¶¶ 6-10) [Dkt. 147]; 3-ER-(0295-0296) [Dkt. 831]; 3-ER-FTB-(0463) [Dkt. 917].  Debtor asserts that Uber also provided indemnification agreements to Otto and four other employees who moved from Google to Uber (Diligenced Employees).  3-ER-FTB-(0472:6-7) [Dkt. 917].

Google brought two arbitration actions against Debtor, alleging breach of fiduciary duty, breach of his employment agreements relating to misuse of confidential information, violation of his nonsolicitation obligations, and breach of

---

[2] Citations to FTB's RJN are formatted as RJN-FTB-([page number(s)]: [line number(s)]), followed by the docket number of the criminal matter (CR) or adversary proceeding (AVP).

other noncompetition and nonsolicitation obligations.  2-ER-FTB-(0117) [Dkt. 147].  The arbitration panel found that Debtor breached various contracts with Google, breached the tort duty of loyalty to Google, and violated California's Unfair Competition Law, and the panel issued an award of $184,081,335.29 in favor of Google.  2-ER-FTB-(0096) [Dkt. 64].  Thereafter, the California Superior Court confirmed the arbitration award and entered judgment of $179,047,998.64 against Debtor.  2:ER-FTB-(0257-0259) [Dkt. 147-17]; 3-ER-FTB-(0296) [Dkt. 831]; 3-ER-FTB-(0463) [Dkt. 917].  On the same day, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  2-ER-FTB-(0030-0038) [Dkt. 1]; 2-ER-FTB-(40-93) [Dkt. 14]; 2-ER-FTB-(95-99) [Dkt. 64].

After two years in bankruptcy, Debtor, Google and Uber reached a settlement (Settlement Agreement), providing in relevant part that Uber would pay Google for some portion of the award Google obtained against Debtor in the superior court action (Settlement Payment).  2-ER-FTB-(0288) [Docket Text Order, dated February 10, 2022]; 3-ER-FTB-(0314, 0316) [Dkt. 831-1]; 3-ER-FTB-(0289-0379) [Dkt. 831 through Dkt. 831-4].  The amount of the Settlement Payment is redacted in publicly accessible court filings.[3]  It is undisputed that Debtor, Google and Uber

---

[3] *See e.g.,* 3-ER-FTB-(0316) [Dkt. 831-1: Settlement Agreement at §§ 1.6, 2.1]; 3-ER-FTB-0384 [Dkt. 832-1: Liquidation Analysis if Settlement Agreement is approved]; 3-ER-FTB-(0386-0387) [Dkt. 833: Declaration of Anthony S. Levandowski in Support of Settlement]; 3-ER-FTB-(0389, 0391) [Dkt. 835 and

entered into the Settlement Agreement, which the Bankruptcy Court later approved, and that the Settlement Payment was then paid pursuant to the Indemnification Agreement.

Debtor also proposed a combined plan of reorganization and disclosure statement (Plan), which contemplates the creation of a liquidating trust (Residual Trust).[4]  4-ER-FTB-(0521-0594) [Dkt. 940].  The Plan does not reserve for (and, by the terms of the Settlement Agreement, Debtor will not have reserves sufficient for) any material taxes in connection with the Settlement Payment.  3-ER-FTB-(0466) [Dkt. 917].  Debtor structured the Settlement Agreement and the Plan so that the reorganization could succeed only if the proposed Settlement Payment

---

836: Proposed Redacted Documents, not publicly available]; 3-ER-FTB-(0442) [Docket Text Order, dated March 2, 2022 ("The record of the hearing [regarding the Settlement Agreement] will be sealed to preserve the confidentiality of certain terms of the settlements described in the Motion."]; 3-ER-FTB-(0444) [Docket Text Order, dated March 3, 2022 ("To preserve the confidentiality of certain terms of the agreements described in the [9019] Motion, the record of the continued hearing will be sealed.")]; 3-ER-FTB-(0446) [Docket Text Order, dated March 10, 2022 ("The continued hearings will convene via Zoom and the record will be sealed." 3-ER-FTB-(0456) [Dkt. 904: Sealed Transcript of March 11, 2022 hearing]; 3-ER-FTB-(0457-0511) [Dkt. 917, 918: Tax Motion and supporting declaration]; 3-ER-FTB-(0516-0519) [Dkt. 934, 936: Sealed Redacted Transcripts of Hearings on March 10, 2022 and March 3, 2022]; 4-ER-FTB-(0712-0717) [Dkt. 1012: Declaration of Allan Soong in Support of Confirmation].

[4] Debtor moved for conditional approval of the Plan and disclosure statement on February 23, 2022.  3-ER-FTB-(0392-0440) [Dkt. 859, 860].  The Bankruptcy Court tentatively approved the disclosure statement on April 1, 2022. Dkt. 950, 951.  Debtor filed a notice of tentative approval of the disclosure statement and hearing on confirmation of the Plan on April 4, 2022.  Dkt. 955.

would not give rise to income tax to Debtor individually or to his bankruptcy estate.  4-ER-FTB-(0719 at 12:38 – 12:52) [Dkt. 1023]; 4-ER-FTB-(0733: 13-19) [Dkt. 1024].

