IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **In re**<br><br>**ANTHONY SCOTT LEVANDOWSKI,**<br><br><div align="right">Debtor.</div> | District Court Case Nos.<br>    4:22-cv-02781-YGR<br>    4:22-cv-02783-YGR<br>    4:22-cv-02786-YGR<br>    4:22-cv-02789-YGR<br>    (Jointly Administered) |
| **THE UNITED STATES OF AMERICA on behalf of THE INTERNAL REVENUE SERVICE**<br><br>- and -<br><br>**CALIFORNIA FRANCHISE TAX BOARD,**<br><br><div align="right">Appellants,</div><br>**v.**<br><br>**ANTHONY SCOTT LEVANDOWSKI,**<br><br><div align="right">Appellee.</div> | Bankruptcy Court Case No.<br>    3:20-bk-30242-HLB |
| *\* All papers shall be filed in the Lead Case,*<br>*No. 22-cv-02781-YGR* | |

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Case No. 3:20-bk-30242-HLB

**APPELLANT FRANCHISE TAX BOARD'S OPENING BRIEF
[APPEAL OF CONFIRMATION ORDER]**

ROB BONTA
Attorney General of California
TAMAR PACHTER
Senior Assistant Attorney General
MICHAEL D. GOWE
Supervising Deputy Attorney General

CARA M. PORTER
Deputy Attorney General
State Bar No. 266045
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3508
 Fax: (415) 703-5480
 E-mail: Cara.Porter@doj.ca.gov
*Attorneys for Appellant*
*California Franchise Tax Board*

# TABLE OF CONTENTS

**Page**

Introduction ......................................................................................1

Jurisdictional Statement ...................................................................3

Statement of Issues Presented .........................................................4

Standard of Appellate Review..........................................................4

Statement of the Case.......................................................................5

Summary of Argument ...................................................................13

Argument.........................................................................................14

     I.     Without the Tax Order, the Confirmation Order Lacks
          Findings of Fact and Conclusions of Law to Support It..........14

     II.    The Confirmation Order Should Be Reversed Because
          The Plan' Violates FTB's Setoff Rights in Violation of
          Section 553 ..........................................................................16

     III.   Relief Requested .................................................................19

Conclusion......................................................................................21

Certificate of Compliance ..............................................................23

Certificate of Service .....................................................................24

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*
　　787 F.2d 1352 (9th Cir. 1986)...................................................5

*Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group Inc.)*
　　963 F.2d 1269 (9th Cir. 1992)..................................................19

*Celotex Corp. v. Edwards*
　　514 U.S. 300 (1995)................................................................3

*In re Charterhouse, Inc.*
　　84 B.R. 147 (Bankr. D. Minn. 1988).......................................20

*Marshall v. Marshall (In re Marshall)*
　　721 F.3d 1032 (9th Cir. 2013)..................................................5

*Motor Vehicle Casualty Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*
　　677 F.3d 869 (9th Cir. 2012)...................................................20

*Newbery Corp. v. Fireman's Fund Ins. Co.*
　　95 F.3d 1392 (9th Cir. 1996)...................................................17

*Pope Estate Co. v. Johnson*
　　43 Cal.App.2d 170 (1941)........................................................11

*United States v. Hinkson*
　　585 F.3d 1247 (9th Cir. 2009)...................................................5

*United States v. U.S. Gypsum Co.*
　　333 U.S. 364 (1948)................................................................5

**STATUTES**

United States Code, Title 11
§ 1101 .................................................................................................19
§ 1127(b) .............................................................................................20
§ 1129(a)(11) ..................................................................................*passim*
§ 1141 .............................................................................................18, 19

United States Code, Title 28
§ 157 .....................................................................................................3
§ 157(a) .................................................................................................3
§ 157(b)(1) ............................................................................................3
§ 157(b)(2)(A) .......................................................................................3
§ 157(b)(2)(L) .......................................................................................3
§ 158(a)(1) ............................................................................................4
§ 158(c)(1)(B) .......................................................................................4
§ 1334(a) ...............................................................................................3
§ 1334(b) ...............................................................................................3

Bankruptcy Code
§ 362(b)(26) ........................................................................................17
§ 503(b)(1)(B) .......................................................................................9
§ 505 ...................................................................................................12
§ 505(a) ...............................................................................................13
§ 553 ...........................................................................................*passim*
§ 553(a) ...........................................................................................2, 17
§ 1122 ..................................................................................................11
§ 1123 ..................................................................................................11
§ 1129 ............................................................................................11, 20
§ 1129(a)(1) ..........................................................................13, 16, 19, 21
§ 1129(a)(9)(A) ................................................................................9, 21
§ 1141(d) .............................................................................................19

