**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DARA L. SILVEIRA (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

**GOODWIN PROCTER LLP**
BRETT M. SCHUMAN (Cal. Bar No. 189247)
(BSchuman@goodwinlaw.com)
JENNIFER BRIGGS FISHER (Cal. Bar No. 241321)
(JFisher@goodwinlaw.com)
Three Embarcadero
San Francisco, California 94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041

*Attorneys for Appellees*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>             Reorganized Debtor.<br><br>The United States of America, on behalf of the Internal Revenue Service, and California Franchise Tax Board,<br><br>             Appellants,<br><br>v.<br><br>The Levandowski Residual Liquidation Trust, as successor to the Debtor in Possession, and Anthony S. Levandowski,<br><br>             Appellees. | Case Nos. 4:22-cv-02781-YGR;<br>           4:22-cv-02783-YGR;<br>           4:22-cv-02786-YGR; and<br>           4:22-cv-02789-YGR<br>(Jointly Administered)<br><br>On Appeal from Bankruptcy Court Case No. 3:20-bk-30242-HLB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS APPEALS**<br><br>Date:       November 29, 2022<br>Time:      2:00 p.m. (Pacific Time)<br>Before:   The Honorable Yvonne Gonzales Rogers<br>               1301 Clay Street<br>               Courtroom 1 (4th Floor)<br>               Oakland, CA 94612 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**  Please take notice that on November 29, 2022, at 2:00 p.m. (prevailing Pacific time), or as soon thereafter as the matter may be heard, the Honorable Yvonne Gonzales Rogers of the United States District Court for the Northern District of California, Oakland Division (the "Court"), will hear the following motion filed by Peter Kravitz, in his capacity as trustee (the "Trustee") of the Levandowski Residual Liquidation Trust (the "Trust"), successor to the debtor in possession, and Anthony S. Levandowski.

Appellees respectfully submit this motion (the "Motion") to dismiss the above-referenced appeals (the "Appeals") taken by the United States of America, on behalf of the Internal Revenue Service (the "IRS") (Case Nos. 22-cv-02781 and 22-02783), and California Franchise Tax Board (the "FTB" and, with the IRS, the "Taxing Authorities") (Case Nos. 22-cv-02786 and 22-02789), from the following orders of the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"):  The Order Granting Debtor's Motion to (I) Determine Tax Effect of Settlement Payment or (II) Find the Debtor's Plan Feasible without Reserving for Tax Thereon entered May 2, 2022 (the "Tax Order") and the Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Debtor in Possession's Combined Disclosure Statement and Chapter 11 Plan dated March 29, 2022 entered May 2, 2022 (the "Confirmation Order").  A proposed form of order is attached hereto as Exhibit A.

## INTRODUCTION

The Taxing Authorities challenge on appeal a Plan confirmation and tax determination that arose from three interlocking decisions:  one approving a settlement agreement that allowed one company to pay another to resolve claims against debtor Anthony S. Levandowski ("Debtor"), one determining that Debtor did not incur any tax liability for that company-to-company payment, and one confirming the Plan, which was centered on the critical determination that there was no tax liability.  Inexplicably, the Taxing Authorities chose to appeal only two of those three decisions—and have not appealed the order allowing the payment to be made.  As a result, the payment has gone out, and there is no pool of assets that could possibly satisfy the Taxing Authorities' desired remedy on remand.

1      The Taxing Authorities have put themselves in a situation where, even if they win on

2   appeal, they will not be able to obtain the relief they seek.  To be sure, their appeals ask for

3   vacatur of the Tax Order and the Confirmation Order.  But the Taxing Authorities will not be

4   able to obtain on remand the true relief they seek—payment for any tax liability arising from the

5   settlement proceeds.  The time to seek such payment was before the settlement payment was

6   made.

