DAVID A. HUBBERT
Deputy Assistant Attorney General

BORIS KUKSO (CABN 268613)
AMY MATCHISON (CABN 217022)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-353-1857 (Kukso)
202-307-6422 (Matchison)
202-307-0054 (f)
boris.kukso@usdoj.gov
amy.t.matchison@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Case Nos. 4:22-cv-02781-YGR (Lead)<br>4:22-cv-02783-YGR<br>4:22-cv-02786-YGR<br>4:22-cv-02789-YGR<br>(Jointly Administered) |
| UNITED STATES OF AMERICA<br><br>        - and –<br><br>CALIFORNIA FANCHIES TAX BOARD,<br><br>Appellants,<br><br>v.<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Appellee. | On appeal from<br>Bankruptcy Case No. 20-30242(HLB)<br>Chapter 11<br><br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO APPELLEE'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    A.    The United States Has Standing............................................................................. 1

    B.    The Appeals Are Not Constitutionally Moot. .................................................... 3

        1.    The Trust Has Not Established the Factual Premise that There Are No Assets to Pay the Tax. ........................................................................................................................ 4

        2.    The Trust Cannot Show that No Other Form of Relief Is Available............................ 5

    C.    The Appeals Are Not Equitably Moot. ................................................................ 7

        1.    The United States Properly Sought a Stay of the Orders Subject to Appeal................ 8

        2.    Substantial Consummation of the Plan Is Not Dispositive.......................................... 8

        3.    The Trust Cannot Show Undue Prejudice to Innocent Third Parties. ......................... 9

        4.    Effective and Adequate Relief is Available. ............................................................. 11

**INTRODUCTION**

While in bankruptcy, Mr. Levandowski resolved a civil dispute over self-driving car technology he stole from Google and Uber's related promise to indemnify Levandowski for the harm he caused Google. As a result, Uber agreed to pay Google an undisclosed amount for Levandowski's benefit. The Bankruptcy Court incorrectly concluded that the Main Uber Payment is not includible in gross income of Levandowski individually or of his bankruptcy estate. The United States (and California) appealed the ruling on the Tax Motion (the Tax Appeal).

Although Levandowski has the assets to pay all creditors in full and has future earning and other income potential, he designed his Plan to avoid the payment of any tax obligations stemming from the Main Uber Payment and to curtail the Government's valid setoff rights. The Plan created the Levandowski Residual Liquidation Trust (the Trust) to administer all payments, except the Main Uber Payment, which was made directly from Uber to Google. The United States (and California) timely appealed Plan confirmation (the Plan Appeal).

The Trust has moved to dismiss all pending appeals (ECF 48) (the Motion to Dismiss).[1] It is unclear whether Debtor is also moving to dismiss.[2] Regardless, the Motion fails to meet its heavy burden to show that either the Tax Appeal or the Plan Appeal should be dismissed.

**ARGUMENT**

**A.  The United States Has Standing.**

The Trust argues that both appeals must be dismissed because the United States did not appeal the order approving the settlement between Levandowski, Uber, and Google (the

---

[1] Unless indicated otherwise, references to "ECF" are to documents filed in the instant District Court case and references to "Bk ECF" are to documents filed in the underlying bankruptcy case.

[2] The Trust also moved to join and substitute itself as the real party in interest (ECF 46) (the Motion to Join), to which the United States is filing a limited opposition. At this point, it is important to point out that the Motion to Dismiss and the Motion to Join are in tension. The Motion to Join represents that the Trust is the successor in interest to Levandowski's bankruptcy estate (of which Levandowski was a statutory fiduciary) and that the Trust "does not seek to (and does not) represent the interests of the debtor in his personal capacity." ECF 46 at 3:12. At the same time, the Motion to Dismiss is filed on behalf of both Appellees: the Trust and Levandowski individually. ECF 48 at 2.

Compromise Order) and thus the United States "lacks standing." ECF 48 at 6-7. This argument is, at best, confused and lacking in merit.

