DAVID A. HUBBERT
Deputy Assistant Attorney General

BORIS KUKSO (CABN 268613)
AMY MATCHISON (CABN 217022)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-353-1857 (Kukso)
202-307-6422 (Matchison)
202-307-0054 (f)
boris.kukso@usdoj.gov
amy.t.matchison@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Case Nos. 4:22-cv-02781-YGR (Lead)<br>4:22-cv-02783-YGR<br>4:22-cv-02786-YGR<br>4:22-cv-02789-YGR<br>(Jointly Administered) |
| UNITED STATES OF AMERICA<br><br>    - and –<br><br>CALIFORNIA FANCHIES TAX BOARD,<br><br>Appellants,<br><br>v.<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Appellee. | On appeal from<br>Bankruptcy Case No. 20-30242(HLB)<br>Chapter 11<br><br>**UNITED STATES' REPLY BRIEF REGARDING PLAN CONFIRMATION ORDER** |

i

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... ii
INTRODUCTION ................................................................................................................... 1
ARGUMENT ........................................................................................................................... 1
    A.    The Plan Should Not Have Been Confirmed Because It Failed to Provide for Full Payment of Administrative Taxes .................................................................................. 1
    B.    The Plan Fails the Best Interests Test and the Plan Is not Feasible. ............................ 3
    C.    The Plan Does Not Require Debtor Commit Future Earnings and Income to the Plan. ... 4
    D.    Plan Discharge Provisions Violate Government Setoff Rights ....................................... 5
    E.    The Principal Purpose of the Plan Is Avoidance of Taxes .............................................. 7
CONCLUSION ........................................................................................................................ 9

**INTRODUCTION**

Debtor is a wealthy individual who has the assets to pay all his existing creditors in full. However, he deliberately created a Plan to cut off any method to pay the administrative tax expense. This Court should not condone such abuse of the bankruptcy process.

From the outset, the Bankruptcy Court erred when it granted the Tax Motion, and so it erred every time it relied on its incorrect ruling on the Tax Motion to confirm the Plan. Moreover, the Plan did not provide for the payment of the administrative tax expense and improperly curtailed the United States' setoff rights. The Bankruptcy Court erroneously confirmed the Plan despite the Plan's obvious defects that show that the principal purpose of this Plan was avoidance of tax.

Debtor's Plan should not have been confirmed. The United States respectfully requests that the Confirmation Order be vacated.

**ARGUMENT**

**A. The Plan Should Not Have Been Confirmed Because It Failed to Provide for Full Payment of Administrative Taxes.**

Levandowski structured the Plan so that any tax resulting from the Main Uber Payment will not be collectible from his Bankruptcy Estate or from the Trust set up under the Plan. On the Effective Date, all assets of the Bankruptcy Estate transferred to Trust, leaving the Bankruptcy Estate with no assets to pay the administrative tax liability in violation of § 1129(a)(9).[1] Furthermore, the Trust would only be liable for administrative taxes "that accrue on or before the Effective Date." Bk ECF 1030 at 15:16-17 (Ex. 20).

The requirements of § 1129(a)(9)(A) are clear: claims entitled to priority under § 507(a)(2) must be paid in full, in cash, on the effective date of the plan. Section 507(a)(2) grants priority to administrative expenses allowed under § 503(b), including taxes and penalties incurred by the estate. § 503(b)(1)(B) and (C). Such administrative tax expenses must be paid

---

[1] Unless otherwise indicated, "§" refers to sections of the Bankruptcy Code (Title 11, U.S.C.); "I.R.C." refers to the Internal Revenue Code (Title 26, U.S.C.). References to "Bk ECF" are to documents filed in the underlying bankruptcy case, which are also included in the Excerpts of Record as Exhibits. References to "ECF" are to documents filed in the instant District Court case.

1

without the need for the taxing authority to file an administrative expense request. § 503(b)(1)(D).

The Plan, as originally filed, limited allowance and payment of Administrative Expense Claims to those for which a claim has been filed and established an Administrative Expense Bar Date of forty-five (45) days after the Effective Date. Bk ECF 940 at 7 and 31 (Ex. 8). As filed, the Plan provided no exception for administrative taxes, blatantly contradicting § 503(b)(1)(D), which provides that an administrative tax expense must be paid without an administrative expense request.

