1  DAVID A. HUBBERT
   Deputy Assistant Attorney General
2

3  BORIS KUKSO (CABN 268613)
   AMY MATCHISON (CABN 217022)
4  Trial Attorneys, Tax Division
   U.S. Department of Justice
5  P.O. Box 683
   Washington, D.C.  20044
6  202-353-1857 (Kukso)
   202-307-6422 (Matchison)
7  202-307-0054 (f)
8  boris.kukso@usdoj.gov
   amy.t.matchison@usdoj.gov
9
   Attorneys for the United States
10

11              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                      OAKLAND DIVISION

13
   In re:                                    Case Nos. 4:22-cv-02781-YGR (Lead)
14                                            4:22-cv-02783-YGR
   ANTHONY SCOTT LEVANDOWSKI,                 4:22-cv-02786-YGR
15                                            4:22-cv-02789-YGR
                              Debtor.         (Jointly Administered)
16

17 UNITED STATES OF AMERICA                   On appeal from
                                              Bankruptcy Case No. 20-30242(HLB)
18           - and –                          Chapter 11

19 CALIFORNIA FANCHIES TAX BOARD,
                                              **UNITED STATES' REPLY BRIEF
20                            Appellants,      RE TAX MOTION**

21 v.

22 ANTHONY SCOTT LEVANDOWSKI,

23                            Appellee.

24

25

26

27

28

                                    i

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    A.    The Bankruptcy Court Did Not Have Subject Matter Jurisdiction to Rule on the Tax Motion. .......................................................................................................................... 1

        1.    The Bankruptcy Court did not determine "the amount" of income tax...................... 1

        2.    The Bankruptcy Court issued a declaratory judgement about hypothetical future tax consequences.................................................................................................................. 3

        3.    Caselaw does not support finding jurisdiction under §505(a)(1) for determination of future tax attributes. ...................................................................................................... 5

    B.    To the Extent it Acted within its Jurisdiction, the Bankruptcy Court Acted on an Insufficient Evidentiary Record. .................................................................................... 7

    C.    The Bankruptcy Court Incorrectly Concluded the Main Uber Payment Was Excluded from Gross Income. ....................................................................................................... 8

        1.    This Court should consider the substantive tax arguments. ......................................... 8

        2.    The Main Uber Payment is not insurance. .................................................................. 8

        3.    Debtor did not meet his burden to show that the Main Uber Payment is not gross income.......................................................................................................................... 10

    D.    The Tax Order Should Be Vacated Because It Is Bad Policy. ...................................... 14

        1.    The Tax Order opens the door to piecemeal tax litigation. ......................................... 14

        2.    The practical needs of bankruptcy reorganization are not the only policy considerations. ............................................................................................................. 14

CONCLUSION............................................................................................................ 15

**INTRODUCTION**

The statutory authorization in § 505(a)(1)[1] permits a determination of the <u>amount</u> of income tax owed, but the Bankruptcy Court in this case issued an impermissible advisory opinion about a discrete tax issue. Contrary to Levandowski's position, the "plain text" of § 505(a)(1) does not give the Bankruptcy Court authority to decide any and all "tax questions." Appellees incorrectly represent the Government's position that a tax return is a prerequisite for a § 505(a)(1) ruling. But Appellees must address the Government's actual arguments, not the arguments they wish the Government to make.

This case involves a high-wealth individual bought off by a company who wanted the technology he stole from his previous employer, plain and simple. Debtor tried to finesse the deal and bundled it with bankruptcy plan confirmation to avoid paying tax, but these machinations can't change the fundamental substance of what has occurred: Uber paid off Mr. Levandowski's liability to Google, and that's income. This Court should find in favor of the government and refuse to allow Levandowski to escape his obligations as a U.S. taxpayer.

**ARGUMENT**

**A. The Bankruptcy Court Did Not Have Subject Matter Jurisdiction to Rule on the Tax Motion.**

**1. <u>The Bankruptcy Court did not determine "the amount" of income tax.</u>**

Levandowski requested the Bankruptcy Court to tell him whether he should report the Main Uber Payment on his next tax return. Such ruling is a declaratory judgment concerning one tax question: whether a transaction would give rise to gross income reportable on a future return. The Bankruptcy Court did not consider anything else needed to calculate the amount of income tax due. Appellees continue to repeatedly mischaracterize the government's argument as requiring a "tax return." This is a straw man. Regardless of whether a tax return was filed, the Bankruptcy Court was required to determine the entire liability, not the tax effect of a single

---

[1] Unless otherwise indicated, "§" refers to sections of the Bankruptcy Code (Title 11, U.S.C.); "I.R.C." refers to the Internal Revenue Code (Title 26, U.S.C.). References to "Bk ECF" are to documents filed in the underlying bankruptcy case, which are included in the Excerpts of record as Exhibits.

transaction. The United States is not hyper-focused on the necessity of a "tax return," but is simply pointing out the requirement that the determination of tax liability be complete. Because § 505(a)(1) allows determinations of the amount of tax, the Bankruptcy Court did not have jurisdiction to adjudicate an antecedent tax issue and the Tax Order should be vacated.

