**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DARA L. SILVEIRA (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

**GOODWIN PROCTER LLP**
BRETT M. SCHUMAN (Cal. Bar No. 189247)
(BSchuman@goodwinlaw.com)
JENNIFER BRIGGS FISHER (Cal. Bar No. 241321)
(JFisher@goodwinlaw.com)
Three Embarcadero
San Francisco, California 94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041

*Attorneys for Appellees*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Reorganized Debtor. | Case Nos. 4:22-cv-02781-YGR;<br>4:22-cv-02783-YGR;<br>4:22-cv-02786-YGR; and<br>4:22-cv-02789-YGR<br>(Jointly Administered)<br><br>On Appeal from Bankruptcy Court<br>Case No. 3:20-bk-30242-HLB |
| The United States of America, on behalf of the Internal Revenue Service, and California Franchise Tax Board,<br><br>Appellants,<br><br>v.<br><br>Peter Kravitz, in his capacity as trustee of the Levandowski Residual Liquidation Trust, as successor to the Debtor in Possession, and Anthony S. Levandowski,<br><br>Appellees. | **REPLY IN SUPPORT OF MOTION TO DISMISS APPEALS**<br><br>[No Hearing Set] |

Appellees respectfully submit this reply in support of the *Motion to Dismiss Appeals* [Docket No. 48] (the "Motion")[1] and in response to the oppositions (each, an "Opposition," and together, the "Oppositions") filed, respectively, by the California Franchise Tax Board [Docket No. 57] and the United States of America [Docket No. 59] and represent as follows:

## INTRODUCTION

The Appeals are jurisdictionally defective because the Taxing Authorities cannot get what they truly seek: a restoration of the pre-confirmation *status quo*. To restore the *status quo*, the Main Uber Payment[2] must be repaid. Yet because the Taxing Authorities made no effort to stay the Settlement Order, the payment was "indefeasibly" made in accordance with the terms of the Global Resolution, thus denying the Taxing Authorities the remedy they seek.

The Oppositions assert that the Settlement Order is irrelevant because all the Taxing Authorities seek is the imposition of tax liability; whether Debtor might pay that liability is irrelevant. But the nub of the Appeals is that the Tax and Confirmation Orders, which were considered together with the Settlement Order, should have permitted taxation of the Main Uber Payment. *E.g.*, FTB Opp. 10. Reversal of the Tax and Confirmation Orders alone will not address that issue because reversal cannot undo the Main Uber Payment. While the Taxing Authorities claim that they can obtain redress in other ways, speculation about redressability does not suffice for Article III standing. More critically, the Taxing Authorities' proposed recovery would upend the Plan and will work hardship on Debtor and the third-parties who have received, or are expecting, distributions in accordance with the now-confirmed Plan, making the Appeals equitably moot.

---

[1]   Capitalized terms used but not defined herein shall have the definitions contained in the Motion.

[2]   The amount of the Main Uber Payment will be available to this Court should the *Motion Pursuant to Federal Rule of Bankruptcy Procedure 8009(f) for Acceptance of Documents Filed Under Seal* [Docket No. 51] be granted.

For the foregoing reasons, this Court should grant the Motion.

## ARGUMENT

### A. The Taxing Authorities Lack Standing to Pursue Their Appeals.

The Taxing Authorities have made plain their desire to return to the pre-confirmation *status quo*. Yet they never appealed the Settlement Order or its provision directing payment of the Main Uber Payment to Google. Due to that omission, the Taxing Authorities cannot restore the *status quo* even if they were to prevail on the Appeals. To make up for their failure, the Taxing Authorities make a series of arguments to establish standing and, specifically, redressability.

The burden of establishing standing on appeal is on the Taxing Authorities, not the Appellees. *See* IRS Opp. 4; *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). Despite the IRS's argument to the contrary, standing can be "raise[d] … on appeal for the first time." IRS Opp. 2; *see Wash. Envt'l Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (jurisdictional defects are "non-waivable" and "may be raised at any time … including on appeal").

The Taxing Authorities' argument that they have been injured by the Tax Order, and their conclusory identification of ways in which they might obtain meaningful relief, are insufficient to establish standing. IRS Opp. 2; FTB Opp. 5-6. The IRS, for example, says it can obtain tax proceeds from "purportedly exempt assets, transfers to related parties, IRAs, and a Charitable Lead Annual Trust (CLAT)," "future earnings and other future income," and personal liability for the Trustee. IRS Opp. 4-5. The IRS fails to explain how these mechanisms give to it "more than a chance of 'money changing hands,'" instead asking this Court to accept its say-so. Speculation about how standing might be satisfied—and how an injury might be redressed—has never been enough to establish Article III standing and does not suffice here. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1117 (9th Cir. 2022) (standing cannot be based on an "impermissibly speculative" basis).