With confirmation of the Plan and approval of the Settlement Agreement, Debtor also moved for an order declaring that the Settlement Payment does not give rise to gross income or, in the alternative, that the Plan is feasible without reserving for federal or state income taxes (Tax Motion).  3-ER-FTB-(0462:7, 0467:26, 0468:3, 0468 at n.2, 0469:6, 0469:18, 0474:5, 0475-0477, 0479, 0482) [Dkt. 917].  Invoking Section 505(a), Debtor argued that the Settlement Payment was not income, and thus is not taxable, because: (1) it is analogous to a non-taxable insurance payment; (2) it provides Debtor no tax benefit and is thus non-taxable; (3) it is a non-taxable fringe benefit of Debtor's employment with Uber; and (4) it is a deductible reimbursement for activities that the arbitration panel found Debtor performed on behalf of Uber.[5]  3-ER-FTB-(0458-0483) [Dkt. 917]. Further, in his memorandum of law in support of Plan confirmation, Debtor reinforced that the Tax Motion sought only "a declaration on any additional tax *impact*" and not "a request to determine the Debtor's taxes for 2022," with "the former issue, which is the subject of the Tax Motion, [being] based on a discrete

---

[5] The arbitration award arises from Google's arbitration actions for breach of various contracts with Google, breach of the tort duty of loyalty to Google, and violation of California's Unfair Competition Law.  2-ER-FTB-(0096) [Dkt. 64].

set of facts that were presented with and in support of the Tax Motion." 4-ER-FTB-(0701:12-15) [Dkt. 1006] (emphasis added).

The United States and FTB opposed the Tax Motion arguing, in part, that the Bankruptcy Court lacks authority under Section 505 to issue an advisory opinion about future tax consequences of the Settlement Payment. 4-ER-FTB-(0595-0629) [Dkt. 952, 953]. In addition, FTB argued that the Settlement Payment is gross income, either as (1) compensation for Debtor's work at Uber; (2) consideration for Uber's acquisition of Debtor's company; or (3) a contingent liability attached to Uber's acquisition of Debtor's company. 4-ER-FTB-(0616-0621) [Dkt. 953]. Debtor filed the Reply to the Tax Motion on April 8, 2022. 4-ER-FTB-(0663-0673) [Dkt. 996].

The Bankruptcy Court granted the Tax Motion by oral ruling (Tax Order). 4-ER-FTB-(0719 at 1:09:55 – 1:24:50) [Dkt. 1023]; 4-ER-FTB-(0768-0778) [Dkt. 1024]. Relying on Section 505, the court concluded the tax dispute was a contested matter over which it had subject matter jurisdiction and that the dispute was ripe for adjudication in the context of plan confirmation. 4-ER-FTB-(0719 at 1:10:14 – 1:10:57) [Dkt. 1023]; 4-ER-FTB-(0768:20-0769:6) [Dkt. 1024]. The court held,

> the indemnification agreement constituted insurance for purposes of its determination under section 505, and that therefore the Uber settlement payment does not constitute

> gross income for Mr. Levandowski or for his bankruptcy
> estate.
>
> The Court declines to address Mr. Levandowski's alternative
> theories such as the tax-benefit rule, the working condition
> fringe benefit, or deductible reimbursement. And so on that
> basis, Mr. Levandowski shall upload an order granting the tax
> motion for the reasons stated on the record.

4-ER-FTB-(0719 at 1:24:07 – 1:24:49) [Dkt. 1023]; 4-ER-FTB-(0777:21-0778:5)

[Dkt. 1024].  The Bankruptcy Court entered the Tax Order on May 2, 2022.  1-ER-

FTB-(0001-0004) [Dkt. 1028].  The Bankruptcy Court also approved the

Settlement Agreement and confirmed the Plan without a reserve for taxes.  4-ER-

FTB-(0819-0822) [Dkt. 1029]; 1-ER-FTB-(0005-0029) [Dkt. 1030].  This appeal

followed.  5-ER-FTB-(0860-0868) [Dkt. 1036].

## SUMMARY OF ARGUMENT

The Bankruptcy Court's decision that it had authority under Section 505(a) to

decide Debtor's motion was erroneous because the Tax Order did not determine

the amount or legality of a tax, which is the authority granted under Section 505.

Instead, the Tax Order is a declaratory judgment regarding one component of a

larger tax calculation: whether the Settlement Payment is not includable in gross

income.  Additionally, Section 505(a) does not permit a court to declare the tax

consequences of a proposed reorganization plan, such as Debtor's Plan that

provided for the outstanding judgment to be paid by Uber to Google under a

separate Settlement Agreement.  Section 505(a) does not permit courts to

determine the tax liability of events that arise after confirmation of the reorganization plan—i.e., for events that have not yet occurred and will only occur after the bankruptcy estate has terminated.  Alternatively, to the extent the Bankruptcy Court determined a tax, it violated basic principles of tax procedure and accounting, as well as acted on an insufficient evidentiary record because the tax period remained ongoing.  Accordingly, the Court should reverse the Tax Order.

Moreover, even if Section 505(a) allowed the Bankruptcy Court to make such a determination, the court erred by ruling that the Settlement Payment was effectively an insurance payment that was exempt from taxation.  Insurance payments are not automatically exempt from taxation, as there must be a particular statutory or other legal basis for the insurance payment in question to be exempt from federal or state taxation.  However, neither the Bankruptcy Court nor Debtor identified any law that exempts putative insurance payments for past unlawful conduct from taxation.  That failure is unsurprising because, under California law, such insurance is expressly against public policy and does not exist.  California public policy requires individuals to be responsible for their actions by personally paying victims for restitution and disgorgement, rather than escaping accountability by purchasing "insurance."  Furthermore, judicial estoppel should apply because Debtor previously successfully argued that the Indemnification

Agreement was not insurance.  Therefore, if the Court finds that the Bankruptcy

Court had authority to enter the Tax Order, the Court should reverse the Tax Order

and remand the matter for further determinations regarding issues such as whether

the Indemnification Agreement was compensation for Debtor's work,

consideration for Uber's acquisition of Debtor's company, a contingent liability

attached to the acquisition of Debtor's company, or otherwise.