California Revenue and Taxation Code
    § 19108 ................................................................................................17
    § 19314 ................................................................................................17

**COURT RULES**

Federal Rules of Bankruptcy Procedure
    Rule 8005(a) ..........................................................................................4

# INTRODUCTION

Should the Court vacate the Bankruptcy Court's Tax Order, which is the subject of a concurrent appeal, the Bankruptcy Court's decision to confirm Debtor's plan of reorganization will be defective and should be modified. The Bankruptcy Court's Confirmation Order relies on the validity of its Tax Order to find that Debtor's proposed plan is feasible. If the Court agrees with FTB in its separate appeal that the Bankruptcy Court erred by issuing the Tax Order, the Bankruptcy Court's feasibility determination will be erroneous, which, in turn, will require modification of the Confirmation Order.

The Bankruptcy Court's feasibility determination is based on its finding regarding only one tax event for Debtor's 2022 tax year: that the Settlement Payment made on his behalf by his current employer, Uber to his former employer, Google is an insurance payment and, therefore, does not give rise to taxable gross income. The Bankruptcy Court made no other determinations regarding Debtor's income taxes for 2022 and, based on its determination that the Settlement Payment is not taxable, ruled that Debtor's Plan need not provide for a payment reserve to cover any material income taxes arising from the Plan's implementation. If the Court reverses the Tax Order, however, then the Bankruptcy Court's ruling that the Plan is feasible without providing for a payment reserve is unfounded and should be reversed.

Additionally, the Confirmation Order should also be reversed because the Plan improperly cuts off FTB's rights to setoff in violation of section 553(a) of the Bankruptcy Code. Section 553(a) specifically preserves setoff rights for all creditors, including FTB. The Bankruptcy Court made an error of law when it ruled that the discharge injunction contained in the Plan can curtail FTB's valid setoff rights preserved under section 553.

If the Tax Order is reversed, any administrative expense claim that may arise from the Settlement Payment will be paid in full through the Plan, or as otherwise agreed by FTB. Debtor has already admitted that, absent the Tax Order that determines that the Settlement Payment does not give rise to gross income, the Plan is not feasible. Moreover, if the Plan is substantially consummated at the time the Court rules on this appeal, then vacating the Confirmation Order could prejudice Debtor's other creditors. In this circumstance, equity demands that the Court direct the Bankruptcy Court to modify the Confirmation Order to provide that provisions of the Confirmation Order concerning feasibility, the tax determinations, and debtor's discharge not apply to FTB as to debtor's tax liabilities for the 2022 tax year. Furthermore, the injunction language that cuts off FTB's setoff rights must also not apply to FTB.

# JURISDICTIONAL STATEMENT

This is an appeal from a final order of the United States Bankruptcy Court for the Northern District of California (Bankruptcy Court), titled Findings of Fact, Conclusions of Law, and Order Approving the Combined Disclosure Statement and Chapter 11 Plan dated March 29, 2022 (Confirmation Order), entered May 3, 2022, in Debtor's Chapter 11 bankruptcy case, Case No. 3:20-bk-30242-HLB. 1-ER-FTB-(0005-0029) [Dkt. 1030].[1] The Confirmation Order approved Debtor's Chapter 11 Plan of Reorganization dated March 29, 2022 (Plan) 4-ER-FTB-(0520-0594) [Dkt. 940].

A federal court's jurisdiction is created and limited by statute. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). District Courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). District Courts have concurrent jurisdiction over cases under title 11. 28 U.S.C. § 1334(b). As authorized by 28 U.S.C. § 157, the District Court entered General Order 24, referring all cases described in 28 U.S.C. § 1334(b) to the bankruptcy judges of the Northern District of California. Here, the Bankruptcy Court had jurisdiction to enter the Confirmation Order under 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and (b)(2)(L).

---

[1] Citations to FTB's Excerpts of Record are formatted as [volume number]-ER-FTB-([page number(s)]: [line number(s)]), followed by the Bankruptcy Court's docket number.

Appellant California Franchise Tax Board (FTB) filed a notice of appeal from the Bankruptcy Court's order on May 3, 2022. 5-ER-FTB-(0869-0898) [Dkt. 1037]. Pursuant to sections 158(a)(1) and (c)(1)(B) of title 28, and Rule 8005(a) of the Federal Rules of Bankruptcy Procedure, FTB filed a statement of election to have this appeal heard by the district court. 5-ER-FTB-(0870:24-26) [Dkt. 1037].

## STATEMENT OF ISSUES PRESENTED

FTB presents the following issues on appeal.