7      The Appeals therefore come too late.  Because their claimed injuries are not ultimately

8   redressable, their Appeals should be dismissed for lack of standing.  Moreover, because the

9   Taxing Authorities failed to act diligently in seeking the remedies they hope to tardily obtain

10  now, and because that lack of diligence will result in a tremendous inequity if the Taxing

11  Authorities were to prevail on appeal, the Appeals should be dismissed as equitably moot.

12                                **STATEMENT OF FACTS**

13  **I.      Uber Indemnifies Debtor for Claims by Google; Google Sues Debtor; and Debtor**

14  **Sues to Enforce the Indemnity.**

15      Debtor worked for Google, LLC ("Google") on a project aimed at developing and

16  marketing a self-driving vehicle.  IRS Excerpts of Record [Docket No. 44-1] ("IRS ER") at 159.

17  In January 2016, he left Google and formed his own company, Ottomotto LLC ("Otto").  Debtor

18  sold Otto to Uber Technologies, Inc. ("Uber") in August 2016.  As a condition of that sale, Uber

19  agreed to indemnify Debtor for certain claims that could be brought by Google against Debtor

20  ("Indemnification Agreement").  Google did in fact sue Debtor, alleging claims covered by the

21  Indemnification Agreement.  *Id.* at 160.  On March 4, 2020, Google obtained a judgment against

22  Debtor for $179,047,998.64.  Appellee's Supplemental Excerpt of Record ("SER"), Ex. 2.

23      Debtor could not afford to pay that massive judgment against him, so he filed for

24  bankruptcy and sought Chapter 11 relief.  Uber refused to honor the terms of the Indemnification

25  Agreement, so Debtor sued Uber in Bankruptcy Court to enforce the indemnity.  Google was

26  permitted to intervene in that adversary proceeding.  IRS ER at 160.

27  ///

28  ///

**II.**      **After Google, Uber, and Debtor Reach a Settlement, Debtor Files Two Motions—a Settlement Motion and a Tax Motion—and Seeks Plan Confirmation.**

Two years after Debtor sued Uber to enforce the Indemnification Agreement, the parties reached a settlement.  The settlement ("Global Resolution") achieved three things:  it (1) resolved the various claims between Debtor, Uber, and Google; (2) resolved fraudulent transfer claims against Debtor's Charitable Lead Annuity Trust; and (3) established a roadmap for filing, and seeking confirmation of, a disclosure statement and Chapter 11 plan.  As relevant here, the material terms of the Global Resolution were as follows:  the parties would release one another, *e.g.*, Google would release Uber and vice-versa, Debtor would release Google and vice-versa, and Uber would release Debtor and vice-versa.  Uber would make an "indefeasible" payment to Google (the "Main Uber Payment"), and would also pay the estate $2 million, which would be used to pay claims in accordance with a proposed Chapter 11 plan.

In accordance with Federal Rule of Bankruptcy Procedure 9019, Debtor filed a motion for the Bankruptcy Court's approval of the Global Resolution ("Settlement Motion").  Debtor gave both Taxing Authorities notice of the Settlement Motion, but they did not challenge the Motion.  Debtor explained in the Settlement Motion that "a key provision" of the proposed settlement was "a direct, indefeasible payment to Google," *i.e.*, the payment could not be clawed back by the estate.  Franchise Tax Board Excerpt of Record [Docket No. 44] at ER-FTB-0309 (lines 20-21).  Moreover, Debtor explained that it was necessary for Google to receive payment prior to the confirmation of the Plan, *see* ER-FTB-0309 (lines 19-28)-0310 (lines 1-11), and emphasized both in its papers and in open court the tax issues associated with the Main Uber Payment.  ER-FTB-0310 (note 6); SER Exs. 5-9.

The Bankruptcy Court directed Debtor to file a motion to determine the tax consequences of the Global Resolution under 11 U.S.C. § 505 ("Tax Motion").  The Tax Motion sought a determination that the Main Uber Payment would not constitute gross income for Debtor or, in the alternative, that the Plan was feasible without reserving funds for taxes arising from the Uber Settlement Payment.  The Taxing Authorities opposed the Tax Motion on jurisdictional and feasibility-related grounds.

1    After filing the Tax Motion, Debtor filed the Plan and sought confirmation.  Much like

2  the Settlement Motion, the Plan stated:

3    > If the Court does not grant the [Tax Motion], or otherwise finds
   > that the Debtor or his estate may have significant tax liability in
4    > connection with the Uber Settlement Payment, the Debtor may not
   > be able to establish that the Plan is feasible at the Confirmation
5    > Hearing.