To be sure, a litigant must meet both "constitutional and prudential standing requirements." *In re Veal,* 450 B.R. 897, 906 (9th Cir. BAP 2011) (citation omitted). "Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." *Id.* (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008); additional citations omitted). "The prudential standing doctrine or the 'person aggrieved test' provides that '[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court ... have standing to appeal that order.'" *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011) (quoting *In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983)). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018) (citation omitted).

Debtor did not argue below that the United States lacked standing to object to the Tax Motion or to the Plan and cannot raise this argument on appeal for the first time. Regardless, the United States meets both constitutional and prudential standing requirements for the Tax Appeal and for the Plan Appeal.

Levandowski did not want to pay tax on the massive payment being made on his behalf. On his motion, the Bankruptcy Court issued an impermissible advisory opinion and incorrectly determined that the prospective Main Uber Payment would not give rise to gross income to him individually or to his Bankruptcy Estate. The United States had standing to object to the Tax Motion, as the injury is both financial (the loss of the tax revenue) and in terms of incorrect factual findings that the Main Uber Payment would be part of an "insurance" arrangement. The United States has suffered an injury in fact and is the party directly and adversely affected by the Bankruptcy Court's incorrect conclusion that the Main Uber Payment is not includible in gross income of Levandowski individually or of his Bankruptcy Estate. The United States had standing to object to the Tax Motion and has standing to prosecute the Tax Appeal.

Similarly, the United States is directly and adversely affected by the improper confirmation of Levandowski's Plan. Generally, parties whose ability to collect is affected by plans of reorganization have standing to appeal plan confirmation orders. *See In re P.R.T.C., Inc.*, 177 F.3d 774, 778 (9th Cir. 1999) (collecting cases). In this case, the Plan did not provide for full payment of administrative taxes, left the United States worse off than it would be in a chapter 7 liquidation, did not require Levandowski to commit his future earnings and income to the payment of all claims, and violated government setoff rights. The United States had standing to object to the Plan and continues to have standing to prosecute the Plan Appeal.

**B. The Appeals Are Not Constitutionally Moot.**

The Trust argues that that the appeals should be dismissed because the United States did not appeal the order approving the settlement between Levandowski, Uber, and Google (the Compromise Order). Thus, the Trust's argument may be interpreted as an argument that both appeals are constitutionally moot now that the Main Uber Payment has been made. The jurisdiction of federal courts is limited to actual cases and controversies. U.S. Const., Art. III § 2, cl. 1. Federal courts cannot exercise jurisdiction over a moot case, but "the party moving for dismissal on mootness grounds bears a heavy burden." *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003). An appeal is constitutionally moot and must be dismissed when "the appellate court can no longer grant 'any effectual relief whatever to the prevailing party,'" rendering "any resulting opinion...merely advisory." *Shell Offshore Inc. v. Greenpeace, Inc*., 815 F.3d 623, 628 (9th Cir. 2016) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Here, the Trust does not argue that the appellate court can no longer grant any effectual relief. Instead, it insists that the "the Main Uber Payment is gone, and revisiting the Tax Order and the Confirmation order will not undo that reality." ECF 48 at 7. The Trust appears to argue that the United States did not object, appeal, or stay the Compromise Order, the Main Uber Payment was made pursuant to the Compromise Order, and therefore no effective relief can be granted with respect to the Tax Appeal or the Plan Appeal because the Main Uber Payment cannot be added "back into the pot."

This argument contradicts the Supreme Court's ruling that inability to pay does not moot an appeal in the bankruptcy context. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, —— U.S. ——, 139 S. Ct. 1652, 1660, 203 L.Ed.2d 876 (2019) In that case, the Court determined that even though the chapter 11 estate had been distributed and had no remaining assets to satisfy any possible recovery, the appeal was not moot, because claims for monetary relief "ensure a live controversy" and, while recovery on that demand may be uncertain, "that is of no moment. If there is any chance of money changing hands, [the creditor's] suit remains live." *Id.* at 1660. The Court further pointed out that a prevailing creditor "can seek the unwinding of prior distributions to get its fair share of the estate," so even if the creditor may not be made fully whole, "it remains a live controversy—allowing us to proceed." *Id.* at 1661. If the Government prevails on appeal, there are mechanisms to pay the tax, in full or in part, so there is more than a chance of "money changing hands." The Trust has not carried its heavy burden and the appeals are not constitutionally moot.