After the Government objected, Debtor represented that this problem was fixed in the proposed Confirmation Order. Bk ECF 1006 at 24-25 (Ex. 16). To be sure, the Confirmation Order removed the requirement for the Government to file an administrative tax expense claim, but it also limited the Trust's liability to taxes that accrue "on or before the Effective Date." Bk ECF 1030 at 15:14-17 (Ex. 20). An income tax liability arises after all the events occur and the period ends. *In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1301 (9th Cir. 1995) (income tax is incurred on the last day of the income period). By holding the liquidating trust liable only for administrative claims that accrue on or before the Effective Date, the Confirmation Order created a gap where the Bankruptcy Estate's tax liabilities that accrue after the Effective Date would not be paid by the Trust. Neither will the Bankruptcy Estate be able to pay its administrative tax liability, because all the Bankruptcy Estate's assets are transferred to the Trust, leaving the Bankruptcy Estate with no assets. Under the Plan, <u>no entity</u> will be liable for the Bankruptcy Estate's 2022 income tax.

The problem with paying the administrative tax expense has become more pronounced with passage of time. Debtor has filed a monthly operating report showing total income of $7,217,384 in July 2022. Bk ECF 1154 (Ex. 22). This income is for the same period as the Main Uber Payment, and it is unclear how the income tax for the Bankruptcy Estate's 2022 year will be paid.

Appellees misrepresent this argument by focusing on the fact that the $7.2 million cash infusion was anticipated and that the Confirmation Order confirmed that there are sufficient

reserves to pay the administrative tax. ECF 49 at 38-39, n. 18. This, however, is not the point. The Bankruptcy Estate's 2022 income tax liability is an administrative expense that will accrue at the end of the tax year, and it will not be paid by the Bankruptcy Estate, which has no assets left, nor by the Trust, which is only liable for administrative expenses that accrue before the Effective Date. In other words, Appellees' claim that there are some funds available does not explain who, if anyone, will be liable for the tax under the terms of the Plan. If the Trust agrees that it is or should be liable for taxes on income that accrues after the Effective Date, as footnote 18 of their brief seems to indicate, it should have no problem with agreeing that the Plan should be amended to make that clear.

The Plan and the Confirmation Order plainly violate the Bankruptcy Code, which guarantees that administrative expenses be paid by the Bankruptcy Estate in full upon confirmation. The Plan was designed so as not to pay the administrative income tax liability. And because the ruling on the Tax Motion was wrong, the Bankruptcy Court compounded the error by confirming the Plan under which neither the Bankruptcy Estate nor the Trust will be liable for the Bankruptcy Estate's 2022 income tax.

**B. The Plan Fails the Best Interests Test and the Plan Is not Feasible.**

The Bankruptcy Court's determination that the Main Uber Payment is not includible in gross income of the individual Debtor or of his Bankruptcy Estate is incorrect and incomplete. The Bankruptcy Court also disregarded all other tax attributes of the Bankruptcy Estate for the tax period in question, which had not even concluded.

The best interests test requires that the holder of each claim receive or retain under the Plan as much as the holder would receive or retain if the debtor were liquidated in a chapter 7 case. § 1129(a)(7). There is no question that, under chapter 7, the administrative tax liabilities of the Bankruptcy Estate in this case would be paid in full before lower-priority creditors. The Plan, by creating the structure described above to avoid payment of administrative tax expenses, violates the best interest test and should not have been confirmed.

A chapter 11 plan cannot be confirmed unless the liquidation or reorganization proposed by the plan is feasible and not likely to be followed by the need for further liquidation or

reorganization. § 1129(a)(11). Debtor admits that the Plan is not feasible unless the Main Uber Payment does not give rise to gross income. If, as the United States maintains, the ruling on the Tax Motion was wrong, the Plan does not include a reserve to pay the resulting administrative tax liability, and the Bankruptcy Court's conclusion that the Plan is feasible is also an error.

Debtor designed a Plan that does not work if the Main Uber Payment results in a tax liability. The Bankruptcy Court relied exclusively on its erroneous conclusion that the Main Uber Payment would result in no tax and confirmed the Plan that fails the best interests test and is not feasible.

**C. The Plan Does Not Require Debtor Commit Future Earnings and Income to the Plan.**

In a chapter 11 case, an individual debtor's post-petition earnings must be available for payment to creditors through the chapter 11 plan. An individual in chapter 11 must provide "for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan." §§ 1123(a)(8) and 1129(a)(15). The United States objected that this requirement was not met, and the Bankruptcy Court ruled that the objection was rendered moot by the ruling on the Tax Motion. Bk ECF 1024 at 66:22-23 (Ex. 18).