Appellees do not address the argument that the Bankruptcy Court here did not determine the amount of the income tax, but instead argue that § 505(a)(1) gives "broad" authorization for the court to act, citing *Central Valley AG Enters. v. United States*, 531 F.3d 750, 775 (9th Cir. 2008). Appellees stretch *Central Valley* well beyond its bounds. In *Central Valley*, the Ninth Circuit concluded that § 505(a)(1) gave the bankruptcy court jurisdiction over a debtor's partnership items without a partnership-level proceeding, as was required by TEFRA, and that *res judicata* did not apply where the debtor failed to timely seek a Tax Court partnership-level determination and could not challenge his liability outside of bankruptcy. The panel concluded that "because § 505 of the Bankruptcy Code generally authorizes bankruptcy courts to redetermine a debtor's tax liability notwithstanding otherwise applicable statutes of limitations, [debtor] must have actually pursued its TEFRA remedies in Tax Court for preclusion to apply." 531 F.3d at 767. The holding in *Central Valley* does stand for the proposition that § 505(a)(1) gives a bankruptcy court jurisdiction to resolve any "tax question" and does not support Appellees' overbroad interpretation of § 505(a)(1).

In § 505(a)(1), Congress unambiguously stated that bankruptcy courts may determine "the amount of any tax," not "any tax question" as Appellees incorrectly argue. Appellees ignore that when Congress intends the court to do something other than determine the full amount of a claim or a tax, it says so explicitly.[2] The language of § 505(a)(1) does not give bankruptcy courts jurisdiction to rule on "any tax question," but only to determine the amount of tax.

Appellees believe that the Bankruptcy Court can rule on a discrete tax item, such as includability of a transaction in gross income, because §505(a)(1) refers to "the amount or legality of *any* tax." But that statutory language simply means that the bankruptcy court can rule

---

[2] For example, §502(b) provides that the court "shall determine the amount of claim," proof of which is filed, while § 502(c) provides that certain claims "shall be estimated" where liquidation of such claim "would unduly delay the closing of the case."

on the amount of any tax, be it income tax, estate tax, or sales tax. It does not grant Bankruptcy Courts unfettered discretion to make advisory rulings about potential tax attributes. It is the Appellees, not the United States, that strain the language of § 505. The statute reads "amount of tax," not "amount of a tax attribute" or "tax effect of a transaction." *See, In re Baker,* 74 F.3d 906, 909 (9th Cir. 1996) (equating "amount" of tax in § 505 with total tax liability determined by Tax Court). This is consistent with the overall bankruptcy scheme, which contemplates bankruptcy courts determining entire debts, not just sub-portions or antecedent issues. Thus, the most straightforward and logical reading is that proposed by the United States, not Appellees.

Because § 505(a)(1) only allows determinations of the amount of tax, the Bankruptcy Court lacked jurisdiction to adjudicate an antecedent tax issue. The Tax Order should be vacated.

**2.   The Bankruptcy Court issued a declaratory judgement about hypothetical future tax consequences.**

The Bankruptcy court's jurisdiction under § 505(a)(1) does not extend to providing forward-looking declaratory relief about tax consequences of future transactions. *See In re Grand Chevrolet, Inc*., 153 B.R. 296, 299 (C.D. Cal. 1993) ("[T]here is no grant of jurisdiction to decide issues that are antecedent to the determination of tax liability.... The ripeness doctrine was meant to prevent just such a situation."); *In re Dycoal, Inc*., 327 B.R. 220, 227-29 (Bankr. W.D. Pa. 2005) (holding "the Court cannot, pursuant to section 505(a)(1), make determinations regarding tax issues that merely impact upon a future tax liability of a debtor.").

Appellees insist that the Main Uber Payment was "imminent" and so the Bankruptcy Court's ruling on the Tax Motion was not an impermissible advisory opinion about a future transaction. But even a transaction soon to occur remains in the future, where facts and law may change. Appellees also argue in the Motion to Dismiss that without a favorable ruling on the Tax Motion, the Main Uber Payment would not take place and the Plan would not be confirmed: "Throughout the proceedings, it was crystal clear that the Tax Motion, the Settlement Motion, and Plan Confirmation were interlocking parts: if one did not happen, the rest could not." ECF 48 at 9:12-13. Thus, the "imminence" of this transaction depended completely on getting a favorable tax ruling ahead of the transaction taking place: if the Bankruptcy Court did not grant the Tax Motion, the parties did not want to make the Main Uber Payment.