The FTB offers a thinner basis for redressability: "the opportunity to properly determine the tax effects of the Settlement Payment in the context of the overall tax period," FTB Opp. 7-8, which, by the FTB's own admission, may not result in any taxes owed being by Debtor. *Id*. at 5-6. In other words, the FTB suggests that pecuniary injury on its part is speculative and that it is simply seeking procedural redress. The FTB's attempt to reframe its injury—and desired redress—does not help the FTB, as "a bare procedural violation, divorced from any concrete harm," cannot give rise to Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

The Supreme Court's decision in *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019), does not save the Taxing Authorities from their failure to meaningfully demonstrate redressability—rather, it demonstrates how the Taxing Authorities' lack of diligence deprives them of standing. There, the Court held that Mission might obtain "effectual relief" because it could "seek the unwinding of prior distributions to get its fair share of the estate." *Id.* at 1661. Notably, Mission "appealed the order distributing the cash" it sought, making it possible that the recipient would have to "return it if Mission prevails." Reply Br. for Pet'r 23, *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, No. 17-1657 (U.S. filed Feb. 8, 2019). The Taxing Authorities failed to do the same with the Settlement Order.

Finally, the IRS resorts to policy, finding it "patently absurd" to force it to appeal an order that was inextricably intertwined with the two other orders being challenged. IRS Opp. 6-7. Its indignation is unwarranted. The Taxing Authorities are not expected to "interfere in every settlement on the off chance that the parties may challenge [its] tax treatment," IRS Opp. 6, but can be expected to appeal a settlement order if it is necessary to the entry of the orders being appealed and if they have notice of the settlement, the dispute over the tax consequences thereof, and the reality that the settlement and confirmation cannot be effected if the

settlement is taxable. As the IRS acknowledges, "[t]ax considerations do impact private parties' decisions on how to structure their affairs," IRS Opp. 7, and the taxability of the Main Uber Payment would have affected the payment and how Debtor moved forward with Plan confirmation and toward his fresh start.

The Taxing Authorities' failure to appeal the Settlement Order deprives them of the ability to obtain the relief they seek—a return to the pre-confirmation *status quo*. That failure deprives the Taxing Authorities of standing to pursue the Appeals.

### B. The Appeals Should Be Dismissed as Equitably Moot.

Even if the Taxing Authorities had Article III standing, the Appeals are equitably moot because the Taxing Authorities failed to act to preserve the *status quo*. This lack of diligence created circumstances under which granting the Taxing Authorities' requested relief would greatly prejudice Debtor and third parties.

#### 1. Absent an Effort to Preserve the *Status Quo*, the Appeals Are Moot.

The Ninth Circuit requires parties appealing plan confirmation to seek a stay that preserves the *status quo*, and the failure to exercise such diligence renders the appeal equitably moot. *E.g.*, *Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214, 1216 (9th Cir. 2014); *In re Thorpe Insulation Co.*, 677 F.3d 869, 881 (9th Cir. 2012); *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981).

The Taxing Authorities contend that they satisfied this requirement because they appealed, and sought a stay of, the Tax Order and the Confirmation Order. The Settlement Order, they argue, is a "non-sequitur" because the Taxing Authorities were not appealing that order. IRS Opp. 8; *see* FTB Opp. 10. They seem to misunderstand the purpose of the equitable mootness doctrine: To require the appealing party's diligence and pursuit of all "available remedies" in preventing "great changes in the *status quo*." *In re Mortgs.*, 771 F.3d at 1214.

Here, that required the Taxing Authorities to seek a stay of the Settlement Order, in order to preserve the *status quo* and preserve Debtor's ability to pay the liabilities they allege on appeal.

Appealing two related orders while not challenging the order divesting the estate of *the* critical asset from which the Taxing Authorities seek proceeds is not the pursuit of all available remedies.  The Taxing Authorities could have argued that the Main Uber Payment should not have been paid to Google "indefeasibly" because the Payment needed to be structured to account for tax considerations, and that, pending their appeal, the Main Uber Payment should be held in escrow or be deemed recoverable from Google in the event that there were unpaid claims of priority creditors including the Taxing Authorities.[3]  Had they proceeded thus and appealed the Settlement Order, one of three outcomes might well have followed: (a) the proceeds of the Main Uber Payment would have remained in the estate and available to pay tax claims, (b) the Main Uber Payment would *not* have been made indefeasibly and, had all of the Appeals been successful, the Trust might have sought to recover the proceeds of the Main Uber Payment, or (c) the settlement as proposed would have been renegotiated or terminated because the Taxing Authorities' objections and appeal were pending.  Because the Taxing Authorities did not oppose or appeal, much less seek a stay of, the Settlement Order, neither they nor any other party now have recourse to the Main Uber Payment.  On that basis alone, the Taxing Authorities' appeals should be dismissed as equitably moot.

//

//

//

---

[3]  Indeed, this was *exactly* the issue that concerned the Bankruptcy Court and that caused it to direct additional briefing with enhanced notice to the Taxing Authorities.

## 2. The Taxing Authorities Fail the Other Equitable Mootness Factors.

The IRS argues that effective relief is still possible, though acknowledging innocent third parties may lose out because of its priority. Specifically, its position is that: (1) it had no obligation to stop the Main Uber Payment so that it could be available to pay the tax consequences they allege; (2) because the payment was made, the Trust and Debtor must bear the burden of the purported massive tax liability without recourse to the Main Uber Payment; (3) it remains equitable for Debtor to suffer a tax liability he cannot satisfy in his lifetime, and (4) it is not prejudicial to deprive third parties of their Plan distributions they thought (or even unwinding them) because the Taxing Authorities have priority. This Court should reject the IRS's "heads I win, tails you lose" approach to equitable mootness.