## ARGUMENT

I. **THE BANKRUPTCY COURT DID NOT HAVE AUTHORITY TO RULE THAT THE SETTLEMENT PAYMENT IS NOT INCLUDABLE IN GROSS INCOME**

    A. **The Bankruptcy Court Did Not Determine the Amount or Legality of A *Tax* As Permitted by Statute, but Issued an Impermissible Declaratory Judgment about An Issue that Precedes A Tax Determination**

FTB agrees and joins in the United States' arguments regarding "the amount"

of income tax and tax attributes.[6]  As the United States explained, the Bankruptcy

Court did not determine the amount or legality of income tax as authorized under

Section 505.  The amount of tax is a calculation based on the whole of a tax year

with all of its variables.  *United States v. Lewis*, 340 U.S. 590, 592 (1951)

("Income taxes must be paid on income received (or accrued) during an annual

accounting period."); *see also* 26 U.S.C. § 441(a) ("Taxable income shall be

---

[6] The United States presented these arguments in its Opening Brief, Dkt. 39, at 9:12-14:10.  Page references are to the PDF page number, which differ from the indicators at the bottom of the United States' brief.

computed on the basis of the taxpayer's taxable year;" and 26 U.S.C. § 7701(a)(23) ("The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under subtitle A [I.R.C. §§ 1 et seq.] . . .").

Instead of using the entire required taxable period, the Bankruptcy Court determined one component of a larger tax calculation in a vacuum: whether the Settlement Payment is not includable in gross income. 4-ER-FTB-(0719 at 1:24:08 – 1:24:24) [Dkt. 1023]; 4-ER-FTB-(0777:21-25) [Dkt. 1024]. There is no authority to issue declaratory relief regarding such a limited tax issue, component, or attribute because such determinations are advisory rulings on how a taxpayer should calculate and file its income tax returns. *Internal Revenue Service v. Sulmeyer (In re Grand Chevrolet, Inc.)*, 153 B.R. 296, 300 (C.D. Cal. 1993) (whether multiple taxpayers can file a consolidated return is not a tax liability controversy, and is not within Section 505's authority); *Matter of Inter Urban Broad. of Cincinnati, Inc.,* 180 B.R. 153, 156 (Bankr. E.D. La 1995) (whether a taxpayer could file tax returns as an "S" corporation is not within Section 505's authority); *In re GYPC, Inc.*, 2021 WL 4618410, at *2 (Bankr. S.D. Ohio October 5, 2021) (whether a Chapter 7 trustee can amend an S corporation return is not within Section 505's authority). Because Section 505(a)(1) allows determinations

of the amount of tax, yet the Bankruptcy Court adjudicated an antecedent tax issue outside of the scope of Section 505, the Tax Order should be reversed.

Like federal income tax, state income tax is levied on an annual basis and is calculated based on income received over a defined period of time, usually a calendar year. *Cullinan v. McColgan*, 80 Cal.App.2d 976, 977 (Cal. Ct. App. 1947) ("The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," quoting the Personal Income Tax Act of 1935, Gen.Laws, Act 8494, and the regulations of the commissioner as set forth in Article 36–1 thereof). *See also* Cal. Rev. & Tax. Code, §§ 17010 ("'taxable year' means the calendar year or the fiscal year upon the basis of which the taxable income is computed under this part."); § 17011 ("'fiscal year' means an accounting period of 12 months ending on the last day of any month other than December."); § 17041 ("There shall be imposed for each taxable year upon the entire taxable income of every resident of this state . . . taxes in the following amounts and at the following rates upon the amount of taxable income computed for the taxable year . . . ."); § 17551 (specified sections of the Internal Revenue Code relating to accounting periods and methods of accounting shall apply to California state tax calculations).

14

Here, it is undisputed the Tax Order is a determination of one potential input into the tax (whether Debtor should report the Settlement Payment and include it in his gross income on his next tax return), and that the Tax Order is not a determination of the amount of tax for the 2022 tax year.  3-ER-FTB-(0462: 1-8; 0467:26, 0468:3, 0468 at n.2, 0469:6, 0469:18, 0474:5, 0475-0477, 0479,0482) [Dkt. 917]; 4-ER-FTB-(0613:22-0614:2) [Dkt. 953]; 4-ER-FTB-(0719 at 1:10:56 – 1:13:17) [Dkt. 1023]; 4-ER-FTB-(0769:7-0770:18) [Dkt. 1024].  In fact, Debtor reinforced that the Tax Motion sought only "a declaration on any additional tax *impact*" and not "a request to determine the Debtor's taxes for 2022."  4-ER-FTB-(0701:12-15) [Dkt. 1006] (emphasis added).

Section 505 does not grant authority to determine tax attributes such as whether taxpayers may file a consolidated return (*Grand Chevrolet*), as an "S" corporation (*Inter Urban*), or amended returns (*GYPC*).  Likewise, Section 505 does not grant authority here to determine whether the Settlement Payment is reportable on Debtor's tax return and included in Debtor's gross income.  For these further reasons, the Tax Order adjudicated an antecedent tax issue outside of the scope of Section 505, is not a determination of the amount of state tax, and should be reversed.