1.    Is a bankruptcy court's determination of the future potential tax effects of the yet unconfirmed plan an impermissible advisory opinion?

2.    May a bankruptcy court rely on an advisory opinion regarding the future tax effects of a proposed plan of reorganization in considering whether to confirm the plan of reorganization?

3.    Did the Bankruptcy Court err in confirming Debtor's plan of reorganization without requiring a reserve for any material taxes in connection with a settlement payment provided for in the plan of reorganization?

## STANDARD OF APPELLATE REVIEW

The three issues listed above concern whether the Bankruptcy Court may consider the future potential tax effects of the proposed plan of reorganization in

deciding whether the plan meets the requirements for confirmation, including whether the plan is feasible as described under 11 U.S.C. § 1129(a)(11).[2]

A bankruptcy court's decision to confirm a Chapter 11 plan is reviewed for abuse of discretion. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013). A finding is "clearly erroneous" when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A bankruptcy court abuses its discretion if first, it fails to identify or apply the correct legal rule, and second, the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009). The determination that the plan satisfies the confirmation requirements necessarily requires the bankruptcy court to make factual findings, which are reviewed under a clear error standard. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1357 (9th Cir. 1986).

## STATEMENT OF THE CASE

In late 2015, Debtor considered leaving Google, and the self-driving car project within Google that Mr. Levandowski co-founded, to start a new self-

---

[2] Unless otherwise specified, all further statutory references are to title 11 of the United States Code.

driving company, Ottomotto (Otto).  FTB's Request for Judicial Notice (RJN),

RJN-FTB-(003 at ¶ 1; 004 at ¶ 4) [CR Dkt. 1]; RJN-FTB-(027:19-24; 028:11-22)

[CR Dkt. 102].[3]  A few months later, Debtor did sell Otto to Uber and left

Google's employment to join Uber's self-driving program.  2-ER-FTB-(0103: 16-

19) [Dkt. 147]; RJN-FTB-(029:5-10) [CR Dkt. 102].  Debtor anticipated that

Google would sue him, and as a condition of the sale of Otto and his employment

with Uber, Uber agreed to indemnify him against possible damages

(Indemnification Agreement).  2-ER-FTB-(0102-0103, ¶¶ 6-10) [Dkt. 147]; 3-ER-

(0295-0296) [Dkt. 831]; 3-ER-FTB-(0463) [Dkt. 917].  Debtor asserts that Uber

also provided indemnification agreements to Otto and four other employees who

moved from Google to Uber (Diligenced Employees).  3-ER-FTB-(0472:6-7)

[Dkt. 917].

Google brought two arbitration actions against Debtor, alleging breach of

fiduciary duty, breach of his employment agreements relating to misuse of

confidential information, violation of his nonsolicitation obligations, and breach of

other noncompetition and nonsolicitation obligations.  2-ER-FTB-(0117)

[Dkt. 147].  The arbitration panel found that Debtor breached various contracts

with Google, breached the tort duty of loyalty to Google, and violated California's

---

[3] Citations to FTB's RJN are formatted as RJN-FTB-([page number(s)]: [line number(s)]), followed by the docket number of the criminal matter (CR) or adversary proceeding (AVP).

Unfair Competition Law, and the panel issued an award of $184,081,335.29 in favor of Google. 2-ER-FTB-(0096) [Dkt. 64]. Thereafter, the California Superior Court confirmed the arbitration award and entered judgment of $179,047,998.64 against Debtor. 2:ER-FTB-(02587-0259) [Dkt. 147-17]; 3-ER-FTB-(0296) [Dkt. 831]; 3-ER-FTB-(0463) [Dkt. 917]. On the same day, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. 2-ER-FTB-(0030-0038) [Dkt. 1]; 2-ER-FTB-(40-93) [Dkt. 14]; 2-ER-FTB-(95-99) [Dkt. 64].

After two years in bankruptcy, Debtor, Google and Uber reached a settlement (Settlement Agreement), providing in relevant part that Uber would pay Google for some portion of the award Google obtained against Debtor in the superior court action (Settlement Payment). 2-ER-FTB-(0288) [Docket Text Order, dated February 10, 2022]; 3-ER-FTB-(0314, 0316) [Dkt. 831-1]; 3-ER-FTB-(0289-0379) [Dkt. 831 through Dkt. 831-4]. The amount of the Settlement Payment is redacted in publicly accessible court filings.[4] It is undisputed that Debtor, Google and Uber