6  IRS ER at 164.

7  **III.     Because the Taxing Authorities Appeal only the Bankruptcy Court's Orders on the**

8  **Tax Motion and the Plan Confirmation—Thereby not Stopping Uber's Settlement**

9  **Payment to Google—Uber Goes Forward and Honors its Obligation to Pay Google.**

10    The Bankruptcy Court granted the Settlement Motion and the Tax Motion, and it

11  approved the Plan.  In the order granting the Settlement Motion ("Settlement Order"), the court

12  instructed that "Uber shall pay the Main Uber Payment directly to Google and such payment

13  shall be indefeasible, and not subject to avoidance for any reason, upon receipt."  ER-FTB-0822.

14  In an oral ruling on the Tax Motion, the Bankruptcy Court held that it had the authority to decide

15  the Tax Motion, and that the Main Uber Payment was not gross income for either Debtor or his

16  estate.  It issued the Tax Order and confirmed the Plan, rejecting the Taxing Authorities'

17  arguments on the Plan's feasibility in doing so.

18    The Taxing Authorities appealed the Tax Order and the Confirmation Order, but not the

19  Settlement Order.  Notably, it was the Settlement Order that ordered Uber to make the Main

20  Uber Payment indefeasibly to Google.  The Taxing Authorities sought a stay pending appeal of

21  the Tax Order and the Confirmation Order, but the now-approved Global Resolution went on

22  unchallenged.  Under the terms of the Global Resolution, Uber made the Uber Main Payment on

23  or before May 20, 2022.  *See Declaration of Tobias S. Keller in Support of Trust's Motion to*

24  *Dismiss Appeals* ("Keller Decl.") at ¶ 4.

25  **IV.     Substantial Consummation of the Plan.**

26    The Plan became effective on August 25, 2022.  *See* Keller Decl. at ¶ 5.c.  It has since

27  been substantially consummated.  *See Declaration of Amanda Swift in Support of Trust's Motion*

28  *to Dismiss Appeals* ("Swift Decl.") at ¶ 4.

**ARGUMENT**

I.     **The Taxing Authorities Lack Standing to Appeal Because the Court Cannot Grant the Redress that the Taxing Authorities Seek.**

The Taxing Authorities are reluctant to plainly state the remedy that they hope to achieve if they were to win their appeals:  claw back the Main Uber Payment so that the Global Resolution can be modified for the Taxing Authorities to get their share of the pie.  The IRS claims that Debtor has "assets … sufficient to satisfy all claims:"  alleged total assets of "$239,879,897, with the Uber indemnification claim valued at $179,523,572, and other assets at $60,356,325."  IRS Confirmation Brief at 11-12.  The total claims are "the claim listed by Google listed at $179,047,999, secured claims of $2,100,000, administrative and priority claims of $7,628,749, and general unsecured claims of $4,390,388."  IRS Confirmation Brief at 12.  Based on the IRS's back-of-the-envelope arithmetic, "Debtor has $60 million in assets and $14 million in claims."

Glaringly absent from that summation is the source of funds for the tax liability that the Taxing Authorities are hoping to impose.  Simply put, if this Court were to vacate the Tax Order and the Confirmation Order and reimpose tax liability for the Main Uber Payment, there is no way for the estate to pay the taxes associated with the Main Uber Payment and for the Plan to remain confirmed.  *See* IRS Confirmation Brief at 4-5 (acknowledging that income taxes must be paid as of the effective date).  The only way to come up with an arrangement that would satisfy the Taxing Authorities is to add the Main Uber Payment back into the pot.  But because the Main Uber Payment was indefeasibly made by Uber to Google, and the Settlement Order making the Main Uber Payment indefeasible was not appealed (or otherwise stayed), that money cannot be added back to the pot, no matter what this Court does with the Tax Order and the Plan Confirmation Order.

"[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he has personally suffered some actual or threatened injury … and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."  *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) (citation and internal quotation marks

1    omitted).  These requirements—particularly redressability—apply on appeal:  if it is "speculative

2    whether a favorable appellate decision would redress [an] injury," there is no standing to pursue

3    the appeal.  *Sierra Club v. Dombeck*, 55 F. App'x 411, 412 (9th Cir. 2002).