1. **The Trust Has Not Established the Factual Premise that There Are No Assets to Pay the Tax.**

The Trust offers no evidence that Levandowski or the Trust are unable to pay the tax resulting from the Main Uber Payment. The Trust does not dispute that Levandowski has over $66 million sheltered in purportedly exempt assets, transfers to related parties, IRAs, and a Charitable Lead Annuity Trust (CLAT). *See* Uber Technologies' Objection to Debtor's Claim of Exemption. Bk ECF 521 (Ex .4). Levandowski as debtor in possession chose not to pursue these assets through avoidance actions, but those assets can go toward the payment of any tax shortfall, and the Trust offers no evidence otherwise.

The Trust also does not dispute that Levandowski has earning potential and could satisfy any outstanding tax from future earnings and other future income. All that would be required is a modification on remand requiring him to pay the resulting tax liability from future earnings and income.

Finally, the Trustee of the Trust may be personally liable for any unpaid tax under the Federal Priority Statute, 31 U.S.C. § 3713.[3] Thus, the tax resulting from the Main Uber Payment can be paid from other sources and the very first factual premise of the mootness argument is unsupported by evidence and is false.

### 2.  The Trust Cannot Show that No Relief Is Available.

A case is moot if "it is impossible for a court to grant any effectual relief whatever" to appellant assuming it prevails. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). The Trust has not shown that other forms of relief are unavailable even if it were true (which it is not) that neither Levandowski nor the Trust can pay the tax liability. *See In re Gould*, 401 B.R. 415, 422 (B.A.P. 9th Cir. 2009), *aff'd*, 603 F.3d 1100 (9th Cir. 2010) ("Simply because Debtor may have a present inability to repay the government does not mean effective relief is unavailable.").

With respect to the Tax Appeal, if the erroneous finding that the Main Uber Payment does not constitute gross income is vacated, any res judicata effects that may bind the United States in subsequent proceedings would be removed. This is meaningful relief for the United States, as it would not be bound by the Bankruptcy Court's incorrect finding that the Main Uber Payment is not taxable, because the IRS could assess and collect taxes against Levandowski in the ordinary course.

With respect to the Plan Appeal, effective relief is also available. On remand the bankruptcy case can be dismissed: it was always a three-party dispute and never needed a chapter 11 plan after the settlement was reached. Alternatively, Levandowski can be held personally liable for any unpaid tax either through revoking his bankruptcy discharge or

---

[3] The Federal Priority Statute gives priority to federal claims in certain situations where "a person indebted to the Government is insolvent," and it imposes personal liability on "a representative of a person or an estate" that pays other debts prior to the federal claims. 31 U.S.C. § 3713. The Federal Priority Statute specifically does not govern priority of claims in a bankruptcy case. 31 U.S.C. § 3713(a)(2). And it specifically does not apply to "a trustee acting under title 11." 31 U.S.C. § 3713(b). But the Trustee of the Trust is a liquidating trustee appointed under a plan and may not be "a trustee acting under title 11." *See United States v. Bond*, 762 F.3d 255, 260-61 (2d Cir. 2014); *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1995); *Smith v. United States (In re Holywell Corp.)*, 911 F.2d 1539, 1545 (11th Cir. 1990), rev'd on other grounds sub nom., *Holywell Corp. v. Smith*, 503 U.S. 47 (1992).

excepting the tax liability from discharge. Another alternative is to appoint a chapter 11 trustee or convert the case to chapter 7: in either case, the trustee would liquidate various asset-shielding vehicles Levandowski created pre-bankruptcy and could then use the proceeds to pay any tax liability. Obviously, relief is also available by restoring Government's valid setoff rights. It is simply not the case that because the Main Uber Payment has been made, there is no relief that can be fashioned in either the Tax Appeal or the Plan Appeal.