Appellees argue there is no basis for this objection because Debtor is committing his future income under the non-dischargeable Individual Commitment, which provides that Levandowski has agreed to pay $25 million to Google. ECF 49 at 39:9-14.[2] However, requiring Levandowski to pay his non-dischargeable debt to Google is an empty gesture and is not the same as requiring him to commit his future earnings for the "payment to creditors," as required under § 1123(a)(8).

Section 1123(a)(8) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) and made individual chapter 11 plans resemble more closely chapter 13. 7 *Collier on Bankruptcy* P 1123.01 (16th 2022) ("Section 1123(a)(8) makes chapter 11 for individual debtors consistent with chapter 13 so that an individual debtor's

---

[2] The Individual Commitment is not part of the record, although the Plan provided that it would be filed as part of a Plan Supplement. Bk ECF 940 at 12:4-5 (Ex. 8).

4

future income must be used to fund payments to creditors under a chapter 11 plan."). The design was to ensure that a high-income earner uses her future income to fund a plan for the benefit of all creditors. *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 78 (2011) ("BAPCPA's core purpose [is] ensuring that debtors devote their full disposable income to repaying creditors."). Here, the Individual Commitment benefits one creditor only. Moreover, it is superfluous, because non-dischargeable debt, such as the Debtor's obligation for defrauding Google, has to be paid with or without the Individual Commitment and will be payable regardless of Plan confirmation. The Individual Commitment makes it appear that Levandowski will use his future earnings to repay all his creditors while in reality the Individual Commitment benefits only one creditor, Google, whose claim is excepted from discharge anyway. Under § 1123(a)(8), Levandowski has to commit his future earnings to repay all his creditors.

The Bankruptcy Court was wrong in its ruling on the Tax Motion and therefore additional funds will be necessary to pay the administrative tax liability. Under § 1123(a)(8), the tax could be paid from Debtor's future earnings or future income, but the Bankruptcy Court improperly confirmed the Plan without requiring Debtor to contribute his future earnings or income to repay all creditors under the Plan.

**D. Plan Discharge Provisions Violate Government Setoff Rights.**

The Bankruptcy Court rejected the United States' objection that the Plan's discharge injunction violated § 553, which governs and preserves setoff rights. This ruling was not premised on the resolution of the Tax Motion and provides an independent reason why the Plan should not have been confirmed.

Section 553(a) specifically preserves setoff rights for all creditors, including the United States, which has both statutory and common law setoff rights. As the Supreme Court noted, "Congress has subjected to offset all 'funds payable by the United States,' § 3701(a)(1), to an individual who owes certain delinquent federal debt, see § 3701(b)." *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) (citing 31 U.S.C. § 3701).

Here, the Plan discharge provisions curtail the Government's valid setoff rights by stating that all entities who have held, hold, or may hold claims against the estate are prohibited from

5

"asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, except as part of the claims resolution process set forth in Section X of this Combined Plan and Disclosure Statement." BK ECF 940 at 42:20-22 (Ex. 8).

Debtor's discharge is established by statute (§ 1141(d)(1)) and plan provisions and litigation over the terms of a plan are not proper procedures for resolving discharge issues. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010) (making discharge determinations in the context of a chapter 13 plan confirmation process was legal error).[3] Furthermore, the Ninth Circuit has ruled that § 553(a) took precedence over the discharge provisions of § 1141. *Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992) (the language of § 553(a) "not only establishes a right to setoffs in bankruptcy, subject to enumerated exceptions, but seems intended to control notwithstanding any other provision of the Bankruptcy Code. To give section 1141 precedence would be to ignore this language.").

Appellees do not address this binding authority and blandly assert that the Plan "reserves rights of claimants to assert a setoff <u>as part of the claims resolution process</u>." ECF 49 at 40:22-23 (emphasis added). That is precisely the problem. The Plan requires the Government to file a claim in the bankruptcy case and go through the claim resolution process to effectuate an offset. There is no authority to require parties to go through the bankruptcy claims objection process to do an offset. To the contrary, the doctrine of offset allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913). Additionally, as the claims bar date for prepetition claims against the estate of July 6, 2020 has long passed, the

---

[3] The discharge language of Official Form 425A (Plan of Reorganization for Small Business Under Chapter 11) is instructive: "Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure." See Official Form 425A. That is all Debtor's Plan should have stated.