3

Appellees do not address the holding in *In re UAL Corp.*, 336 B.R. 370 (Bankr. N.D. Ill. 2006) that § 505(a) does not authorize declarative relief about future tax consequences of a plan. The *UAL Corp.* opinion correctly points out that § 1146(b) (denominated as § 1146(d) at the time) provides explicit authority for the court to declare the tax consequences of a proposed plan, but only with respect to state and local taxation, reasoning that "if determinations of the 'amount or legality of any tax,' provided for in § 505(a), included declarations of the consequences of a proposed plan, then § 1146[(b)] would either be surplusage (providing an unnecessary procedure for declaring the tax consequences of plans in light of § 505(a)) or else a limitation (as to state and local taxes only) on a general declaratory power provided for in § 505(a)." 336 B.R. at 376.

Appellees attempt to distinguish *UAL Corp.* on the basis that the Main Uber Payment was part of a pre-plan "settlement." But that's a difference without a distinction given Appellees' simultaneous admissions that: (a) the Main Uber Payment was integral to the Plan, and (b) implementation of the "settlement" was contingent on the Tax Motion and Plan confirmation. Appellees' argument leads to absurd results: if the Main Uber Payment were part of the Plan, the Bankruptcy Court could not rule on the Tax Motion under 1146(b), as that would implicate a future federal tax consequence of the proposed Plan, but because the Main Uber Payment was not part of the Plan (although "interlocking" and "intertwined" with the Plan), the Bankruptcy Court can proceed under § 505(a)(1) and make prospective rulings about future federal tax consequences of transactions to determine Plan feasibility. If Appellees are right, all a debtor in bankruptcy need do to get an otherwise barred ruling about future federal tax consequences of a proposed plan is put that part of the plan in a different document and call it a "settlement."

Appellees' interpretation also brushes aside that Congress provided § 1146(b) to allow prospective tax rulings, because no such authorization is contained in § 505(a)(1). As Judge Wedoff reasoned in *UAL Corp*, "The far more reasonable reconciliation of §§ 505(a) and 1146[(b)] is that § 505(a) does not provide for declarations regarding future tax consequences, so that the procedure of § 1146[(b)] is in fact a non-redundant, limited grant of authority to make such declarations." 336 B.R. at 376. Basing their argument on out-of-Circuit case law interpreting unrelated health care statutes, Appellees ask this Court to take the aggressive step of

4

finding that Congress enacted duplicative statutory provisions in § 505 just to be extra sure. But that interpretation ignores the well-established canon of statutory interpretation that a statute should be construed to give effect to all its provisions and ignores the legislative history of § 505. As discussed in *UAL Corp,* Congress considered and rejected proposed amendments to permit a bankruptcy court to determine the federal tax consequences of a proposed reorganization. The only conclusion is that Congress knew that § 505(a)(1) did not provide authority for such forward-looking tax determinations. The best reading is that § 505(a)(1) is limited to adjudication of existing tax liabilities and does not include the authority to make to declarative rulings about future tax consequences. *In re UAL Corp*., 336 at 378.

Appellees ignore the convincing *UAL Corp* analysis, the legislative history, and recent amendments of the tax-related provisions, which all show that § 505(a)(1) was not intended to allow bankruptcy courts to make rulings about tax consequences of future transactions. The Bankruptcy Court improperly attempted to make a declarative ruling about a tax consequence of a future payment under § 505(a), and therefore, the Tax Order should be vacated.

### 3.   Caselaw does not support finding jurisdiction under §505(a)(1) for determination of future tax attributes.

The Bankruptcy Court incorrectly issued a declarative ruling about tax consequences of a transaction yet to take place before the tax period concluded and before the tax liability arose. As noted above, the *Central Valley* decision does not support such an approach, because in *Central Valley*, the debtor wanted to determine its pre-existing partner-level tax liability after the liability arose, and after the deadline to challenge partnership-level adjustments in Tax Court passed.

The other two cases cited as supporting the Bankruptcy Court's jurisdiction here (and relied on by this Court in ruling on the United States' motion for stay pending appeal) also involved determination of pre-existing liabilities for tax periods that concluded, not declarative relief about tax consequences of contemplated transactions to take place in the future. In both *Schwartz v. Gardiner (In re Schwartz)*, 192 B.R. 90, 94 (Bank. N.J. 1996) and *In re Kilen*, 129 B.R. 538, 548 (Bankr. N.D. Ill. 1991) courts had to determine if an individual debtor was personally liable under I.R.C. § 6672 for corporate liabilities that already arose, and neither case involved income tax consequences of future transactions.