At the outset, the IRS's suggestion that the Trust and Debtor have assets sufficient to pay the tax liability asserted by the Taxing Authorities is wrong. IRS Opp. 11. Notwithstanding the IRS's arguments, the Motion cites the evidence establishing that the Trust and Debtor, together, are unlikely to *ever* have assets sufficient to discharge the alleged tax liability. *See* Motion at 7:12-17 (explaining the shortfall, based on the IRS's calculations). Indeed, the IRS makes clear that what it really expects is for Debtor to be "personally liable for the estate's unpaid taxes." IRS Opp. 11. This would "knock[] props out from under the plan" by depriving Debtor of his clean break, *Roberts Farms*, 652 F.2d at 797, saddling him post-confirmation with an enormous burden that he cannot hope to repay. That is not an "equitable remedy" under any definition.

The IRS also seeks its remedy from innocent third parties. To be clear, if the Taxing Authorities were successful in their attempt to tax the Trust and Debtor for *Google's* receipt of the Main Uber Payment, *every creditor in the case other than Google* will receive far less than they would have received had the Main Uber Payment been paid to the estate (if they receive anything at all). The list of

prejudiced third parties includes all professionals and vendors that provided goods and services to the estate, and all unsecured creditors that received distributions under the Plan or an interest in the Trust. In essence, the Taxing Authorities seek a sizable slice of the pie when all that remains is the crust on the rim, with the filling (the Main Uber Payment) having gone to Google. The time to ask for a slice was when the pie was intact, when there was a slice to carve out.[4]

The IRS's answer to the prejudice suffered by third parties is that the prejudice is not "undue," as tax liabilities are given priority as a matter of law. That answer misreads the case law.[5] The Ninth Circuit has held that prejudice to third parties is not "undue" when the third parties are intimately involved in "every other step of the [bankruptcy] process." *E.g.*, *JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props. (In re Transwest Resort Props.)*, 801 F.3d 1161, 1170 (9th Cir. 2015). The court has also held that there is no undue prejudice where a remedy can be crafted in a manner that does not affect claimants "in a negative way," for example, by enlarging the pool of money available for distribution. *E.g.*, *Thorpe*, 677 F.3d at 882-83 (suggesting that third-party prejudice could be ameliorated by having the debtor pour more money into the trust). By contrast, an appeal that results in a confirmed plan being completely upended will naturally cause undue prejudice to third parties. *Id.* ("If abandonment

---

[4] The IRS implies that, because the Confirmation Order confirmed a liquidating plan, the transactions (*i.e.*, the payments to professionals, vendors, and unsecured creditors) will not be "difficult to unwind." IRS Opp. 9:1-9. The remedy of undoing the plan and unwinding distributions made from the estate of Debtor, even if it were not complex (and, in fact, it would be), remains inequitable in the extreme when the proceeds of the Main Uber Payment would have made such a process wholly unnecessary.

[5] As the IRS's lack of cited authorities may suggest, there is no requirement for the Trustee to establish that third parties have already taken their distributions and made "new investments or further transactions that are complex or difficult to unwind." IRS Opp. 9. The cited portion of *Thorpe* does not stand for that proposition.

of the § 524(g) plan were the only possible remedy, then there might be equitable mootness.").

The Taxing Authorities' Appeals will upend the Plan. The prejudice arises not from the fact that the Taxing Authorities' claims might take priority, but that distributions have already been made, with many others promised and third parties that rely on that promise. *Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1215, 1218 (9th Cir. 2014). The FTB, by contrast, argues that the Plan will not be undermined, and third parties will not be prejudiced, because reversal in the FTB's favor will not necessarily lead to tax liability for Debtor. FTB Opp. 11-12. While the FTB points to hypotheticals about how Debtor may not incur tax liability, FTB Opp. 5-6, the reality, as the IRS points out, is that the Main Uber Payment may result in a massive tax liability owed to both the IRS and the FTB, and that the liability will have to be paid somehow—that is, at the expense of innocent third parties and Debtor himself. The FTB cannot escape equitable mootness merely by kicking the specter of tax liability further down the line.

## CONCLUSION

For these reasons, and the reasons stated in Appellees' Motion to Dismiss, the Appeals should be dismissed.

Dated: November 28, 2022

**GOODWIN PROCTER LLP**
**KELLER BENVENUTTI KIM LLP**

By:   /s/ *Dara L. Silveira*

*Attorneys for Appellees*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Bankruptcy Procedure 8013(f)(3)(C), 8015(a)(6), 8015(f)(2), and 8015(h), the undersigned counsel for the Appellees hereby certifies that the Reply in Support of Motion to Dismiss Appeals has been prepared in fourteen (14) point Times New Roman font, and that, based on the word count function provided by Microsoft Word, the brief contains 2,585 words (out of 2,600 maximum), excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

*/s/ Dara L. Silveira*
Dara L. Silveira