**B.    Section 505 Does Not Permit Declaratory Judgments about Hypothetical Future Tax Consequences**

FTB agrees and joins in the United States' argument that Section 505 does not permit declaratory judgments about hypothetical future tax consequences of bankruptcy plans.[7]  *See In re Grand Chevrolet, Inc.*, 153 B.R. at 299 ("[T]here is no grant of jurisdiction to decide issues that are antecedent to the determination of tax liability. . . .  The ripeness doctrine was meant to prevent just such a situation."); *In re Dycoal, Inc.*, 327 B.R. 220, 227-29 (Bankr. W.D. Pa. 2005) (holding "the Court cannot, pursuant to section 505(a)(1), make determinations regarding tax issues that merely impact upon a future tax liability of a debtor."). To begin, Section 505 expressly refers to a "tax," which, as explained above, necessarily reviews transactions that have occurred in the past.  Calculation of a tax cannot be forward-looking, given that all of the inputs used for the calculation must be certain, yet not all of the events have occurred.

Next, although the law in this area remains unsettled, the most thorough judicial analysis of this issue appears in *In re UAL Corp.*, 336 B.R. 370 (Bankr. N.D. Ill. 2006), which provides persuasive authority for this Court to likewise conclude that Section 505(a)(1) does not authorize declarative relief about future

---

[7] The United States presented in its Opening Brief, Dkt. 39, at 13:11-19:8.

federal or state tax consequences of a plan.[8]  First, Section 505 is placed in

Chapter 5 of the Bankruptcy Code, titled "Creditors and Claims," such that

section 505(a)(1) should be properly read as dealing with tax issues that arose

before the case was filed, not for claims based on facts arising after confirmation of

the plan.  *In re UAL Corp.*, 336 B.R. at 375.  Second, if the reference in

Section 505(a)(1) to "amount or legality of any tax" allows the court to declare

future tax consequences of a proposed plan, then the more narrow authorization for

the court to determine state and local tax consequences of a plan under

section 1146(b) would either be surplusage or else a limit on the scope of general

declaratory power under Section 505(a).  *Id.* at 376; 11 U.S.C. § 1146(b).  Third,

the legislative history for Section 505 shows that the statute was not intended by

Congress to provide jurisdiction to decide the future tax consequences for a

proposed plan and only was intended to permit jurisdiction regarding already

*existing* and *unpaid* taxes.  *See* H. Rep. No. 95-595, 95th Cong., 1st Sess. at 356;

---

[8] *See, e.g. Allis-Chalmers Corporation v. Goldberg (In re Hartman Material Handling Systems, Inc.*, 141 B.R. 802, 813 (Bankr. S.D.N.Y. 1992) ("no pre-confirmation finding can finally determine tax issues which do not arise until after confirmation"); *accord In re Holly's, Inc.,* 172 B.R. 545, 562 (Bankr. W.D.Mich. 1994) ("even though §505(a) speaks in broad terms, it does not grant a bankruptcy court subject matter jurisdiction over postconfirmation tax years"), *cf. Unsecured Creditors' Comm. of Goldblatt Bros., Inc. v. United States (In re Goldblatt Bros., Inc.)*, 106 B.R. 522, 529 (Bankr. N.D. Ill. 1989) (the bankruptcy court has jurisdiction under Section 505 to determine the post-confirmation taxability of earnings on the Creditor's Deposit Account (a bank account created by the plan)).

S. Rep. No. 95-989, 95th Cong., 2d Sess. at 67; see S. Rep. No. 95-1106, 95th

Cong., 2d Sess. at 9; *In re UAL Corp.*, 336 B.R. at 378.  Accordingly, Section 505

does not permit declaratory judgments about hypothetical future tax consequences

of bankruptcy plans.

Further, the principles that the *In re UAL Corp.* court established regarding

Section 505(a) not providing authority to determine future federal tax

consequences of bankruptcy plans should likewise apply to future state tax

consequences of proposed plans.  *In re UAL Corp.*, 336 B.R. at 380.  Instead, it is

section 1146(b) that provides explicit authority for the court to declare the state and

local tax consequences of a proposed plan.  11 U.S.C. § 1146(b), *In re UAL Corp.*,

336 B.R. at 376.  Thus, a bankruptcy court could determine the future state tax

consequences of a Chapter 11 plan using the authority conveyed under

section 1146(b), but not under Section 505(a).  However, Debtor had not requested

a determination of a tax from FTB, FTB had not responded to such a request, and

270 days had not passed since any such request, which are the prerequisites for a

determination under section 1146(b).  11 U.S.C. § 1146(b).

Even if the necessary precursors for a determination under section 1146(b)

had occurred, prudential considerations also indicate that the Tax Order should not

apply to the state taxes.  *See Nat'l Private Truck Council v. Oklahoma Tax*

*Comm'n,* 515 U.S. 582, 586 (1995) ("We have long recognized that principles of

federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration.")  California state tax liability determinations generally follow determinations of federal tax liability in time and in substance.  To have the Tax Order apply to California taxes here, when it cannot apply to federal taxes and before the IRS concludes its determination of income tax liability, would lead to inconsistent tax schemes applied as between Debtor's federal and state taxes.  Instead, the sensible route is to allow for alignment of state tax determinations with federal tax determinations.  While FTB should not be bound to tax determinations before adequate consideration of relevant events, FTB should also not be bound to tax determinations that are inconsistent with the IRS's federal income tax determinations based on those same, relevant events, where the IRS has not yet issued a determination.  For these further reasons, the Court should conclude that Section 505 does not permit declaratory judgments about the future state tax consequences of Chapter 11 plans.