---

[4] *See e.g.,* 3-ER-FTB-(0316) [Dkt. 831-1: Settlement Agreement at §§ 1.6, 2.1]; 3-ER-FTB-0384 [Dkt. 832-1: Liquidation Analysis if Settlement Agreement is approved]; 3-ER-FTB-(0386-0387) [Dkt. 833: Declaration of Anthony S. Levandowski in Support of Settlement]; 3-ER-FTB-(0389, 0391) [Dkt. 835 and 836: Proposed Redacted Documents, not publicly available]; 3-ER-FTB-(0442) [Docket Text Order, dated March 2, 2022 ("The record of the hearing [regarding the Settlement Agreement] will be sealed to preserve the confidentiality of certain terms of the settlements described in the Motion."]; 3-ER-FTB-(0444) [Docket Text Order, dated March 3, 2022 ("To preserve the confidentiality of certain terms of the agreements described in the [9019] Motion, the record of the continued

entered into the Settlement Agreement, which the Bankruptcy Court later approved, and that the Settlement Payment was then paid pursuant to the Indemnification Agreement.

Debtor also proposed a combined plan of reorganization and disclosure statement (Plan), which contemplates the creation of a liquidating trust (Residual Trust).[5]  4-ER-FTB-(0521-0594) [Dkt. 940].  The Plan does not reserve for (and, by the terms of the Settlement Agreement, Debtor will not have reserves sufficient for) any material taxes in connection with the Settlement Payment.  3-ER-FTB-(0466:22-25) [Dkt. 917].  Debtor structured the Settlement Agreement and the Plan so that the reorganization could succeed only if the proposed Settlement Payment would not give rise to income tax to Debtor individually or to his bankruptcy estate.  4-ER-FTB-(0719 at 12:38 – 12:52) [Dkt. 1023]; 4-ER-FTB-(0733: 13-19) [Dkt. 1024].

---

hearing will be sealed.")]; 3-ER-FTB-(0446) [Docket Text Order, dated March 10, 2022 ("The continued hearings will convene via Zoom and the record will be sealed." 3-ER-FTB-(0456) [Dkt. 904: Sealed Transcript of March 11, 2022 hearing]; 3-ER-FTB-(0457-0511) [Dkt. 917, 918: Tax Motion and supporting declaration]; 3-ER-FTB-(0516-0519) [Dkt. 934, 936: Sealed Redacted Transcripts of Hearings on March 10, 2022 and March 3, 2022]; 4-ER-FTB-(0712-0717) [Dkt. 1012: Declaration of Allan Soong in Support of Confirmation].

[5] Debtor moved for conditional approval of the Plan and disclosure statement on February 23, 2022.  3-ER-FTB-(0392-0440) [Dkt. 859, 860].  The Bankruptcy Court tentatively approved the disclosure statement on April 1, 2022. Dkt. 950, 951.  Debtor filed a notice of tentative approval of the disclosure statement and hearing on confirmation of the Plan on April 4, 2022.  Dkt. 955.

With confirmation of the Plan and approval of the Settlement Agreement, Debtor also moved for an order declaring that the Settlement Payment does not give rise to gross income or, in the alternative, that the Plan is feasible without reserving for federal or state income taxes (Tax Motion). 3-ER-FTB-(0462:7, 0467:26, 0468:3, 0468 at n.2, 0469:6, 0469:18, 0474:5, 0475-0477, 0479,0482) [Dkt. 917]. The Bankruptcy Court granted the Tax Motion, holding that "the Uber settlement payment does not constitute gross income for Mr. Levandowski or for his bankruptcy estate." 3-ER-FTB-(0719 at 1:24:16 – 1:24:24) [Dkt. 1023]; 4-ER-FTB-(0777:23-25) [Dkt. 1024]. The Bankruptcy Court entered the order granting the Tax Motion (Tax Order) on May 2, 2022. 1-ER-FTB-(0001-0004) [Dkt. 1028].

FTB and the United States on behalf of the Internal Revenue Service ("IRS"), objected to confirmation of the Plan, arguing that the Plan fails to satisfy the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code. 4-ER-FTB-(0652-0673) [Dkt. 985, Dkt. 996]. The income tax liabilities constitute Administrative Expense Claims as defined under the Plan (4-ER-FTB-(0527:3-10) [Dkt. 940: Plan Definitions]), and as contemplated under § 503(b)(1)(B) of the Bankruptcy Code. Administrative Expense Claims must be paid in full through the Chapter 11 Plan, or as otherwise agreed by the claimants. 4-ER-FTB-(0551:9-14 [Dkt. 940: Plan Section VI.A.]; § 1129(a)(9)(A). The Plan purports to pay Allowed Administrative Expense Claims in full, yet fails to provide a reserve to