4           Because of the Taxing Authorities' oversight in failing to appeal (or even challenge) the

5    Settlement Motion and the Settlement Order, the redress that the Taxing Authorities ultimately

6    seek—a return to the pre-Main Uber Payment status quo—cannot be achieved.  The money that

7    made up the Main Uber Payment is gone, and revisiting the Tax Order and the Confirmation

8    Order will not undo that reality.

9           The IRS vaguely gestures at the possibility that "the tax could be paid from Debtor's

10   post-petition earnings or his future income," IRS Confirmation Brief at 8, as if to suggest that the

11   Main Uber Payment is not necessary to get the relief that the Tax Authorities seek.  Yet that

12   resolution is an illusory one.  Based on the Taxing Authorities' math, Debtor owes $66.2 million

13   to the IRS, and $22 million to the FTB.  IRS Tax Brief at 2 n.4, FTB Confirmation Brief at 6:25.

14   Even accounting for the $21.4 million in assets remaining in the Trust after the secured claims

15   are paid, SER, Ex. 10, and for Debtor's projected future income, the Taxing Authorities cannot

16   hope to be paid for their respective tax liability.  ER-FTB-0717 (discussing Debtor's projected

17   future income).  Any remedy for the alleged tax liability that the Taxing Authorities seek would

18   be speculative, at best.  That would not have been the case had the Taxing Authorities diligently

19   appealed and sought a stay of the Main Uber Payment.  Because the Settlement Order (which

20   could potentially give the Taxing Authorities the redress they seek) is not even on appeal, the

21   Taxing Authorities lack Article III standing to pursue their respective appeals.

22   **II.      The Appeals Should Be Dismissed as Equitably Moot.**

23          Even assuming the Taxing Authorities' vague requests for vacatur of the Tax Orders and

24   Confirmation Orders give them standing to appeal, the appeals should nevertheless be dismissed

25   because they are equitably moot.  This Court can "dismiss appeals of bankruptcy matters when

26   there has been a 'comprehensive change of circumstances … so as to render it inequitable for

27   this court to consider the merits of the appeal.'"  *In re Mortgages, Ltd.*, 771 F.3d 1211, 1214 (9th

28   Cir. 2014).  This doctrine, known as "equitable mootness," compels dismissal of an appeal if

"transactions are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy order." *Id.* at 1215 (citation and internal quotation marks omitted). Dismissal for equitable mootness is particularly appropriate where an appellant neglects to diligently pursue its available remedies—namely, by "obtain[ing] a stay of the objectionable orders of the Bankruptcy Court," thereby "permit[ting] such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal." *In re Roberts Farms, Inc.*, 652 F.2d 793, 798-99 (9th Cir. 1981).

Equitable mootness is a two-part inquiry. First, the reviewing court considers whether "the appellant appl[ied] to the bankruptcy judge for a stay," or "gave an adequate reason on the record for not doing so." *Mortgages Ltd.*, 771 F.3d at 1215. An appellant must "pursue with diligence *all available remedies* to obtain a stay of execution of the objectionable order … if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *Id.* (emphasis added). Second, if an appellant could show the necessary diligence, the appellant still must demonstrate that other equitable factors—namely, (1) "whether substantial consummation of the plan has occurred," (2) "the effect a remedy may have on third parties not before the court," and (3) whether "the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan … thereby creating an uncontrollable situation for the bankruptcy court." *In re Thorpe Insulation Co.*, 677 F.3d 869, 881 (9th Cir. 2012).

The Taxing Authorities flunk both parts of the equitable mootness test. They fell well short of being diligent: they failed to even challenge, never mind appeal and seek a stay of, the operative order that allowed the Main Uber Payment to proceed. And because of that lack of diligence, the Taxing Authorities have created a situation in which any reversal will be grossly inequitable to the Trust and Debtor. The Trust does not have sufficient assets. Thus the Taxing Authorities' only answer to prejudice is indentured servitude—that is, if they prevail on the Tax Order, Debtor will have to commit his post-confirmation income to paying off his tax-liability debts, which are non-dischargeable, for the rest of his life. It is fundamentally inequitable to force Debtor to revisit Plan confirmation without the benefit of the Main Uber Payment.