Third, the proposition that the Tax Motion, Plan confirmation, and the Compromise Order are "interlocking" and cannot be challenged independently is a false premise. The United States did not challenge the Compromise Order because it did not oppose the proposed resolution of the action against Uber and it did not oppose satisfaction of Google's claim against Levandowski. Indeed, the Compromise Order did not purport to determine whether the Main Uber Payment is includable in gross income of Levandowski or of the bankruptcy estate. Those determinations were made in the Tax Motion and Plan Confirmation orders, and the government properly and timely opposed both. Even if the Compromise Order said anything about taxes, it does not and cannot bind the United States to the improper treatment of the tax claims under the Plan. That would supplant the plan confirmation process and the related procedures for disclosure, balloting, and approval. It would also render the Tax Motion redundant when the bankruptcy court itself suggested that the Tax Motion was required.

The fact that the Main Uber Payment is "indefeasible" simply means Uber cannot get its money back under the settlement agreement and the court orders as they presently stand—it does not limit the Government's remedies on appeal of the Tax Order and the Confirmation Order. Uber reached the settlement and made the "indefeasible" payment at its peril, just as when it agreed to indemnify Levandowski for his criminal theft of self-driving technology. Neither event determined tax liabilities or plan treatment of administrative tax claims.

The argument that the United States should have objected, appealed, and sought to stay the Main Uber Payment leads to patently absurd results. Should the Government interfere in every settlement on the off chance that the parties may challenge the tax treatment of the settlement? Certainly not. Parties have to live with the tax consequences of their settlements and

cannot blame the United States for letting the transaction go forward because it turns out that the settlement payment gives rise to an income tax liability. Tax considerations do impact private parties' decisions how to structure their affairs, but it is bizarre to require the Government to intervene in a private settlement and prevent a business transaction from going forward to preserve its appeals rights with respect to taxability of the transaction. The Government would be invited, indeed required, to be involved in private business negotiations to an unprecedented degree. This cannot be the law.

The Tax Appeal and the Plan Appeal are not constitutionally moot because effective relief is available to the United States. The Trust had a heavy burden and has utterly failed to carry it.

**C. The Appeals Are Not Equitably Moot.**

The Trust argues that all the appeals are equitably moot. However, equitable mootness does not apply in this case because the United States properly sought a stay of the two orders subject to appeal and because effective and equitable relief can be provided without prejudice to third parties.

Equitable mootness is a doctrine by which a court elects not to reach the merits of a bankruptcy appeal. "Unlike Article III mootness, which causes federal courts to lack jurisdiction and so to have an inability to provide relief, equitable mootness is a judge-created doctrine that reflects an unwillingness to provide relief." *In re Transwest Resort Properties, Inc*., 801 F.3d 1161, 1167 (9th Cir. 2015); *See also In re UNR Indus., Inc*., 20 F.3d 766, 769 (7th Cir. 1994) ("There is a big difference between inability to alter the outcome (real mootness) and unwillingness to alter the outcome ('equitable mootness').").

The courts look at four factors in considering a dismissal on equitable mootness grounds: (1) whether a stay was sought; (2) whether substantial consummation of the plan has occurred; (3) the effect that a remedy may have on third parties not before the court; and (4) whether the bankruptcy court can provide "effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." *Transwest,* at 1167-68 (citing *In re Thorpe Insulation Co.*, 677 F.3d 869, 881 (9th Cir.

7

2012)). In the Ninth Circuit, this last consideration is the most important. *Id.* at 1171. "Even if the relief would be only partial, '[w]here equitable relief, though incomplete, is available, the appeal is not moot.'" *Id.* (quoting *In re Thorpe*, 677 F.3d at 883).

### 1.   The United States Properly Sought a Stay of the Orders Subject to Appeal.

Here it is undisputed that the United States sought to stay the Tax Order and Plan confirmation, albeit without success. Success, however, is not required. *In re Thorpe*, 677 F.3d at 881 ("We will look first at whether a stay <u>was sought</u>, for absent that a party has not fully pursued its rights.") (emphasis added). Thus, the Tax Appeal and the Plan Appeal are not equitably moot for failure to seek a stay.