6

practical effect of this provision is that the Government's setoff right is time-barred, in violation of the explicit preservation of such right in § 553(a).

Although the injunction provisions of the Plan impermissibly curtail Government's valid setoff rights, the Bankruptcy Court concluded: "I view the language in that plan as consistent with the scope of the discharge that Mr. Levandowski's entitled to under Section 1141." Bk ECF 1024 at 72:3-6 (Ex. 18). The Bankruptcy Court made an error of law when it confirmed the Plan containing the discharge injunction that curtails the United States' valid setoff rights. This alone requires that the Confirmation Order be reversed.

### E. The Principal Purpose of the Plan Is Avoidance of Taxes.

The principal purpose of this Plan is tax avoidance. Debtor admits that the Plan does not work if the Tax Motion were not granted. The Plan, as originally proposed, required that administrative claimants file a request to be paid; only after the United States and California objected did Debtor eliminate the bar date for administrative expenses and the requirement for taxing authorities to file a claim to be consistent with § 503(b)(1)(D). Bk ECF 1024 at 64:1-14 (Ex. 18). Further, the Plan vests all Bankruptcy Estate assets in the Trust, which is not responsible for payment of any administrative tax that accrues after the Effective Date. Debtor did not commit his future earnings to the Plan and included in the Plan numerous provisions designed to avoid the reporting and payment of any income tax incurred because of the Main Uber Payment.

The Plan provisions discussed above prevent the collection of administrative tax expenses from the Bankruptcy Estate and show that the principal purpose of the Plan is avoidance of taxes. Simply put, Debtor designed a plan that was feasible only if no tax was paid on the key transaction to take place under the Plan. The fact that he convinced the Bankruptcy Court to erroneously grant the Tax Motion does not change the fact that the Plan was specifically structured to work *only* if tax was avoided, when it could have included provisions that would protect the taxing authorities regardless of the results of the Tax Motion.

Appellees cannot dispute that the Plan is so structured and instead point to that the history of the case and the two years of settlement negotiations as purported evidence that the principal

7

purpose of the Plan is not avoidance of taxes. ECF 49 at 41:11-13. This argument misses the mark: it is not the settlement or the Main Uber Payment that are problematic, but the Plan itself that was crafted to avoid any tax liability or payment for taxes incurred in connection with the Plan. Further, the long history of negotiations among Debtor, Google, and Uber, which excluded the taxing authorities until the 11th hour, in fact supports the United States' argument that the Plan was intended to cheat the federal fisc.

Appellees ignore Uber's statement that Levandowski asked for, and Uber rejected, edits to the Settlement Agreement that "would have conditioned the agreement upon favorable tax treatment for Levandowski." *Id*., at Bk ECF 969 at 14:25-26 (Ex. 13). So Debtor chose to instead use the Plan to avoid those same taxes. Debtor resolved his dispute with Google and has the assets to pay all creditors, but he created a Plan that, together with the Tax Motion, aims to avid the payment of Debtor's tax obligations stemming from the Main Uber Payment.

Bankruptcy courts have an independent duty to ensure that plan confirmation requirements are met. *In re Sisk*, 962 F.3d 1133, 1151 (9th Cir. 2020) ("Even when no party objects, courts have an independent duty to determine whether a debtor's plan complies with the Code.") (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010)). Here, the United States and California objected, but in the rush to confirm the Plan, the Bankruptcy Court ignored the evidence that avoidance of taxes was the Plan's principal purpose.

//

//

//

//

//

8

# CONCLUSION

The Bankruptcy Court erred in granting the Tax Motion and erred when it confirmed the Plan based on that incorrect ruling. The Bankruptcy Court also committed an error of law when it confirmed the Plan that improperly curtailed the Government's setoff rights. The Bankruptcy Court further ignored the facts that indicate that the principal purpose of this Plan is avoidance of tax. For each of these reasons, the Confirmation Order should be vacated.

Dated: November 21, 2022.

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Boris Kukso
BORIS KUKSO
AMY MATCHISON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-353-1857 (Kukso)
202-307-6422 (Matchison)
202-307-0054 (f)
boris.kukso@usdoj.gov
amy.t.matchison@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties entitled to it.

/s/ Boris Kukso
BORIS KUKSO
Trial Attorney
United States Department of Justice, Tax Division