5

The other cases Appellees cite are not binding and easily distinguishable. *Ogle v. IRS (In re Agway, Inc.)*, 447 B.R. 91, 95 (N.D.N.Y. 2011) involved the liquidating trustee seeking a determination of tax liability arising from completed postconfirmation sale of trust assets, not a preconfirmation potential transaction, as here. In *In re Popa*, 218 B.R. 420, 424-25 (Bankr. N.D. Ill. 1998) the bankruptcy court ruled that the chapter 7 trustee need not abandon real property because the bankruptcy estate could create value by taking advantage of the exclusion of gain on the sale of a personal residence under 26 U.S.C. § 121. The IRS now agrees that the bankruptcy estate may use the exclusion. *See* IRS CCN N(35)000-162 (Aug. 10, 1999). Simply put, the cases Appellees rely on do not support Appellees' position that the Bankruptcy Court had jurisdiction.

Appellees also improperly discount the cases in which courts consistently refuse to rule on tax issues in isolation and independently of ruling on the amount of income tax over a specified period: *In re Grand Chevrolet, Inc*., 153 B.R. 296 (C.D. Cal. 1993) (finding no jurisdiction under § 505(a)(1) for declaratory relief authorizing the filing of a consolidated tax return for consolidated debtors); *Matter of Inter Urban Broad. of Cincinnati, Inc*, 180 B.R. 153 (Bankr. E.D. La 1995) (dismissing an adversary proceeding where the debtor requested an advance determination that it could file tax returns as an "S" corporation); and *In re GYPC, Inc*., 2021 WL 4618410, at *2 (Bankr. S.D. Ohio October 5, 2021) ("The court does not believe section 505(a)(1) can be expanded beyond its plain meaning to allow this court to determine the trustee's authority to file amended returns as a discrete and separate legal determination from the determination of the estate's tax liability."). According to Appellees, these cases are inapposite because they involved "procedural tax obligations." ECF 49 at 16:7-8.

Ultimately, this proves the Government's point. The courts do not have jurisdiction to make advisory rulings about how to report income taxes: on a consolidated return (*Grand Chevrolet*), as an "S" corporation (*Inter Urban*), or on amended returns (*GYPC*). Here, the Bankruptcy Court went even further and issued an advisory ruling about whether the Main Uber Payment need be included as an item of gross income for two separate taxpayers, Levandowski and his Bankruptcy Estate. This ruling is precisely what the cases following *Grand Chevrolet* conclude cannot be done because it is not a determination of a tax liability but an advisory

opinion about how a taxpayer is to calculate and report its income tax. The Bankruptcy Court's

conclusion that it had jurisdiction lacks support in the case law.

**B. To the Extent it Acted within its Jurisdiction, the Bankruptcy Court Acted on an Insufficient Evidentiary Record.**

The Bankruptcy Court incorrectly concluded that the Main Uber Payment is not

includible in either Debtor's or the estate's gross income, and so there will be no tax due on

account of the Main Uber Payment. The Bankruptcy Court made a clear error here, because the

tax period had not concluded and the record lacked evidence of multiple other relevant facts,

such as other income and deductions. Appellees cannot dispute that the Debtor reported total

income of $7,217,384 during June 2022. Bk ECF 1154 (Ex. 22). This income is for the same tax

period as the Main Uber Payment, but the Bankruptcy did not and could not have considered this

income when it purported to determine the income tax under § 505(a)(1).

The ruling that the Main Uber Payment will not give rise to a tax liability is a

determination of an income tax for a period that had not ended. Appellees offer no argument to

contradict the basic principle that, unlike a one-time tax on an event or a transaction, federal

income tax is levied on an annual basis and is calculated based on income received over a

defined time period, ordinarily a calendar year. Appellees repeatedly and misleadingly equate

this concept with the requirement to file a tax return. The problem with what the Bankruptcy

Court did is not that there was no tax return prepared, but that the court attempted to determine

the amount of income tax based on one (future) transaction, before the tax period closed, and

without considering all items of income and deductions.

Thus, if this Court concludes the Bankruptcy Court acted within its jurisdiction, then its

determination of income tax liability here is reversible because it is not supported by—and is in

fact contradicted by—the evidence. *See In re Conejo Enter., Inc*., 96 F.3d 346, 351 (9th Cir.

1996) ("Decisions committed to the bankruptcy court's discretion will be reversed. . . . 'when the

record contains no evidence on which [the bankruptcy court] rationally could have based that

decision.'") Even if the Bankruptcy Court purported to determine the amount of tax, the Tax

Order should be vacated because the Bankruptcy Court failed to consider all of the inputs to

determine the income tax due for the tax period at issue, including over $7 million in income.