**C.    All Caselaw the Bankruptcy Court Relied on to Make Its Findings Concerned Determinations of Liability for Past Tax Periods Where the Liability Already Existed**

FTB agrees and joins in the United States' argument that the Bankruptcy Court relied on only inapposite caselaw to conclude that the court had jurisdiction to make a tax determination under Section 505.[9]  The cases of *Central Valley AG*

---

[9] The United States presented in its Opening Brief, Dkt. 39, at 19:9-20:17.

*Enterprises v. United States*, 531 F.3d 750, 753 (9th Cir. 2008), *Schwartz v. Gardiner (In re Schwartz)*, 192 B.R. 90, 94 (Bankr. N.J. 1996), and *In re Kilen*, 129 B.R. 538, 548 (Bankr. N.D. Ill. 1991) each address scenarios where the taxes had already accrued, and did not involve income taxes, a prospective determination of a tax effect of a future transaction, or a tax period that had not closed.  Here, the court below determined the tax attribute of the Settlement Payment as not constituting gross income before the payment was made and before the tax liability had potentially accrued.  Thus, the Bankruptcy Court's conclusion that it had authority lacks any support in the caselaw upon which the court and Debtor relied.

## II.   TO THE EXTENT THE BANKRUPTCY COURT DETERMINED A TAX, IT VIOLATED BASIC PRINCIPLES OF TAX PROCEDURE AND ACCOUNTING, AND ACTED ON AN INSUFFICIENT EVIDENTIARY RECORD

FTB agrees and joins in the United States' argument that to the extent the Bankruptcy Court determined a tax, it violated basic principles of tax procedure and accounting.[10]  Such errors include that, first, the Bankruptcy Court issued a determination of an income tax for a period not yet closed.  Income tax is determined for the entire tax period—whether the tax period is a "taxable year," an "annual accounting period," or a "fiscal year."  *See* 26 U.S.C. § 441(a), 441(b), 441(c); Cal. Rev. & Tax. Code §§ 17010, 17011, 17041.  *See also Pac. Rock & Gravel Co. v. United States*, 297 F.2d 122, 124 (9th Cir. 1961) ("Underlying our

---

[10] The United States presented in its Opening Brief, Dkt. 39, at 20:18-23:8.

income tax system is the notion that one year is normally an adequate period for measurement of one's income"); *Pa. Cement Co. v. Bradley Contracting Co.*, 274 F. 1003, 1006 (S.D.N.Y. 1920) ("An income tax is not upon any specific sum of money, but is a personal tax, measured by sums of money received (or possibly accrued) to the person taxed during a certain period -- i.e., the calendar year."). Income tax is incurred on the last day of the income period. *Towers v. United States of America (In re Pac.-Atl. Trading Co.)*, 64 F.3d 1292, 1301 (9th Cir. 1995).

California similarly prohibits determining an isolated piece of an ongoing tax year. *See Cullinan v. McColgan*, *supra*, 80 Cal.App. at 977 ("The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer.")  Indeed, litigation concerning "the whole or a portion of a tax for a particular year throws open all questions relating to the same tax year." *Pope Estate Co. v. Johnson*, 43 Cal.App.2d 170, 174 (1941).  "Neither the tax collecting authorities nor the taxpayer are at liberty to split up the question and prosecute in the courts the question as to liability for that year piecemeal."  *Id*.  In fact, the *Pope Estate* court noted that "[t]he rule is quite absolute in its character and applies so as to prevent a second action in the courts involving a particular year's liability even though the

facts upon which the second suit rests occurred after the first was decided." *Id.*
With these statements, the *Pope Estate* court confirmed that a tax is calculated
after the close of the tax period, as litigation regarding the tax liability cannot
proceed before one completes a calculation of the tax.  Here, however, the
Bankruptcy Court issued a finding concerning one precursor to the determination
of a tax, only a few months into the ongoing tax year, long before the whole of the
annual accounting period could be considered.  Thus, the Tax Order violates the
fundamental requirement that the amount of state income tax use all inputs and
information from the entire tax period.

Second, the Bankruptcy Court failed to calculate the income tax due for the
period, following the tax schemes set forth in the relevant tax codes.  The
calculation begins with the taxpayer's income for the period, as all gross income a
taxpayer accrues during the tax period is taxable.  26 U.S.C. §§ 1, 61 (defining
"gross income"); Cal. Rev. & Tax. Code §§ 17041, 17071 (adopting the federal
definition of "gross income").  The gross income is then reduced, including by
(1) items specifically excluded from gross income under 26 U.S.C. sections 101-
140 and California Revenue and Taxation Code sections 17131-17158.3;
(2) deductions for personal exemptions such as claiming a spouse or dependents
under 26 U.S.C. sections 151-153 and California Revenue and Taxation Code
section 17021.7; and (3) itemized deductions as contemplated by 26 U.S.C.

sections 63, 161-199A and California Revenue and Taxation Code sections 17201-17299.9.  The taxpayer may also apply offsets from an earlier tax year.  *See, e.g.* 26 U.S.C. §§ 6401, 6402; Cal. Rev. & Tax. Code §§ 19301-19443.  The Bankruptcy Court did not consider any of this information.  4-ER-FTB-(0718-0818) [Dkt. 1023, 1024].

Third, the record contained no evidence of any relevant facts, such as other income and deductions aside from the Settlement Payment, which the Bankruptcy Court could have used in calculating the tax.  *See,* 3-ER-FTB-(0457-0515) [Dkt. 917, 918, 919]; 4-ER-FTB-(0630-0651) [Dkt. 966]; 4-ER-FTB-(0718-0818) [Dkt. 1023, 1024].