pay income taxes for the 2022 tax year, which could be significant sums in the absence of the Tax Order. 4-ER-FTB-(0656-0658) [Dtk. 985]; 4-ER-FTB-(0670) [Dkt. 996]. The taxing agencies have not yet filed Administrative Expense Claims in this case, and Debtor has not objected to any Administrative Expense Claims of FTB and the IRS. FTB and the IRS also objected to confirmation because the Plan seeks an improper injunction that could prevent the taxing agencies from recovering the disputed taxes under California and federal law. 4-ER-FTB-(0659:3-14) [Dkt. 985]; 4-ER-FTB-(0670:16-0671:18) [Dkt. 996]. The IRS made additional arguments in objecting to confirmation. 4-ER-FTB-(0663-0673) [Dkt. 996]. Debtor responded to the taxing agencies' objections to confirmation in his Memorandum of Law in support of confirmation. 4-ER-FTB-(0698-0701) [Dkt. 1006].

The Bankruptcy Court held a hearing on the Tax Motion and confirmation of the Plan on April 21, 2022. 4-ER-FTB-(0718-0181) [Dkt. 1023, 1024]. During the hearing, the Bankruptcy Court concluded that its ruling in the Tax Order rendered several of FTB's arguments moot, because (1) there are no tax liabilities for 2022 that qualify as an administrative expense claim entitled to payment in full under the Plan, thus the Plan need not provide a reserve to pay the liabilities for tax year 2022 in full; (2) the Bankruptcy Court can and did issue a determination of tax liability for the ongoing 2022 tax year; and (3) the Plan need not provide a reserve

for payment of taxes on the amount of Google's judgment, which is north of $179 million, because the Tax Order concluded that the Settlement Payment did not constitute gross income, and because the undisclosed amount of the Settlement Payment does not equal the amount of Google's judgment. 4-ER-FTB-(0719 at 1:32:43 – 1:33:01) [Dkt. 1023]; 4-ER-FTB-(0782:22-0783:6) [Dkt. 1024]; see also 4-ER-FTB-(0719 at 1:13:18 – 1:13:40) [Dkt. 1023]; 4-ER-FTB-(0770:19-24) [Dkt. 1024]. Further, the Bankruptcy Court explicitly rejected FTB's argument that litigation concerning a given tax period must resolve all disputes arising from that tax period under *Pope Estate Co. v. Johnson*, 43 Cal.App.2d 170, 174 (1941). 4-ER-FTB-(0719 at 1:32:04 – 1:33:42) [Dkt. 1023]; 4-ER-FTB-(0783:2-6) [Dkt. 1024]. The Bankruptcy Court also rejected each of the United States' arguments objecting to confirmation. 4-ER-FTB-(0719 at 1:33:53 – 1:40:06) [Dkt. 1023]; 4-ER-FTB-(0783:19-0787:2) [Dkt. 1024]. Next, the Bankruptcy Court held, "I find and conclude that the plan complies with applicable provisions of Sections 1122, 1123 and 1129 of the Bankruptcy Code, and I will approve [Debtor's] disclosures on a final basis and confirm his plan" without a reserve for taxes. 4-ER-FTB-(0719 at 1:50:12 – 1:50:36) [Dkt. 1023]; 4-ER-FTB-(0793:12-15) [Dkt. 1024]. The Bankruptcy Court approved the Settlement Agreement. 4-ER-FTB-(0819-0822) [Dkt. 1029].

The Bankruptcy Court confirmed the Plan, and entered the Confirmation

Order on May 2, 2022.  1-ER-FTB-(0005-0029) [Dkt. 1030].  On the issue of

feasibility, the Confirmation Order held:

> The evidence provided in support of confirmation establishes
> that the assets to be vested in the Residual Trust will be
> sufficient to enable the Trustee to perform the duties and
> functions outlined under the Plan and to satisfy post-Effective-
> Date obligations and, there is no need for the Debtor in
> Possession or the Residual Trust to create a tax reserve in
> connection with the Uber Settlement Payment.  Furthermore,
> reasonable, persuasive, and credible evidence proffered or
> adduced at or prior to the Confirmation Hearing establishes
> that the Plan is feasible.  Finally, given that the Plan
> contemplates the liquidation or other final administration of all
> the Debtor in Possession's property, confirmation of the Plan
> is not likely to be followed by the need for further financial
> reorganization.  Thus, Bankruptcy Code section 1129(a)(11) is
> satisfied.

1-ER-FTB-(0013 at ¶ 22) [Dkt. 1030].  It appears the conditions precedent to the

Effective Date of the Plan (*see* 4-ER-FTB-(0531 at ¶ 41; 0567:20-0568:6) have

occurred, and the Plan has become effective.