A.    **The Taxing Authorities Failed to Act Diligently by Failing to Challenge, Let Alone Appeal, the Settlement Order.**

The doctrine of equitable mootness requires appellants to be diligent in attempting to preserve the status quo:  in particular, it looks to whether the appellant earnestly tried to create a situation where there would be no need to "unscramble the eggs." *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1352 (9th Cir. 1994).  Typically, this means seeking a stay pending appeal, but more broadly speaking, it requires diligence "in challenging the bankruptcy court's underlying orders," lest "inaction permit[s] developments to proceed without [the appellant's] participation." *In re Cobalis Corp.*, 637 F. App'x 395, 396 (9th Cir. 2016).

Halfway diligence, like the Taxing Authorities', is not good enough if it lets "developments … proceed without [the appellant's] participation." *Id.*  Throughout the proceedings, it was crystal clear that the Tax Motion, the Settlement Motion, and Plan Confirmation were interlocking parts:  if one did not happen, the rest could not.  The Taxing Authorities concede that the Main Uber Payment, the approval of which was the core of the Settlement Motion and Settlement Order, is the largest asset that the estate had.  The Taxing Authorities' failure to even challenge in the first instance, let alone appeal and seek a stay for, the Settlement Order is inexplicable.  Because of that negligence, the Taxing Authorities have created an oppressive set of circumstances where the liabilities that the Taxing Authorities hope to impose cannot possibly be satisfied by the Trust's remaining assets, or a lifetime of work by Debtor.  For that reason alone, the Appeals should be dismissed as equitably moot.

B.    **The Equitable Factors Favor Dismissal of the Taxing Authorities' Appeals**.

The equitable factors also weigh in favor of dismissing the Appeals.  *See Thorpe Insulation*, 677 F.3d at 881 (after looking at whether appellant has "fully pursued its rights," a court considers whether "substantial consummation of the plan has occurred," "the effect a remedy may have on third parties not before the court," and "whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court").

///

1    First, the Plan has already been "substantially consummated."  Swift Decl. at ¶ 4.  The

2    FTB concedes this.  FTB Confirmation Brief at 19.  Rightly so:  the Plan went effective on

3    August 25, 2022.  Thus, the property to be transferred to the Trust under the Plan has already

4    been transferred.  The Trustee has assumed management of the Trust's assets and has largely

5    completed distributions to certain unsecured creditors under the Plan.  Swift Decl. at ¶ 4.

6    Second, giving the Taxing Authorities the remedies they seek with the remaining assets

7    in the Trust will work an extreme prejudice on third parties—Debtor's remaining creditors—

8    because the tax liability attached to the Main Uber Payment will not only take priority over the

9    third-party creditors' claims, but will dwarf them in size to the point where the other

10    administrative and unsecured creditors will take next to nothing.

11    Finally, there is no way for the Bankruptcy Court to fashion effective relief on remand.

12    The FTB couches the requested remedy as a "simple modification," and the IRS remains mum

13    about what would happen on remand.  Put simply, there is no way to align the remaining assets

14    and Debtor's projected future earnings to remotely begin to cover the tax liability that the IRS

15    and the FTB claims they are owed.  The only realistic way that any tax liability for the Main

16    Uber Payment could have been met was for IRS and FTB to work themselves into the

17    conversation as the Global Resolution was being approved.  They did not do that, and now it is

18    too late to claw back the money already paid—especially as the Main Uber Payment was

19    indefeasibly made.  *In re Mortgages Ltd.*, 771 F.3d at 1218 ("Clawing back money from …

20    investors who already paid their full allocation would be either impossible or inequitable.").

21    **CONCLUSION**

22    For the foregoing reasons, Appellees respectfully request that the Appeals be dismissed

23    as moot.

24    Dated:  October 24, 2022                **GOODWIN PROCTER LLP**
                                              **KELLER BENVENUTTI KIM LLP**
25
                                             By: /s/ *Dara L. Silveira*
26                                                   Dara L. Silveira

27                                            *Attorneys for Appellees*

28