The Trust argues that these two appeals are equitably moot because the United States did not appeal and seek a stay of the Compromise Order. This is a non-sequitur, as the Government is not appealing, and therefore did not need to stay, the Compromise Order. Rather, the Government opposed the Bankruptcy Court's improper tax determination and the flawed confirmation of the Plan, none of which were accomplished by the Compromise Order. The Government diligently sought a stay pending appeal and pursued its rights vis-à-vis the two orders it objected to and appealed. Therefore, these appeals are not equitably moot.

### 2.   Substantial Consummation of the Plan Is Not Dispositive.

The next consideration is "whether substantial consummation of the plan has occurred." *Thorpe*, 677 F.3d at 882. The term "substantial consummation" is defined in the Bankruptcy Code as: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). The Trust argues that the Plan was substantially consummated because all or substantially all of the property was transferred to the Trust and distributions commenced under the Plan, although the extent of distributions is unclear.[4]

---

[4] The Trust does not state how much has been distributed to creditors, only that the Trust "has transferred over 95% of the cash <u>to be distributed</u> to holders of Class 3 General Unsecured Claims." ECF 48-3 (emphasis added).

However, this is a liquidation case, not a complex reorganization where substantial consummation leads, for example, to new investments or further transactions that are complex or difficult to unwind. *See Thorpe*, 677 F.3d at 880. Substantial consummation of this Plan, which contemplates liquidation only, has not created a "comprehensive change in circumstances" so as to make review on appeal impractical. *In re Mortgs. Ltd.*, 771 F.3d 623, 629 (9th Cir. 2014) ("Substantial consummation of a bankruptcy plan often brings with it a comprehensive change in circumstances that renders appellate review of the merits of the plan impractical. But this is not always the case."). As explained below, effective relief is available, and therefore these appeals are not equitably moot.

### 3.   The Trust Cannot Show Undue Prejudice to Innocent Third Parties.

The third equitable mootness factor considers "whether modification of the plan of reorganization would bear unduly on the innocent." *Thorpe*, 677 F.3d at 881. "Third parties' reliance on the consummation of the plan is not enough to find this prong satisfied. Rather, for this factor to weigh in favor of holding a party's appeal to be equitably moot, the specific relief sought must bear <u>unduly</u> on innocent third parties." *In re Transwest*, 801 F.3d at 1167 (emphasis added). The Trust argues only that if the appeals move forward, "the tax liability attached to the Main Uber Payment will not only take priority over the third-party creditors' claims, but will dwarf them in size." ECF 48 at 10:8-9. This does not establish undue prejudice.

With respect to the Tax Appeal, the question concerns the Bankruptcy Court's ruling about a future tax liability. Whether and how much tax is owed is not a decision that can prejudice (let alone unduly prejudice) any party except the taxpayer, who is merely being asked to pay what he owes. It may appear at first blush that if the bankruptcy estate has a large tax liability, then the lower priority creditors will be prejudiced because their recovery may be diminished. But this is only an appearance of prejudice. If the bankruptcy estate has a large administrative tax debt, the lower priority creditors' recovery is a function of the Bankruptcy Code, which requires that administrative taxes be paid before any other creditors. There is nothing "prejudicial" about ensuring the law is followed.

There is no indication in this case that any third parties made subsequent investments or in some way relied on the confirmed Plan so that altering or even revoking the Plan would be inequitable. Aside from Google's $179 Million claim, Levandowski owes $7.6 Million in administrative expenses due to his bankruptcy professionals, $4.4M to general unsecured claimants, and $2.1M on his home (secured by the real property). None of these claimants are unduly prejudiced if the appeals move forward the Government prevails. Google's claim is getting paid through the Main Uber Payment, the secured claimant is protected by its collateral, and the administrative expenses have the same priority as any administrative tax claim. General unsecured creditors get paid after administrative expenses, and there is no undue prejudice to creditors when they are paid according to the priority established by the statute. Of course if Levandowski is required to contribute his future earnings and income to pay off any resulting tax liability, other creditors will not be prejudiced at all.