**C. The Bankruptcy Court Incorrectly Concluded the Main Uber Payment Was Excluded from Gross Income.**

### 1. <u>This Court should consider the substantive tax arguments.</u>

Contrary to Appellees' suggestions, the United States' briefing below does not control what this Court may consider. Even if a party fails to raise an issue in the lower court, the appellate court "generally will not deem the issue waived" if the lower court "actually considered it." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007) (citations omitted). Appellees' cited cases do not undercut this rule; indeed, the only controlling case they cite affirms it. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (emphasizing that the "workable standard" for waiver is whether an argument is "raised sufficiently for the trial court to rule on it.") Here, the merits of the tax issue were briefed by Debtor and Debtor had an opportunity to respond to opposing arguments. There is no dispute the Bankruptcy Court not only could but did consider the substantive tax arguments about whether the Main Uber Payment was includible in gross income. And because the Bankruptcy Court did not request additional briefing, it must have concluded that the arguments were sufficiently raised.

This Court can and should consider the United States' substantive tax arguments because the lower court considered the issue and because the question of whether the Main Uber Payment is includible in gross income is a pure question of law. Therefore, to the extent the Court does not reverse outright on the jurisdictional issue, this Court can and should review the substantive tax issue *de novo* to prevent a miscarriage of justice and as a purely legal issue.

### 2. <u>The Main Uber Payment is not insurance.</u>

The Bankruptcy Court's conclusion that a collusive arrangement to indemnify Levandowski for damages caused by his theft of technology constitutes insurance was clearly erroneous. First, the Arbitration Agreement cannot be insurance because, by its own terms, it applied to Levandowski's "Bad Acts," defined as "fraud" and various "willful, intentional or deliberate" wrongful acts. Bk ECF 918-1 at 6 (Ex. 7). In California, "An insurer is not liable for a loss caused by the willful act of the insured." Cal. Ins. Code § 533. "The statute reflects a fundamental public policy of denying coverage for willful wrongs and discouraging willful torts." *Shell Oil Co. v. Winterthur Swiss Ins*. Co., 12 Cal.App.4th 715, 739, 15 Cal.Rptr.2d 815

1    (1993). No "preconceived design to inflict injury" need be shown where harm is "inherent in the

2    act itself." *J. C. Penney Cas. Ins. Co. v. M. K.*, 804 P.2d 689, 698 (Cal. 1991).

3         It is not relevant that the arbitration award came about in civil, rather than criminal,

4    proceedings, nor does it matter that the claims subject to arbitration did not include an allegation

5    of trade secret theft. This Court has previously found that claims much like those subject to the

6    dispute among Uber, Google, and Levandowski trigger Cal. Ins. Code § 533 and are uninsurable.

7    *Axis Reinsurance Co. v. Telekenex*, Inc., 913 F. Supp. 2d 793, 806 (N.D. Cal. 2012) (interference

8    with contractual relations); *Trailer Marine Transp. Corp. v. Chicago Ins. Co.,* 791 F. Supp. 809

9    (N.D. Cal. 1992) (antitrust violations causing economic harm).[3] The relevant fact is that

10   Levandowski's acts were willful, intentional, and deliberate and inherently harmful. Thus,

11   payment under the Indemnification Agreement should not have been found to be insurance,

12   given that no insurer would have been obligated to pay out under California law.

13        The Bankruptcy Court further incorrectly applied the four "guiding principles" for

14   determining whether the Indemnification Agreement is insurance: "(1) that an insurance

15   transaction must involve 'insurance risk;' (2) that insurance involves risk-shifting and risk-

16   distributing; and (3) that, in the absence of a statutory definition, 'insurance' is to be defined in

17   its commonly accepted sense. . . .[and] (4) that matters of Federal income taxation must be

18   resolved with principles of Federal income taxation borne in mind." *AMERCO & Subsidiaries v.*

19   *Comm'r*, 96 T.C. 18, 38 (1991*), aff'd sub nom. AMERCO, Inc. v. Comm'r*, 979 F.2d 162 (9th

20   Cir. 1992). The *AMERCO* factors are not met in this case.

21        As to the first two factors, the Indemnification Agreement did not distribute risk as

22   required for true insurance but was specific to a single event expected from Levandowski's

23   intentional theft of technology. There was no proper risk distribution, which requires "numerous,

24   relatively small, independent risks that occur randomly over time" *Clougherty Packing Co. v.*

25   *Commissioner*, 811 F.2d 1297, 1300 (9th Cir. 1987). Uber calculating the price of

26   Levandowski's stolen technology and paid for it, in part, with the Indemnification Agreement.

27

28   [3] Appellees cite *California Shoppers, Inc. v. Royal Globe Ins. Co*., 175 Cal. App. 3d 1 (1985), but that case has been called into question by *J.C. Penney*. *Off. Depot, Inc. v. AIG Specialty Ins. Co.,* 722 F. App'x 745 (9th Cir. 2018), deals with unrelated California False Claims Act claims.