Fourth, the Bankruptcy Court did not consider any other inputs and variables that go into figuring the income tax liability, including the over $7 million Debtor reported as income on his monthly operating report to the Bankruptcy Court.[11]  *See* 4-ER-FTB-(0718-0818) [Dkt. 1023, 1024].  Accordingly, to the extent the Bankruptcy Court purported to determine the amount of tax, it plainly erred by considering only a single transaction and seeking no evidence or other information for the period in question.

---

[11] *See* Bankruptcy Court Dkt. 1154, attached to the United States' Opening Brief re Tax Motion as Exhibit 22, filed in this appeal on August 15, 2022, as Docket 39.

## III. THE BANKRUPTCY COURT ERRED IN FINDING THE SETTLEMENT PAYMENT IS NOT A TAXABLE INSURANCE PAYMENT

Even if the Bankruptcy Court had authority to issue the Tax Order, the court erred in characterizing the Settlement Payment as a non-taxable insurance payment for three reasons. First, there is no blanket exemption against taxation of insurance payments. Even if the Indemnification Agreement is insurance, there is no legal basis that this type of insurance is exempt from taxation. Second, the Indemnification Agreement is not an insurance contract because it fails to meet the definition of insurance in California. Third, judicial estoppel should apply because Debtor previously successfully argued that the Indemnification Agreement was not insurance.

### A. There Is No Blanket Exemption Against Taxation of Insurance Payments

The court below erred in finding that insurance payments are exempt from taxation and, in doing so, improperly ruled that the Settlement Payment is exempt from taxation because it is the equivalent of an insurance payment. There is no blanket rule that insurance payments are exempt from an individual's gross income for taxation purposes. All gross income a taxpayer accrues during the tax period is taxable and, except as provided by law, gross income means all income from whatever source derived. 26 U.S.C. §§ 1, 61; Cal. Rev. & Tax. Code, §§ 17041, 17071.

Insurance payments are only tax-exempt where provided by law as to the particular category of insurance and only to the extent described by law.  For example, under federal and California law, "amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer." *See* 26 U.S.C. § 105(a); conformity under Cal. Rev. & Tax. Code, §§ 17131, 17141.  However, such amounts expended for medical care may not be included in gross income under some enumerated circumstances.  *See* 26 U.S.C. § 105(b); conformity under Cal. Rev. & Tax. Code, §§ 17131, 17141.  Likewise, a federal statute provides the general rule against federal taxation of life insurance payments and lists certain exemptions to this general rule.  *See* 26 U.S.C. § 101(a)(1) (Except as otherwise provided in paragraphs (2) and (3), subsection (d), subsection (f), and subsection (j), gross income does not include amounts received [whether in a single sum or otherwise] under a life insurance contract, if such amounts are paid by reason of the death of the insured.").  *See* Cal. Rev. & Tax. Code, §§ 17131, 17132.5 (substantial conformity).

If the indemnity payment is claimed as exempt from taxable income, it is Debtor's burden to show it is not income. *Bachmann  v. Comm'r*, 97 T.C.M.

(CCH) 1278 (T.C. 2009); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

Similarly, if Debtor claims the indemnity payment is a deductible expense, it is his

burden to prove he can take the deduction. "A taxpayer seeking a deduction must

be able to point to an applicable statute and show that he comes within its terms."

*White v. United States*, 305 U.S. 281, 292 (1938) quoting *New Colonial Ice Co. v.*

*Helvering*, 292 U.S. 435, 440 (1934); *Grimes v. Comm'r,* 806 F.2d 1451, 1453

(9th Cir. 1986). Debtor did not meet either of these burdens.

The exemption against taxation of insurance payments is not met merely by

comparing an indemnification agreement with certain qualities common to

insurance contracts and finding a match. Rather, the exemption must be identified

by way of a specific law, such as that for health and life insurance payments

discussed above, that exempts such putative insurance from taxation under federal

or state law. Here, Debtor and the Bankruptcy Court failed to identify any federal

or state law that exempts from taxation insurance payments for expenses incurred

from past intentional, unlawful conduct by the insured. 3-ER-FTB-(0468:14-

0469:18) [Dkt. 917]; 4-ER-FTB-(0719 at 1:09:55 – 1:24:50) [Dkt. 1023]; 4:ER-

FTB-(0768-0778) [Dkt. 1024]. Because the law does not universally exempt

insurance payments from taxation, the Bankruptcy Court erred by declaring that

the Settlement Payment is exempt from federal and state taxation simply because it

deemed the payment "akin" to an insurance payment.

**B.**   **The Indemnification Agreement Cannot Be an Insurance Contract Because It Fails to Meet the Definition of Insurance**

**1.**   **Insurance to Protect from Past Unlawful Conduct Does Not Exist in California**

The Settlement Payment, made pursuant to the Indemnification Agreement, cannot be like an insurance payment because no such insurance exists.  Unlike Debtor's Indemnification Agreement, there is no insurance that indemnifies for past unlawful conduct.  *See* Ins. Code § 22 ("Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.").  All insurance contracts in California contain an implied exclusion against "loss caused by the willful act of the insured."  *See Certain Underwriters at Lloyd's London v. ConAgra Grocery Products Co., LLC*, 77 Cal.App.5th 729, 739 (2022) *interpreting* Cal. Ins. Code § 533.  Given that, here, the Indemnification Agreement indemnified Debtor against expenses related to his past "willful" unlawful acts against Google, it does not function as an insurance contract.  Thus, the Settlement Payment required by the Indemnification Agreement cannot be "akin" to an insurance payment, as no such insurance payments exist in California.