FTB filed a notice of appeal of the Tax Order (Tax Appeal).  5-ER-FTB-

(0860-0868) [Dkt. 1036].  The Tax Appeal is pending concurrently with the instant

matter before the Court.  [Case No. 22-cv-02789].  In the Tax Appeal, FTB argued

that the Court should reverse the Tax Order because the Bankruptcy Court lacked

authority to enter it because the Tax Order did not determine the amount or legality

of a tax, which is the authority granted under Section 505; instead, the Tax Order is

a declaratory judgment regarding one component of a larger tax calculation.

Alternatively, to the extent the Bankruptcy Court determined a tax, it violated basic principles of tax procedure and accounting, as well as acted on an insufficient evidentiary record because the tax period remained ongoing. Moreover, even if Section 505(a) allowed the Bankruptcy Court to make such a determination, the court erred by ruling that the Settlement Payment was effectively an insurance payment that was exempt from taxation because (1) there is no blanket exemption against taxation of insurance payments, (2) the Indemnification Agreement fails to meet the definition of insurance, and (3) judicial estoppel should apply because Debtor previously successfully argued that the Settlement Payment is not an insurance payment. Because the Confirmation Order necessarily depends on the Tax Order, FTB also filed a notice of appeal of the Confirmation Order, initiating this appeal. 5-ER-FTB-(0869-0898) [Dkt. 1037].

## SUMMARY OF ARGUMENT

The Plan was not confirmable because it did not comply with all applicable provisions of the Bankruptcy Code as required under section 1129(a)(1) in two independent ways. First, if the Court vacates the Tax Order, then there are no findings to support the Bankruptcy Court's determination that the Plan was feasible under section 1129(a)(11). Second, irrespective of the Tax Order, the Plan provided for an improper injunction that could prevent the taxing agencies from

recovering the disputed taxes under California and federal law, in violation of section 553.  Accordingly, the Confirmation Order should be reversed.

However, if the Plan is substantially consummated at the time the Court decides this appeal, equity demands that the Confirmation Order not be reversed.  As to the state tax claims arising from the Settlement Payment, any resulting administrative expense claim must either be paid in full through the Plan, or as otherwise agreed by FTB.  Thus, FTB requests an alternative equitable remedy: the Confirmation Order, and any discharge applicable thereunder, does not apply to FTB for Debtor's 2022 tax year.  Further, in any event, the Plan's language regarding setoff should not apply to FTB.

## ARGUMENT

### I. WITHOUT THE TAX ORDER, THE CONFIRMATION ORDER LACKS FINDINGS OF FACT AND CONCLUSIONS OF LAW TO SUPPORT IT

If the Court reverses the Tax Order, then the Confirmation Order should also be reversed because there are no inferences from the facts in the record that the Plan met the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code.  That statute requires that confirmation of a plan is not likely to be followed by the need for further liquidation or reorganization, unless such liquidation or reorganization is proposed in the Plan.  § 1129(a)(11).  Here, the Plan did not propose a further liquidation or reorganization.  4-ER-FTB-(0521-0594).

The Bankruptcy Court's findings of fact and conclusions of law concerning feasibility are limited to statements that "the evidence provided in support of confirmation" and "evidence proffered or adduced at or prior to the Confirmation Hearing," without further description, establish the Plan's feasibility. 1-ER-FTB-(0013 at ¶ 22). The Bankruptcy Court failed to identify or provide further explanation of the referenced evidence.

However, the Bankruptcy Court indicated that its ruling in the Tax Order was at least one consideration in support of the feasibility determination. FTB and the United States challenged the Plan's feasibility on the grounds that it purports to pay allowed administrative claims in full, yet fails to provide a reserve to pay taxes for the 2022 tax year. 4-ER-FTB-(0656:9-11) [Dkt.985]; 4-ER-FTB-(0667:6-7; 0670:1-9) [Dkt. 996]. The Bankruptcy Court declined to address the taxing agencies' feasibility concerns, stating that the Tax Order rendered FTB's and the IRS's arguments regarding feasibility moot. 4-ER-FTB-(0719 at 1:32:04-1:33:41; 1:35:43 – 1:35:55; 1:36:54 – 1:37:12) [Dkt. 1023]; 4-ER-FTB-(0782:16-0783:16; 0784:22-25; 0785:17-21) [Dkt. 1024]. The Bankruptcy Court also declined to issue any evidentiary determinations that would allow one to conclude that the Plan was feasible without a tax reserve, including that the Bankruptcy Court did not address any of the eight, specific findings that Debtor requested in the Tax Motion. 4-ER-FTB-(0718-0818) [Dkt. 1023, 1024], declining to address Debtor's

request at 3-ER-FTB-(0479:10-0480:5). Accordingly, it appears the Tax Order serves as at least one evidentiary ground upon which the Bankruptcy Court concluded that the Plan was feasible.