If the Plan is modified to allow the United States to recover its administrative tax and as a result, other creditors receive less than they expected, this is a consequence of every bankruptcy proceeding where the money paid to one creditor is not available to pay another. Other creditors' interests will always be affected in situations like that, and every appeal would be equitably moot. It is not enough for the Trust to say, as it does, that if these appeals proceed and the Government prevails, other creditors may get less. Instead, "the question is not whether it is possible to alter a plan such that no third-party interests are affected, but whether it is possible to do so in a way that does not affect third party interests to such an extent that the change is inequitable." *Thorpe*, 677 F.3d at 882. The Trust fails to show that if the appeals proceed, changes to other creditors' rights, who would be paid as required under the Bankruptcy Code, would be inequitable. However, as noted above, if Levandowski contributes his future earnings and income to pay off any resulting tax liability, other creditors' recovery will not be diminished.

With respect to the Plan appeal, the Trust makes no showing how any party is unduly prejudiced if the Government's valid setoff rights are vindicated. Further, as explained below, there are remedies that would not impact other creditors' recovery at all. Relief that does not inequitably alter third party interests is available, so these appeals are not equitably moot.

4. **Effective and Adequate Relief is Available.**

The final factor is "whether the bankruptcy court on remand may be able to devise an equitable remedy." *Thorpe*, 677 F.3d at 883. The Ninth Circuit has noted that "[t]he party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Focus Media, Inc.*, 378 F.3d 916, 923 (9th Cir. 2004). The Trust cannot succeed here because effective relief is available if the Government prevails.

With respect to the Tax Appeal, if the erroneous finding that the Main Uber Payment does not constitute gross income is vacated, the parties will have all their rights and remedies under the Internal Revenue Code and the Bankruptcy Code. The bankruptcy estate and/or Levandowski individually will be able to file their tax returns and pay the tax as required.

With respect to the Plan Appeal, there are many effective and adequate forms of relief. The court can revoke Plan confirmation and dismiss the case altogether: now that the three-party dispute between Uber and Google is resolved, there is no need for a bankruptcy proceeding because there are sufficient assets to pay all creditors. The court can hold Levandowski liable for any unpaid tax of the estate by revoking or modifying Levandowski's discharge. The court can make Levandowski personally liable for the estate's unpaid taxes. The court can appoint a chapter 11 trustee or convert the case to chapter 7 so that an independent trustee could pursue and liquidate Levandowski's assets, pay all creditors, and pay the tax liability. Even interim distributions on account of other administrative expenses, such as professionals' fees, can be disgorged to ensure pro rata treatment of administrative expenses because "[a] bankruptcy court has the authority to order disgorgement of previously awarded and paid professional fees in administratively insolvent cases 'in order to achieve a pro rata distribution to administrative claimants.'" 3 *Collier in Bankruptcy* 331.05[3][a] (16th ed. 2020) (quoting *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 860 (Bankr. D. Del. 2004)). Also, the Government's valid setoff rights can be restored on remand.

The Trust has not carried its heavy to show the appeals are equitably moot because the Trust has not shown that there is no adequate relief available. The Trust fails on this most important of the four equitable mootness factors.

Moreover, this Court should not dismiss these appeals as equitably moot because in doing so it would abdicate the supervisory role of Article III courts to exercise jurisdiction over the merits of bankruptcy appeals. *See In re One2One Commc'ns, LLC*, 805 F.3d 428, 442 (3d Cir. 2015) (Krause, J., concurring) ("Dismissing appeals in the name of equitable mootness violates [the] 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'") (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also In re Cont'l Airlines*, 91 F.3d 553, 567–73 (3d Cir. 1996) (en banc) (Alito, J., dissenting) (questioning the legal basis for equitable mootness).

These appeals are not moot and are not equitably moot, and therefore the Court should consider the merits and deny the Motion to Dismiss.

Dated: November 21, 2022.

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Boris Kukso
BORIS KUKSO
AMY MATCHISON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-353-1857 (Kukso)
202-307-6422 (Matchison)
202-307-0054 (f)
boris.kukso@usdoj.gov
amy.t.matchison@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties entitled to it.

*/s/ Boris Kukso*
BORIS KUKSO
Trial Attorney
United States Department of Justice, Tax Division