Uber's arrangement with Levandowski does not resemble insurance in the traditional sense because it doesn't meet the factors courts look at: "(1) whether the insurer is organized, operated, and regulated as an insurance company by the States in which it does business; (2) whether the insurer is adequately capitalized; (3) whether the insurance policies are valid and binding; (4) whether the premiums are reasonable in relation to the risk of loss; and (5) whether premiums are duly paid and loss claims are duly satisfied." *R.V.I. Guar. Co. v. Commissioner*, 145 T.C. 209, 231 (2015) (citing cases). Here, it is undisputed that there were no premiums paid and that Uber is not organized, operated, and regulated as an insurance company, and no evidence was presented as to the other factors.

For the first time on appeal, Appellees claim that Uber considered itself to be an insurer, that Uber conducted an investigation to understand its risk, and that Uber had the right to control the defense of claims under the agreement. ECF 49 at 29:15-21. None of these claims were presented to or considered by the Bankruptcy Court below. And if Appellees are right, any party becomes an insurer simply by entering into an indemnification agreement after an investigation. The facts Appellees point to fall far short of establishing that the indemnification agreement Uber provided to Levandowski as part of his employment package resembles insurance in its commonly accepted sense.

Uber knew when it hired Levandowski that he was likely to be sued by his previous employer in connection with his move to Uber. The fourth *AMERCO* factor requires the court to square its decision with federal tax concepts such as substance over form and closely examining related party transactions. 96 T.C. at 42. The Bankruptcy Court misapplied the law by failing to consider the close relationship between the purported insurer and the purported insured.

The Bankruptcy Court misapplied the substantive tax law and incorrectly concluded that the Main Uber Payment is "insurance."

### 3. **Debtor did not meet his burden to show that the Main Uber Payment is not gross income.**

Debtor did not show that the Main Uber Payment qualifies for any statutory exception to the general rule that income from any source derived is "gross income." Neither the "insurance"

theory the Bankruptcy Court adopted, nor the other three theories Appellees advance for excluding the Main Uber Payment from gross income succeed here.

Gross income includes income "from whatever source derived." I.R.C. § 61(a). A third party's payment of a taxpayer's liability is included in gross income. *See Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 729 (1929) ("The discharge by a third person of [a taxpayer's tax] obligation ... is equivalent to receipt by the [taxpayer]."). And when one party contractually assumes the responsibility for another's liability, such as in a tax indemnification agreement, income arises. *Reading & Bates Corp. v. United States*, 40 Fed.Cl. 737 (1998). Exclusions from income are construed narrowly and taxpayers must bring themselves within the clear scope of the exclusion. *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995). The Bankruptcy Court did not identify, and the United States does not believe that there is, any applicable statutory exception to gross income that would apply to the Main Uber Payment. Like the insurance theory, the other three theories Debtor advances to exclude the Main Uber Payment from gross income also fail.

**Insurance.** Even if the Court were to reject the United States' argument above and conclude the Main Uber Payment was insurance, it doesn't mean it wasn't income. The Bankruptcy Court incorrectly assumed that all insurance payments do not constitute income to the insured, but case law is abundant in examples to the contrary. *E.g., Helvering v. William Flaccus Oak Leather Co.*, 313 US 247 (1941) (fire insurance proceeds from the destruction of fully depreciated property were includable in gross income); *Moholy v. United States*, 235 F.2d 562 (9th Cir. 1956) (proceeds of insurance that replaces ordinary income must be taxed as ordinary income); *U.S. v. Koshland*, 208 F.2d 636, 640 n.5 (9th Cir. 1953) (insurance proceeds represented gain to the extent they exceeded the adjusted basis of a burned building). Here, because the Main Uber Payment paid off Levandowski's personal liability, it is includible in his gross income, whether or not categorized as "insurance." *Old Colony*, 279 U.S. at 729.

**Tax Benefit Rule.** Next, the tax benefit rule is irrelevant here: the rule requires a taxpayer who received a tax benefit from a deduction in an earlier year to recognize income in a later year if an event occurs that is fundamentally inconsistent with the premise on which the deduction was initially based. *Hillsboro National Bank v. Comm'r*, 460 U.S. 370 (1983). The tax

benefit rule allays some of the inflexibilities of the annual accounting system by "canceling out" an earlier deduction when a later event is "fundamentally inconsistent" with the premise of the deduction. *Id.*, at 377. But the Supreme Court took care to emphasize that the tax benefit rule is "limited" and emphasized that it applies "*only* if the occurrence of the event in the earlier year would have resulted in the disallowance of the deduction [in that year]." *Id.* at 389. In the present case, there is no allegation, let alone evidence, of a deduction in an earlier year to compare with a later potentially fundamentally inconsistent event—the Main Uber Payment.