Moreover, Uber made the Settlement Payment to satisfy the judgment that Google obtained against Debtor, the substantive portion of which was for "disgorgement and restitution."  *See* Dkt. 147-17 at PDF 3, n.1 [Superior Court

("This sum is composed of: (a) a $127,311,551.95 award of disgorgement and restitution, (b) a $45,547,474.64 award of pre-award interest, (c) a $1,869,596.27 award of attorney's fees, and (d) a $57,468.38 award of legal costs."). It is against public policy to allow disgorgement and restitution to be paid by insurance. *See Bank of the West v. Super. Ct*., 2 Cal.4th 1254, 1266 ("It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired."). The public policy rationale underlying this prohibition is that, when "the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law"—otherwise, "the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer." *Id*. at 1269. As such, insurance cannot be used to pay a third party where, as is the situation here, the putative insured is required to restore to the third party "that which was wrongfully acquired." *Id*. at 1270. Thus, the Settlement Payment could not be an insurance payment because such a payment would be against California public policy. Accordingly, the Court should reverse the Tax Order, as it is counter to California law and public policy.

### 2. The Indemnification Agreement Lacks Risk Distribution Among Similarly Situated Persons

Even if Debtor had demonstrated that all insurance payments are exempt from taxation, or that such insurance exists in California, the Indemnification Agreement cannot be deemed insurance because it fails to provide for risk distribution. To qualify as insurance in California, the arrangement must include "(1) a risk of loss to which one party is subject and a shifting of that risk to another party, and (2) distribution of risk among similarly situated persons."[12] *Title Ins. Co. v. State Bd. of Equalization*, 4 Cal.4th 715, 725-726 (1992). Even assuming there was a risk of loss that the Indemnification Agreement shifted from Debtor to Uber, there was no "distribution of risk among similarly situated persons" subject to the same risk.

"Basically, insurance is a device which furnishes protection against a risk of loss by distributing the losses of the few among the many who are subject to the same risk." *In re Barr's Estate*, 104 Cal.App.2d 506, 508 (1951); *see also Standard Ins. Co v. Morrison*, 537 F.Supp.2d 1142, 1150 (D. Mont. 2008) ("'risk pooling' refers to the principle that risk averse individuals will often prefer to take a small but certain loss in preference to a large uncertain one"—thus, insurance

---

[12] The Indemnification Agreement is "governed by and construed in accordance with the laws of the State of California." 3-ER-FTB-(0501 at ¶ 3.5) [Dkt. 918-1].

systems pool economic risk, resulting in a small loss to many in the form of insurance premiums rather than a large loss to the unfortunate few."); *Wyatt v. Northwestern Mutual Ins. Co. of Seattle*, 304 F.Supp. 781, 783 (D. Minn. 1969) (observing that the "very basis" on which insurance operates is destroyed when the damage is so widespread that that an insurance company cannot distribute "the risk and offset a few or the average percentage of losses by many premiums"). "By assuming numerous relatively small, independent risks that occur randomly over time, the insurer smoothes out losses to match more closely its receipt of premiums." *Clougherty Packing Co. v. Commissioner*, 811 F.2d 1297, 1300 (9th Cir. 1987), aff'g 84 T.C. 948 (1985).

Here, the Bankruptcy Court found that the "similarly situated persons" amongst whom Uber distributed the risk, were five employees (Diligenced Employees), including Debtor, for whom "Uber agreed to assume the risk of expensive, complex litigation" arising from the Diligenced Employees' prior actions. 4-ER-FTB-(0719 at 1:21:34 – 1:21:44) [Dkt. 1023]; 4-ER-FTB-(0776:2-5) [Dkt. 1024]. The Bankruptcy Court erroneously concluded that the Diligenced Employees effectively paid a premium for insurance through their work as Uber employees—i.e., the "value [Uber] would realize through their talent and services." 4-ER-FTB-(0719 at 1:21:44 – 1:22:00) [Dkt. 1023]; 4-ER-FTB-(0776:5-9) [Dkt. 1024]. The Diligenced Employees received salaries in exchange

for the value of their talent and services; the Diligenced Employees did not incur a loss as a result of providing their talent and services to Uber—they gained a job with pay and compensation.  Nor did the Bankruptcy Court cite to any evidence that the Diligenced Employees' salaries were reduced on account of receiving indemnification provisions as employment benefits.  Likewise, there was no showing below by Debtor, for example, that the funds for the Settlement Payment were derived from monetary contributions by the five Diligenced Employees.  Thus, the Indemnification Agreement did not function as insurance because the Diligenced Employees merely worked for Uber, were paid for their labor in return, and were separately indemnified out of Uber's funds for any such judgment.

### C.   Judicial Estopped Should Apply Because Debtor Previously Argued that the Indemnification Agreement is Not an Insurance Contract

Prior to FTB's involvement in this lawsuit, Debtor successfully argued to the Bankruptcy Court that the Indemnification Agreement should not be deemed an insurance contract.  Debtor made this argument nearly two years earlier, in the context of a related adversary proceeding in which Debtor opposed Uber's motion for judgment on the pleadings.  RJN-FTB-(102:5-10) [AVP Dkt. 79].  Uber argued that it should not have to pay Google under the Settlement Agreement because the Indemnification Agreement was counter to California public policy.  RJN-FTB-(102:9-14) [AVP Dkt. 79].  Debtor responded with the following arguments:

- "California's public policy permits private, non-insurance indemnities like the Indemnification Agreement at issue here . . . Uber's public policy argument principally relies on inapposite cases involving insurance policies."  RJN-FTB-(102:5-10) [AVP Dkt. 79].