Thus, if the Tax Order is reversed, the determination in the Confirmation Order that the Plan is feasible under Section 1129(a)(11) must also be reversed because the Bankruptcy Court failed to issue further factual findings to support its decision. Moreover, if the Tax Order is reversed, there is no determination that the Plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan." § 1129(a)(11). Accordingly, if the Tax Order is reversed, the feasibility determination in the Confirmation Order must also be reversed.[6]

## II. THE CONFIRMATION ORDER SHOULD BE REVERSED BECAUSE THE PLAN VIOLATES FTB'S SETOFF RIGHTS IN VIOLATION OF SECTION 553

The Confirmation Order should be reversed because the Plan violates Bankruptcy Code section 553, meaning that the Plan does not comply with the applicable provisions of the Bankruptcy Code, as required for confirmation under section 1129(a)(1). Section 553 preserves prepetition setoff rights, by stating that

---

[6] Generally, FTB would request that the Confirmation Order be reversed and remanded for further determinations regarding the Plan's feasibility as required under section 1129(a)(11). As explained in Argument section III, *infra*, FTB suggests that an alternative form of relief is appropriate.

the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). Section 553 is not an independent source of law governing setoff. *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996). Instead, "it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law." *Id.* The non-bankruptcy law from which FTB derives its setoff rights includes California Revenue and Taxation Code sections 19108 and 19314.[7] The former statute requires an overpayment due to a taxpayer from one year to be credited to a deficiency owing from the same taxpayer for any other year. The latter statute requires an overpayment due to a taxpayer for any year to be allowed as an offset if computing any deficiency in tax, for the same or any other year, in the context of a taxpayer's claim for refund. Additionally, section 362(b)(26) of the Bankruptcy Code provides that the automatic stay in bankruptcy matters is not applicable to the setoff under applicable nonbankruptcy law of a, income tax refund against an income tax liability, where the two relevant tax periods both ended before the debtor filed a bankruptcy petition.

---

[7] FTB referenced these authorities in its objection to confirmation. 4-ER-FTB-(0659) [Dkt. 985].

Here, the Plan violates section 553 because it provides for a discharge and a related injunction, prohibiting Debtor's creditors from "asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, except as part of the claims resolution process set forth in Section X of this Combined Plan and Disclosure Statement." 4-ER-FTB-(0561:25-0562:26) [Dkt. 940]. As Debtor's counsel explained, "What is not reserved is the ability to set off against a claim that the Debtor might have that does not fall within the claim resolution process, which to put a fine point on it, would be a post-confirmation claim that Debtor would have." 4-ER-FTB-(0719 at 1:46:03 – 1:46:17) [Dkt. 1023]; 4-ER-FTB-(0790:22-0791:1) [Dkt. 1024]. Thus, if Debtor has a post-confirmation claim against FTB, the discharge injunction prevents FTB from effectuating a setoff, except through the claims resolution process in bankruptcy. By contrast, the Plan provides that the Residual Trust will have the right of setoff to reduce any claim. 4-ER-FTB-(0560:26-28) [Dkt. 940]."

The Bankruptcy Court abused its discretion in confirming the Plan with these discharge and injunction provisions. In the Ninth Circuit, a right of setoff under section 553 trumps the discharge and injunction under section 1141. "Section 553 provides that, with listed exceptions not relevant here, 'this title does not affect the right of any creditor to offset a mutual debt . . . .' This language not only establishes a right to setoffs in bankruptcy, subject to enumerated exceptions, but

seems intended to control notwithstanding any other provision of the Bankruptcy Code. To give section 1141 precedence would be to ignore this language." *Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992). The Plan's discharge and injunction exceed the scope of the discharge afforded under section 1141(d) of the Bankruptcy Code. In particular, the Plan limits creditors' rights to setoff, whereas section 1141(d) is silent on that subject. *Cf.* 4-ER-FTB-(0561:25-0562:26) [Dkt. 940] with § 1141(d). Moreover, the discharge and injunction limit creditors' setoff rights, while specifically retaining the equivalent rights for the Residual Trust. Accordingly, the Plan violated section 553, and the Bankruptcy Court erred in confirming the Plan with these discharge and injunction provisions because the Plan did not meet the requirement for confirmation under section 1129(a)(1).