To the contrary, Appellees admit that Levadowski was prohibited by statute from deducting any payment to Google, even if he had made it himself. Thus, the tax benefit rule cannot apply as a matter of law. *See, e.g., Catalano v. Comm'r*, 240 F.3d 842, 844 (9th Cir. 2001) (tax benefit rule does not apply where deduction in earlier year is denied for being improper). Rather, Appellees seek to expand the tax benefit rule into a rule that a taxpayer who *does not* deduct an expense should likewise pay no tax if someone else makes payment for the same expense on his behalf. Appellees cite no law in support of their imagined rule because there isn't any. In fact, it would upend longstanding principles of income taxation (not to mention numerous tax statutes). *See, e.g., Old Colony Trust Co*, 279 U.S. 716; *Hudspeth v. Comm'r*, 914 F.2d 1207, 1212 (9th Cir. 1990) (explaining tax benefit rule does not nullify tax statutes). It would be radical for this Court to adopt a rule that a taxpayer need not report income if someone else, such as his or her employer, simply pays for nondeductible expenses directly. Appellee's argument based on the tax benefit rule fails.

**Working Condition Fringe.** Likewise, the Main Uber Payment is not a working condition fringe benefit. 26 U.S.C. § 132(a)(3) excludes from gross income "working condition fringe benefits," defined in 26 U.S.C. § 132(d) as any property or services provided to an employee the cost of which could have been deducted under 26 U.S.C. § 162 if the employee had incurred the expense herself. There is no evidence that Levandowski was employed by Uber when he entered into the Indemnification Agreement or when the Main Uber Payment was made. Instead, the Indemnification Agreement was entered into as part of a merger between Ottomotto

and a subsidiary of Uber and it relates to "Pre-Signing Bad Acts" committed by Levandowski prior to Uber's acquisition of Ottomotto. Bk ECF 918-1 at 7 (Ex. 7 at 125).

Even if Levandowski had been Uber's employee at the relevant times, there is no evidence that the payment to Uber would be deductible by Levandowski <u>as Uber's employee</u>. An employee is considered engaged in the specific trade or business of being an employee of the employer. Rev. Rul. 92-69, 1992-2 C.B. 51 (1992). To be deductible, Levandowski's intentional and willful "Bad Acts" have to be part of his trade or business of being Uber's employee. In other words, the Court would have to find that stealing trade secrets from a competitor was part of Levandowski's job duties as Uber's employee. No party has presented any evidence that Uber instructed Levandowski to steal trade secrets from Google. The Main Uber Payment would <u>not</u> be a working fringe benefit, even if Levandowski had been Uber's employee.

**Reimbursable Employee Expense.** Finally, the theory that the Main Uber Payment is a reimbursable employee expense also fails for several reasons. First, as a threshold matter, deductions for employee business expenses under 26 U.S.C. § 162(a) are a miscellaneous itemized deduction, which are not allowed in years 2018 through 2025. *See* 26 U.S.C. § 67(g). Second, Appellees argue that the Main Uber Payment is a reimbursement of ordinary and necessary business expenses Levandowski incurred in pursuit of Uber's business. This argument is a red herring: the Main Uber Payment is <u>not</u> reimbursement for an expense Levandowski incurred but rather a heavily negotiated direct payment to Google for Levandowski's benefit. The fact that the amount Uber paid on Levandowski's behalf was intended to negate his personal liability to Google and now his tax liability undercuts the claim that there was an adequate business connection for the payment. *Shotgun Delivery, Inc. v. United States*, 269 F.3d 969, 972-973 (9th Cir. 2001). Nor can Levandowski's theft of technology from Google be said to be an "ordinary and necessary" expense of Uber's business. Third, even if the payment were a reimbursement for an expense Levandowski incurred, there has been no showing it was made in connection with a qualified accountable plan, as required by statute. 26 U.S.C. § 62(c); *Shotgun Delivery*, 269 F.3d at 972; *Biehl v. Commissioner*, 118 T.C. 467, 475-476 (2002), *aff'd*, 351 F.3d 982 (9th Cir. 2003). Debtor's claim that Uber was "aware" of the indemnification via litigation

13

does not establish that Uber put in place an accountable plan. Fourth, as noted above, there is no evidence that Levandowski was Uber's employee, which is also fatal to the reimbursable employee expense argument. *See Biehl*, 351 F.3d at 986 ("The reimbursement payment must be received from the employer 'for whom the employee performs a service as an employee of the employer.' Treas. Reg. § 1.62–2(d) (as amended in 2003) (emphasis added).").