- "Uber's motion relies almost exclusively on case law in the insurance context, which applies insurance statutory limitations and public policy considerations that do not apply to non-insurance indemnity agreements for past wrongful acts."  RJN-FTB-(107:4-7) [AVP Dkt. 79].

- "California's statutes and public policy distinguish between indemnity agreements and liability insurance policies, which 'resemble' one another, but the 'rules for interpreting the two classes of contracts do differ significantly' when it comes to indemnity restrictions because there are different public policy considerations applicable to indemnities in the insurance and non-insurance contexts.  The California Legislature has chosen to restrict insurance indemnity to a far greater extent. For example, unlike the limited restrictions in sections 2773 and 2774, the California Insurance Code expressly prohibits coverage for losses caused by a 'willful act or for any 'fine, penalty, or restitution in any criminal action or proceeding or any action or proceeding' brought by a prosecutorial body pursuant to various California unfair practices statutes.  See Cal. Ins. Code, §§ 533, 533.5."  RJN-FTB-(113:8-22) [AVP Dkt. 79].

32

- "To the extent there is overlap between insurance and non-insurance indemnities, California law is focused generally on deterring future wrongful conduct. Insurance is forward looking and provides indemnity for acts that may occur in the future . . . Here, as discussed above, it is clear on its face the Indemnification Agreement that the agreement only covers past conduct."  RJN-FTB-(113:23-114:10, citations omitted) [AVP Dkt. 79].

- "Moreover, the restrictions based on California's insurance law do not apply to the Indemnification Agreement because Uber is not in the insurance business."  RJN-FTB-(114:15-16) [AVP Dkt. 79].

According to Debtor, then, Uber is not in the insurance business—and Uber apparently agrees.  *See Celerio v. United Fin. Cas. Co.,* 2020 WL 5702109 at *1 (S.D. Tex. 2020) (referencing plaintiff's dismissal of Uber as a defendant after "Uber explained that it was not an insurer").  Debtor, at least when facing the prospect that Uber would not pay given the bar against such payments for insurance purposes, argued successfully that the Indemnification Agreement is not an insurance contract.  Debtor reasoned that, not only do different laws and public policy apply to indemnity agreements and insurance contracts, indemnity coverage is backward looking, whereas insurance is forward looking.  Two years ago, insurance and indemnity were apples and oranges; today, they are one and the same.  In a sealed decision to which FTB lacks access, the Bankruptcy Court

33

apparently agreed with Debtor and denied Uber's motion.  RJN-FTB-(126-133) [AVP Minute Order dated November 24, 2022; AVP Dkt. 84; AVP Dkt. 86].

Here, the Court should reverse the decision below not only because the Bankruptcy Court erred in finding that the Settlement Payment should not be taxed because it is an insurance payment, but also because the Court should apply judicial estoppel to prevent Debtor from benefitting from inconsistent positions on the same issue to avoid paying his taxes.[13]  Judicial estoppel is discretionary and, to the extent that the Court finds Debtor's inconsistency inimical "to the integrity of the judicial process" and an instance of a party "playing fast and loose with the courts," Debtor's conduct meets the usual elements for judicial estoppel.  *See New Hampshire v. Maine,* 532 U.S. 742, 749-750 (2001) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.").  Debtor has taken inconsistent positions on whether the Indemnification Agreement is like an insurance contract and, thus, whether the Settlement Payment is like an insurance payment.  Debtor succeeded in convincing the Bankruptcy Court previously that the Indemnification Agreement is not like an insurance contract, then subsequently convinced the Bankruptcy Court that the Indemnification

---

[13] FTB did not raise this issue below because it only discovered the inconsistency after the court decided the Tax Motion.

Agreement is akin to an insurance contract.  Debtor's change in position here will prejudice both the state and the federal government from properly taxing the Settlement Payment.  *See Id.* at 750-51 (listing the typical considerations for judicial estoppel as (1) clearly inconsistent positions; (2) success in asserting either position; and (3) an advantage gained by the party or a detriment suffered by their opposition.)

## CONCLUSION

For the foregoing reasons, the Court should reverse the Tax Order.  If the Court finds that the Bankruptcy Court had jurisdiction to issue the Tax Order, the Court should remand for further proceedings.

Dated:  September 14, 2022          Respectfully submitted,


ROB BONTA
Attorney General of California
TAMAR PACHTER
Senior Assistant Attorney General
MICHAEL D. GOWE
Supervising Deputy Attorney General


*/s/ Cara M. Porter*
CARA M. PORTER
Deputy Attorney General
*Attorneys for Appellant*
*California Franchise Tax Board*

35

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Bankruptcy, rule 8015(a)(7)(B)(i) the undersigned counsel for appellee California Franchise Tax Board hereby certifies that the Appellant Franchise Tax Board's Opening Brief [Appeal of Tax Order] is printed in fourteen (14) point Times New Roman font and that based on the Microsoft Word computer word count function, excluding those parts of the brief not included in the word count by rule 8015(g), the text in the Appellee's Brief contains 8,029 words.

*/s/ Cara M. Porter*
Cara M. Porter
Deputy Attorney General
*Attorneys for Defendant and Appellee*
*Franchise Tax Board*

## CERTIFICATE OF SERVICE

I hereby certify that <u>September 14, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **APPELLANT FRANCHISE TAX BOARD'S OPENING BRIEF [APPEAL OF TAX ORDER]**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 14, 2022</u>, at San Diego, California.

<table>
<tr><td>G. Lopez</td><td></td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SF2022302025
83597935.docx