## III. RELIEF REQUESTED

The Court should direct the Bankruptcy Court to amend the Confirmation Order to hold that the feasibility analysis, the tax determination, and Debtor's discharge as contemplated under the Plan not apply to FTB as to Debtor's income tax liabilities for the 2022 tax year, and that the provisions concerning setoff not apply to FTB. It is anticipated that the Plan will be substantially consummated at the time of the resolution of this appeal. *See* 11 U.S.C. § 1101 (defining

substantial confirmation as occurring where three listed requirements are met); *see also Motor Vehicle Casualty Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 882 (9th Cir. 2012) (substantial consummation does not occur until all three of these events have occurred).

If the Plan is substantially consummated, vacating the Confirmation Order would prejudice debtor's other creditors, whose rights under the plan vest upon substantial consummation. *See In re Charterhouse, Inc.*, 84 B.R. 147, 152 (Bankr. D. Minn. 1988) (noting that "[t]he generalized public interest in finality in court determinations, and the Bankruptcy Court's specific interest in the integrity of its remedies, would both be prejudiced by allowing modification of a confirmed Chapter 11 plan when the parties' rights have been settled" by confirmation). Just as section 1127(b) prohibits certain parties from modifying a confirmed plan that has been substantially consummated, the Court should resist modifying the Plan unless "circumstances warrant such modification." § 1127(b). Further, the modification must comport with section 1129 of the Bankruptcy Code. § 1127(b). A simple modification that would preserve the rights of other creditors, allow the Trustee of the Residual Trust to perform his or her duties in accordance with the remaining provisions of the Plan, and preserve FTB's rights to payment of the tax liability for the 2022 tax year, as well as FTB's setoff rights would be to modify the Confirmation Order to hold that the feasibility analysis, the tax determination,

and Debtor's discharge as contemplated under the Plan not apply to FTB as to Debtor's income tax liabilities for the 2022 tax year, and that the provisions concerning setoff not apply to FTB.

Without this modification, a reversal of the Tax Order could result in a large administrative expense claim arising from the Settlement Payment that, under the terms of the confirmed Plan, would need to be paid in full through the Plan, or as otherwise agreed by FTB. 4-ER-FTB-(0551:9-14 [Dkt. 940: Plan Section VI.A.]; § 1129(a)(9)(A). Assuming FTB and Debtor do not agree to alternative treatment, Debtor has already explained that—absent the Tax Order determining that the Settlement Payment does not give rise to gross income—the Plan is not feasible. 3-ER-FTB-(0466:22-25) [Dkt. 917]. Thus, the Confirmation Order must be reversed.

## CONCLUSION

For the foregoing reasons, if the Court vacates the Tax Order, the Court should also vacate the Confirmation Order and remand for further proceedings. The Court should also vacate the Confirmation Order because the Plan violates section 553 of the Bankruptcy Code, contrary to the requirements under section 1129(a)(1) for confirmation. In this instance, any administrative expense claim that may arise from the Settlement Payment must be paid in full through the Plan, or as otherwise agreed by FTB. Alternatively, the Court should issue

equitable relief by directing the Bankruptcy Court to amend the Confirmation Order to hold that the feasibility analysis, the tax determination, and Debtor's discharge as contemplated in the Plan not apply to FTB as to Debtor's income tax liabilities for the 2022 tax year, and that the setoff provisions contained in the discharge and injunction language of the Plan do not apply to FTB.

Dated:  September 14, 2022          Respectfully submitted,

                                          ROB BONTA
                                          Attorney General of California
                                          TAMAR PACHTER
                                          Senior Assistant Attorney General
                                          MICHAEL D. GOWE
                                          Supervising Deputy Attorney General

                                          */s/ Cara M. Porter*
                                          CARA M. PORTER
                                          Deputy Attorney General
                                          *Attorneys for Appellant*
                                          *California Franchise Tax Board*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Bankruptcy, rule 8015(a)(7)(B)(i) the undersigned counsel for appellee California Franchise Tax Board hereby certifies that the Appellant Franchise Tax Board's Opening Brief [Appeal of Tax Order] is printed in fourteen (14) point Times New Roman font and that based on the Microsoft Word computer word count function, excluding those parts of the brief not included in the word count by rule 8015(g), the text in the Appellee's Brief contains 4,849 words.

*/s/ Cara M. Porter*
Cara M. Porter
Deputy Attorney General
*Attorneys for Defendant and Appellee*
*Franchise Tax Board*

# CERTIFICATE OF SERVICE

I hereby certify that <u>September 14, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **APPELLANT FRANCHISE TAX BOARD'S OPENING BRIEF [APPEAL OF CONFIRMATION ORDER]**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 14, 2022</u>, at San Diego, California.

<table>
<tr><td>_____<br>G. Lopez<br>Declarant</td><td>_____<br>Signature</td></tr>
</table>

SF2022302025
83597970.docx