In sum, none of the various theories advanced by Appellees removes the Main Uber Payment from its baseline characterization as gross income to Levandowski.

**D. The Tax Order Should Be Vacated Because It Is Bad Policy.**
        **1.**  <u>**The Tax Order opens the door to piecemeal tax litigation.**</u>

The Tax Order violates the one-year one-action approach that prevents piecemeal tax litigation. Because the income tax liability for a given tax period constitutes one cause of action, the taxpayer and the taxing authority must raise and litigate all issues that impact the tax liability for that year. *Commissioner v. Sunnen*, 333 U.S. 591, 597-98 (1948). That was impossible in this case: the tax period had not concluded, the taxpayer had not calculated his tax liability based on all the facts, and the IRS has had no opportunity to examine the return, conduct discovery, or propose a deficiency. Appellees openly admit that the IRS and the taxpayer will have to engage in piecemeal tax litigation: "[A]ny res judicata effect would be confined to the Main Uber Payment, not Debtor's income tax more broadly." ECF 49 at 23:9-10. So both the IRS and the taxpayer will have to go back to court to litigate the actual tax liability. This flies in the face of the one-year one-action rule. The Tax Order should be vacated as a dangerous precedent that allows piecemeal tax litigation in bankruptcy courts.

        **2.**  <u>**The practical needs of bankruptcy reorganization are not the only policy considerations.**</u>

The Bankruptcy Court found that it had jurisdiction to rule on the Main Uber Payment because otherwise the delay and expense would make reorganization impossible. Bk ECF 1024 at 50:12-18 (Ex. 18). The Bankruptcy Court ignored that these were problems of Debtor's (and to a lesser degree, Google and Uber's) own making and overstated the need for a quick ruling. Congress has provided special procedures: the refund provision in § 505(a)(2)(B) (requiring 120

days before the court can rule on a refund claim) and the prompt determination procedure in § 505(b)(2) (providing for 60 days to select a return for examination and 180 days to audit).

As noted above, Congress gave bankruptcy courts the authority to determine the future income tax consequences of proposed plans of reorganization and provided sufficient time for the taxing authorities to act. Under both § 1146(b) (applicable in chapter 11 cases to state and local taxes) and § 1231(b) (applicable in chapter 12 cases to federal, state, and local taxes) only after the taxing authority had 270 days to respond to a request to determine future income tax consequences of a proposed plan (limited to questions of law) can the bankruptcy court enter declaratory judgment. Here, the Bankruptcy Court ruled on equivalent issues after giving the Government just 14 days (including mailing time) to respond to the Tax Motion.

Appellees would have this Court conclude that the only policy consideration is the speed and convenience of the reorganizing debtor. This reasoning does not hold where Debtor created the time crunch by insisting that that the Plan could only be confirmed without a tax reserve. More generally, Debtor's interests are not the only ones at play. Bankruptcy requires balancing the interests of debtors and creditors, and the needs of the IRS, which is an involuntary creditor in virtually every bankruptcy case. "It is beyond peradventure that there is, in the United States, an inexpugnable public policy that favors payment of lawfully owed federal income taxes. This strong public policy applies to taxpayers in bankruptcy." *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1149 (5th Cir. 1990) (internal quotations and citations omitted).

## CONCLUSION

In its haste to rush through a tax determination and confirm Levandowski's plan the Bankruptcy Court committed key errors that require this Court to vacate the Bankruptcy Court's Order. Either the Bankruptcy Court issued an order outside the scope of its jurisdiction or, if acting within its jurisdiction, based on an insufficient record. Plus, the Bankruptcy Court made the wrong call on the merits: the Main Uber Payment is taxable income to Levandowski. These errors are serious both in terms of potential tax loss and in terms of violations of tax policy. The United States respectfully requests that this Court vacate the Bankruptcy Court's order on the Tax Motion.

1    Dated: November 21, 2022.

2

3                                              DAVID A. HUBBERT
                                               Deputy Assistant Attorney General
4
                                               */s/ Boris Kukso*
5                                              BORIS KUKSO
                                               AMY MATCHISON
6                                              Trial Attorneys, Tax Division
                                               U.S. Department of Justice
7                                              P.O. Box 683
                                               Washington, D.C.  20044
8                                              202-353-1857 (Kukso)
                                               202-307-6422 (Matchison)
9                                              202-307-0054 (f)
                                               boris.kukso@usdoj.gov
10                                             amy.t.matchison@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties entitled to it.

/s/ Boris Kukso
BORIS KUKSO
Trial Attorney
United States Department of Justice, Tax Division