UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:**<br><br>**ANTHONY SCOTT LEVANDOWSKI,**<br>Debtor.<br><br>**THE UNITED STATES OF AMERICA on behalf of THE INTERNAL REVENUE SERVICE**<br><br>- and -<br><br>**CALIFORNIA FRANCHISE TAX BOARD,**<br>Appellants,<br><br>**v.**<br><br>**ANTHONY SCOTT LEVANDOWSKI, ET AL.**<br>Appellees. | Case Nos. 4:22-cv-02781-YGR (lead case)<br>4:22-cv-02783-YGR<br>4:22-cv-02786-YGR<br>4:22-cv-02789-YGR<br><br>On appeal from:<br>Bankruptcy Case No. 20-30242 (HLB)<br>Chapter 11<br><br>(Jointly Administered)<br><br>**ORDER DENYING MOTION TO DISMISS APPEALS**<br><br>Re: Dkt. No. 48 |

The United States of America, on behalf of the Internal Revenue Service ("IRS"), and the California Franchise Tax Board ("FTB") commenced four separate appeals in connection with Anthony Scott Levandowski's Chapter 11 bankruptcy proceedings. All of the appeals have been consolidated for administrative purposes only under lead case No. 4:22-cv-02781. (Dkt. No. 19.)[1]

Relevant to the underlying appeals are two orders of the bankruptcy court that were entered on May 2, 2022: (1) Order Granting Debtor's Motion to (I) Determine Tax Effect of Settlement Payment or (II) Find the Debtor's Plan Feasible without Reserving for Tax Thereon (IRS/FTB); and (2) Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Debtor in

---

[1] All docket references are to the lead case unless otherwise stated.

Possession's Combined Disclosure Statement and Chapter 11 Plan dated March 29, 2022.[2]

Since the requests to stay the bankruptcy orders were denied (Dkt. Nos. 25 & 32), the approved plan went into effect on August 25, 2022. Peter Kravitz was appointed Trustee of the Levandowski Residual Liquidation Trust, and has since joined these proceeding. Now, pending before the Court is the Trustee's motion to dismiss[3] the appeals for constitutional and equitable mootness. (Dkt. No. 48.) Having closely considered the motion and the record in this case, the motion to dismiss the appeals is **DENIED**. The merits of the appeals will be addressed by separate order.

## I.   BACKGROUND

The following facts taken from the record are generally undisputed:

These bankruptcy proceedings stem from Levandowski's employment with Google, LLC ("Google") on a project that was aimed at developing and marketing a self-driving car. Sometime in January 2016, Levandowski left Google and formed his own company known as Ottomotto LLC ("Otto"), which was subsequently sold by Levandowski in August 2016 to Uber Technologies, Inc. ("Uber"). As part of the sale, Uber agreed to indemnify Levandowski for certain claims that could be brought against him by Google. Ultimately, Google did sue Levandowski in arbitration and after arduous and contentious litigation obtained a judgment totaling $179,047,998.64.

Since Levandowski could not afford the Google judgment, he commenced his Chapter 11 proceedings on March 4, 2020. Because Uber contested its obligations under the indemnification agreement to pay the judgment, Levandowski commenced an adversary proceeding against Uber to enforce its obligations. As the creditor with the largest claim, Google was also permitted to

---

[2] The parties did not attach exhibits to the motion to dismiss and incorporate by reference the record submitted in connection with the merits of the appeal. Such incorporation by reference forces the Court to scour the record and imposes substantial administrative burdens. The burden is heightened, where, as here, the motion to dismiss raises a threshold issue to the underlying appeal, which the Court must address first.

[3] The motion to dismiss is ambiguous as to whether it is brought by the Trustee and Levandowski. In the notice of motion, it indicates that the motion was filed by the Trustee. However, it also indicates that "Appellee*s*" seek relief. Since the Trustee is the only one that formally moved for relief, the Court construes the request as brought by him.

1   intervene in that proceeding.

2   After two years of litigation surrounding the indemnification, and before a trial on the
3   matter, Google, Uber, and Levandowski reached a settlement (the "Global Settlement"). The IRS
4   and FTB were not parties to the settlement negotiations. The parties agree that the Global
5   Settlement achieved at least three things: (1) it resolved the various claims between Uber, Google,
6   and Levandowski; (2) it resolved fraudulent transfer[4] claims against Levandowski's Charitable
7   Lead Annuity Trust; and (3) it established a roadmap for filing and seeking confirmation of a
8   disclosure statement and Chapter 11 plan. Pursuant to the terms, Uber was required to make an
9   "indefeasible" payment to Google (the "Main Uber Payment") and would pay the estate $2 million
10  to pay claims in accordance with the Chapter 11 plan. The amount of the Main Uber Payment was
11  sealed by the bankruptcy court and provided to this Court under seal by separate order.[5] However,
12  based upon this arrangement Google, Uber, and Levandowski would release each other of all
13  claims.

14  After Google, Uber, and Levandowski agreed to the terms of the Global Settlement,
15  Levandowski filed a motion with the bankruptcy court to approve the compromise. This motion
16  was filed on February 10, 2022, for hearing on March 3, 2022, and the Court understands that
17  copies were served on the IRS and FTB. Based upon the initial filing deadline, objections were
18  due on February 24, 2022. None were timely received.

19  Once the motion was filed, the bankruptcy court directed Levandowski to file a motion to
20  determine the tax consequences of the Global Settlement under 11 U.S.C. § 505. Levandowski
21  complied and filed the motion on March 18, 2022 (the "Tax Motion"). This Tax Motion sought a
22  determination that the Main Uber Payment would not constitute gross income for Levandowski, or
23  alternatively, findings that the plan was feasible without reserving funds for taxes that may arise

---

[4] For clarity of the record, the full scope of alleged fraudulent transfers and the impact of those transfers has not been established nor is it relevant here.

[5] An independent review of the record confirms that the IRS and FTB were invited to enter into a non-disclosure agreement in connection with the proceedings below. Given the positions taken by the IRS and FTB in these proceedings, it appears that they declined the invitation.

3

1  from the Main Uber Payment.  Levandowski also filed his motion seeking confirmation of the

2  plan.  Both the IRS and FTB opposed the motions.

3        Ultimately, the bankruptcy court approved the settlement, granted the Tax Motion, and

4  approved the plan.  The substance of the Tax Motion was addressed from the bench ("Tax Order")

5  and the plan was approved in a written order ("Confirmation Order").  Within eight days of the

6  Tax and Confirmation Orders being entered by the bankruptcy court, the IRS and FTB filed four

7  separate appeals.  Contemporaneously, the IRS and FTB sought emergency stays of the Tax and

8  Confirmation Orders pending appeal to prevent them from going into effect after the expiration of

9  the automatic stay.

10        Importantly, the emergency motions were procedurally defective and failed to provide this

11  Court with any sworn record.  (Dkt. No. 4.)  As a result, the Court directed the parties to meet and

12  confer.  (*Id*.)  Ultimately, through that process, the parties agreed to a limited stay and briefing

13  schedule on the pending motion.  (Dkt. No. 7.)  The Court granted that stipulation and extended

14  the stay through the Court's resolution of the pending motion.  (Dkt. No. 8.)  After a review of the

15  record, the Court denied the request for a stay pending appeal on June 16, 2022.  (Dkt. No. 25.)

16  Of particular note, the Court explained that the FTB's stay request was procedurally defective and

17  the IRS appeared to have waived many of the substantive issues it sought to assert.  The IRS and

18  FTB subsequently sought a stay from the Ninth Circuit.  While the Ninth Circuit also granted a

19  limited stay to decide the motion, it ultimately denied the request for a stay pending appeal.  (Dkt.

20  Nos. 30 & 32.)

21        Since the approval of the settlement order was not appealed, Uber made the indefeasible

22  Main Uber Payment on or before May 20, 2022.  (Dkt. No. 48-2, Declaration of Tobias Keller

23  ["Keller Decl."] ¶ 4.)  Following the appeal concerning the stay, the plan became effective on

24  August 25, 2022.  (*Id*. ¶ 5c.)  The trust was executed and became effective, all or substantially all

25  of the property proposed in the plan to be transferred to the trust was transferred, the Trustee

26  assumed management of the property, and distributions commenced under the plan.  (Dkt. No. 48-

27  3, Declaration of Amanda Swift ["Swift Decl."] ¶¶ 3-4.)  At the time the pending motion to

28  dismiss was filed, 95% of the cash to be distributed to holders of Class 3 General Unsecured

1  Claims had been transferred by the trust. (*Id.* ¶ 4e.)

2  **II.   DISCUSSION**

3  The pending motion to dismiss implicates two forms of mootness. One is derivative of Article III and the other is rooted in equity.

With respect to Article III constitutional mootness, it is well known that the jurisdiction of federal courts is limited to actual cases and controversies. U.S. Const. art. III, § 2, cl. 2. It is also not disputed that constitutional standing to sue in federal court requires: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) an injury that is "likely" (as opposed to merely "speculative") to be "redressed by a favorable decision." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). Constitutional standing must be maintained throughout the duration of the lawsuit, *i.e.*, the case must not become moot. "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co.*, (*In re Thorpe Insulation Co.*), 677 F.3d 869, 887 (9th Cir. 2012) (citation omitted).

Equitable mootness on the other hand is a prudential doctrine by which a court elects not to reach the merits of a bankruptcy appeal even though there is subject matter jurisdiction. "Unlike Article III mootness, which causes federal courts to lack jurisdiction and so to have an *inability* to provide relief, equitable mootness is a judge-created doctrine that reflects an *unwillingness* to provide relief." *JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props., Inc. (In re Transwest Resort Props., Inc.)*, 801 F.3d 1161, 1167 (9th Cir. 2015). Specifically, this takes place when a "comprehensive change of circumstances" has occurred so "as to render it inequitable for this court to consider the merits of the appeal." *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981). In determining whether a bankruptcy appeal is equitably moot, the Ninth Circuit has instructed that courts should consider four factors: (1) whether appellants sought and obtained a stay; (2) whether the plan has been substantially consummated; (3) what effect any remedy might have on innocent third parties; and (4) whether the court can fashion equitable relief without completely undermining the plan. *In re Transwest*

United States District Court
Northern District of California

*Resort Props., Inc.*, 801 F.3d at 1167-68.  Notably, as the Ninth Circuit has recognized, "[t]he doctrine of equitable mootness is not without its critics." *Id*. at n.9 (citing *In re Cont'l Airlines*, 91 F.3d 553, 567-73 (3d Cir. 1996) (Alito, J., dissenting) (questioning the legal basis for equitable mootness)).  In part, "[d]ismissing appeals in the name of equitable mootness violates [the] 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *In re One2One Commc'ns, LLC*, 805 F.3d 428, 442 (3d Cir. 2015) (Krause, J., concurring) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  Nevertheless, equitable mootness remains viable in this circuit.

Under either constitutional or equitable theory, the party moving to dismiss on mootness grounds at the appellate stage bears a "heavy burden."  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1011 (9th Cir. 2018); *Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014) (citation omitted).  For purposes of this motion, that places the burden on the Trustee to demonstrate that dismissal is justified.[6]

Here, the Trustee asserts that the pending appeals should be dismissed for lack of constitutional standing because there is no way that a favorable appellate decision will redress the injuries asserted by the IRS and FTB.  Next, the Trustee argues that even if there is standing to proceed with the appeals, the appeals should be dismissed as equitably moot.  Having set forth the relevant frameworks, each basis is addressed in turn.  Both are rejected.

**A. CONSTITUTIONAL MOOTNESS**

The Trustee argues that the IRS and FTB lack standing to pursue their appeals.  That said, the Trustee's motion does not appreciate the difference between dismissal for lack of constitutional standing versus equitable mootness, which as discussed above, are distinct concepts.

Since the Court has an independent obligation to determine whether subject matter jurisdiction exists, the Court considers whether the IRS and FTB have a sufficient injury to confer

---

[6] In its motion, the Trustee improperly asserts that the burden is on the IRS and FTB. While a party that invokes federal court jurisdiction typically bears the burden to establish standing, the cited authority unambiguously provides that the party moving to dismiss an appeal on mootness grounds bears the burden.  Failing to properly appreciate its burden has resulted in a speculative and conclusory motion to dismiss.

standing. As the IRS notes, litigants must meet "constitutional and prudential standing requirements." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011) (citation omitted). "Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." *Id*. (citation omitted). "The prudential standing doctrine or the 'person aggrieved test' provides that '[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order.'" *Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 874 (9th Cir. 2011) (citation omitted). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018) (citation omitted).

Here, the Tax Order expressly determined that the Main Uber Payment did not constitute gross income, depriving the IRS and FTB from levying any tax. In addition, the Confirmation Order did not account for any tax liability because the bankruptcy court determined that there was none, thus denying the IRS and FTB financial recovery and giving rise to economic harm. This is sufficient to arise to an injury in fact to support a claim to standing.[7] Their injuries are a direct result of the bankruptcy court's determinations and vacating those determinations provide redress.

Next, the Court considers whether the appeal has become moot through subsequent developments. "Under settled law, we may dismiss the case for that reason only 'if it is impossible for a court to grant any effectual relief whatever' to [the non-movant] assuming it prevails." *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted)). Again, this is a

---

[7] While not expressly addressed by the parties in the standing framework, the IRS and FTB have submitted that the bankruptcy court lacked jurisdiction to make a tax determination in the first place, a function that is typically reserved for the agencies. The standing inquiry derived from the constitution "is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). Precluding the IRS and FTB from exercising their traditional powers may be an alternate basis for standing. Given the lack of briefing, the Court need not reach this issue here. That said, mootness is addressed in the order on the merits filed concurrently herewith.

7

<a/>
<a/>

<s/>

"demanding standard" that is difficult to meet. *Id*.

The Trustee argues that this appeal is moot because the IRS and FTB's true intent is to return proceedings to the status quo prior to the issuance of the Main Uber Payment. That is, according to the Trustee, the IRS and FTB wish to return the Main Uber Payment to the estate's pot. Since that payment was indefeasible and not appealed, it cannot be clawed back, depriving the IRS and FTB of their one true remedy.

Ultimately, the argument advanced by the Trustee does not persuade. The IRS and FTB were not parties to the Global Settlement and were under no obligation to appeal that order. This appeal concerns the bankruptcy court's determination that the Main Uber Payment was not taxable gross income and the subsequent confirmation of a plan that did not account for any related tax liability. As the Supreme Court has opined, "[f]or better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents. . . . If there is any chance of money changing hands, [the] suit remains live." *Mission Prod. Holdings*, 139 S. Ct. at 1660. Vacating the Tax Order would permit for a redetermination of tax liability, which evinces a clear chance of money changing hands. In the bankruptcy context, an injury may be redressed by reversal of the confirmation of the plan or other material modifications preserving the tax agencies' rights. *In re Mortgs. Ltd.*, 771 F.3d at 1214; *In re Thorpe Insulation Co.*, 677 F.3d at 887. Since these remedies are available here, the claims are not moot and the IRS and FTB do not lack standing. The Trustee's concerns relating to the harshness of these remedies is appropriately considered in the context of equitable mootness below.[8]

Based upon the foregoing, the appeal is not constitutionally moot and the motion to dismiss is denied on this basis.

//

---

[8] The Court notes that the Trustee relied upon two inapposite cases to support mootness here. Specifically, the Trustee relies upon *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) and *Sierra Club v. Dombeck*, 55 F. App'x 411, 412 (9th Cir. 2002). *Diamond* concerned whether an intervenor had standing to pursue an appeal where the state failed to defend its own laws. *Sierra Club*, which is an unpublished memorandum disposition, also concerned an appeal maintained by an intervenor where the government failed to pursue the appeal. These are not the circumstances before the Court.

8

**B. EQUITABLE MOOTNESS**

As previously set forth, the inquiry into equitable mootness weighs four factors. Each is considered here.

### 1. Diligence in Seeking a Stay

With respect to the first consideration, the Court evaluates whether the IRS and FTB diligently sought a stay and exercised their rights below and in connection with their appeals.

Where an "appellant had sat on its rights weigh[s] heavily in favor of holding the appeal equitably moot." *In re Transwest Resort Props., Inc.*, 801 F.3d at 1168; *see also In re Roberts Farms*, 652 F.2d at 797-98 (illustrating that a failure to seek a stay can render an appeal equitably moot). However, as the Ninth Circuit has instructed, "[c]ourts must be cautious in applying equitable mootness when a party has been diligent about seeking a stay." *In re Transwest Resort Props., Inc.*, 801 F.3d at 1168. "To say that a party's claims, although diligently pursued, are equitably moot because of the passage of time, before the party had a chance to present views on appeal, would alter the doctrine to be one of 'inequitable mootness.' . . . [I]t would be inequitable to dismiss their appeal on equitable mootness grounds merely because the reorganization has proceeded." *Id*. (quoting *In re Thorpe*, 677 F.3d at 881).

The record demonstrates that the IRS and FTB were diligent in exercising their rights and seeking a stay of the Tax and Confirmation Orders. Both entities filed oppositions to the motions pending before the bankruptcy court. Within days of those orders being entered, both entities filed appeals. As reflected by the orders of this Court and the Ninth Circuit denying a stay, both entities sought relief from the bankruptcy court's order. Levandowski opposed the request for a stay and the fact that the motions before this Court fatally suffered from procedural deficiencies does not erase their existence. Of significant note, both the IRS and FTB invoked the doctrine of equitable mootness in their motions for a stay to justify a showing of irreparable harm, demonstrating that they knew the consequences of the inaction that they were not taking. Finding that their claims expired before the Court could reach the merits of the appeal where they actively exercised rights

9

would result in the "inequitable mootness" that the Ninth Circuit has cautioned against.[9]

To cast doubt on the IRS and FTB's diligence, the Trustee places substantial emphasis on the taxing agencies' failure to challenge, let alone appeal, the settlement order that gave rise to the Main Uber Payment. According to the Trustee, the Tax Motion, settlement motion, and plan for confirmation were interlocking parts, and that if one failed, all would fail. By the Trustee's reasoning, the IRS and FTB were negligent in failing to stay the settlement payment from taking place that inevitably creates the tax liability that is hotly disputed in this case. Having closely considered the issue, the Trustee does not persuade.

The Global Settlement was negotiated without the IRS and FTB. The record does not demonstrate whether Google, Uber, and Levandowski would have invited the tax agencies to participate in discussions concerning their litigation claims which they zealously sought to keep under seal. While the record suggests that the IRS and FTB had notice of the settlement motion, requiring them to intervene risks impractical consequences. Parties routinely consider and live with the tax consequences of their settlements to resolve private litigation. In order to preserve its rights, the government should not be forced to intervene in every settlement discussion concerning the compromise of private litigation on the off chance that the tax treatment of the settlement will be challenged.

Furthermore, the Trustee has not sufficiently demonstrated that the Tax Motion, settlement motion, and confirmation plan were inextricably intertwined. As the tax agencies note, and the

---

[9] For clarity of the record, each tax agency made strategic choices with consequences in the litigation leading up to this appeal. As to the merits, the IRS failed to respond to substantive issues implicated in the tax motion and addressed jurisdictional matters. However, in its opposition, the IRS asserted that the record had been woefully developed. The IRS motion for a stay then concerned the jurisdictional and policy issues it raised. On the other hand, the FTB did address the merits in the proceedings below in addition to the jurisdictional and policy issues raised by the IRS. But in seeking a stay, the FTB took a gamble and focused purely on jurisdictional and policy issues and failed to present the merits of the tax dispute to this Court even though it was the only party to invoke objections below. Thus, the merits of the Tax Order were never formally presented to the Court and the Court was not asked to address the gravity of that merits determination in ruling on a stay.

However, despite the foregoing, and charged with notice of the nature of these proceedings, the Trustee has not argued that these circumstances constituted a lack of diligence and is not the basis for his request to dismiss the appeal.

10

1  Trustee fails to refute, the compromise order did not purport to determine whether the Main Uber
2  Payment was gross income for Levandowski or the bankruptcy estate. Instead, that issue ripened
3  when the bankruptcy court requested that the Tax Motion be filed in order to appreciate the scope
4  of the issues.[10] Undisputedly, the IRS and FTB timely opposed that effort.
5  In light of the foregoing, the Court finds that the first factor does not weigh in favor of
6  equitable mootness.

### 2. Substantial Consummation

Next, the Court considers "whether substantial consummation of the plan has occurred." *In re Thorpe*, 677 F.3d at 882. The Bankruptcy Code defines the term "substantial consummation" as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

Here, and as previously explained, the plan became effective on August 25, 2022. At the time the motion to dismiss was filed, the property to be transferred to the trust under the plan was already transferred, the Trustee assumed management of the assets, and the Trustee commenced and completed distributions under the plan, including transferring over 95% of the cash to be distributed to the holders of Class 3 General Unsecured Claims. (Smith Decl. ¶¶ 3-4.) These efforts have been ongoing since as demonstrated by the bankruptcy court's docket below, however, no updates have been submitted to this Court.

The IRS and FTB do not dispute the underlying facts demonstrating substantial

---

[10] Curiously, Uber and Google have declined to intervene or participate in this appeal. The Court understands that the Global Settlement required Levandowski to avoid interfering with the plan being approved. A close review of the record demonstrates that Uber sought to expedite approval of the settlement motion even though the Tax Motion was a live controversy that interested the court. While not dispositive, it at least adds to a finding that the tax agencies were not welcomed parties to the settlement negotiations concerning private litigation.

consummation. Instead, they argue that substantial consumption of the plan is not dispositive in the analysis. The Court agrees that substantial consumption is not dispositive. A presumption of mootness where there is substantial consummation has been expressly rejected by the Ninth Circuit. *In re Transwest Resort Props., Inc.*, 801 F.3d at 1169. Therefore, "[a]lthough substantial consummation is a factor weighing in favor of finding the appeal moot, the law in this circuit requires that [courts] still look at the third and fourth prongs of the equitable mootness test." *Id.*

Under the circumstances of this appeal, the Court has little difficulty in determining that substantial consumption has occurred and weighs in favor of finding equitable mootness.

### 3. Effect on Innocent Third Parties

With respect to the third factor, the Ninth Circuit has instructed that "[t]o evaluate this, we must ask whether it is possible to [alter the plan] in a way that does not affect third party interests to such an extent that the change is inequitable. Third parties' reliance on the consumption of the plan is not enough to find this prong satisfied. Rather, for this factor to weigh in favor of holding a party's appeal to be equitably moot, the specific relief sought must bear unduly on innocent third parties." *Id.* at 1169 (internal quotation marks and citation omitted).

The parties disagree on the scope of this element. On the one hand, the Trustee argues that the IRS and FTB are seeking to disgorge the Main Uber Payment to reset the status quo to a point prior to confirmation of the Global Settlement. Furthermore, that Trustee asserts that third parties will experience extreme prejudice because the tax liability for the Main Uber Payment will take priority over the third-party creditor claims and dwarf them in size to the point where they will take next to nothing.

On the other hand, the IRS and FTB deny the Trustee's characterization and instead, they argue that they are seeking to vacate the tax determination, reassess tax through valid means, and restore their rights to collect any liability that derives from the Main Uber Payment, including to the extent necessary, by modifying the discharge injunction for the debtor. Notably, the IRS and FTB's briefing effectively concedes that as a function of the Bankruptcy Code, increasing administrative tax debt reduces the potential recover of creditors with lower priority. However, the Tax Agencies argue that any harm can be mitigated if Levandowski contributes future earnings

12

and income to pay off any resulting tax liability over time or draws from other assets that were not liquidated pursuant to prior orders.

Having closely scrutinized the record, the Court agrees with the IRS and FTB's characterization of the remedy sought. The Trustee's suggestion that the IRS and FTB is seeking disgorgement of the Main Uber Payment overreaches. The indefeasible payment that was approved and made to resolve an arduous three-way dispute between Google, Uber, and Levandowski was not challenged. Instead, this appeal concerns a tax determination and confirmation of a Chapter 11 plan tethered to the tax determination that Levandowski proclaimed below was supported by the advice he received from his tax consultants.[11]

Notably, the Trustee has not submitted any evidence of any detrimental reliance by any third parties to these proceedings. The record shows that the largest claim in the bankruptcy proceedings was the claim held by Google and this has not been challenged. Disputes concerning Uber, Google, and Levandowski overwhelmingly predominated the proceedings below and the indefeasible Main Uber Payment that was made substantially resolved that dispute. Of significant note, despite Google's and Uber's extensive involvement in the proceedings below, they have not taken any position in this appeal and have not advocated any prejudice despite having notice of the proceedings. Remarkably, the Trustee, as the party carrying a heavy argument, does little to persuade with his cursory and thin motion. As to the other creditors, the Trustee baldly asserts that they will be harmed, but makes no effort to identify those creditors, the number of creditors, the specifics concerning their claims and the amounts involved, and the degree to which those creditors participated in the proceedings below. This failure of proof results in conjecture and speculation which is insufficient to support the Trustee's burden in support of dismissal. The Court is under no obligation to scour a record and make argument for any party, let alone a party represented by counsel.

The Trustee's reliance on *In re Mortgs. Ltd.*, 771 F.3d 1211 (9th Cir. 2014) does not compel a different result. There, the objector *never* moved to stay the distribution orders that were

---

[11] The Court notes for the record that there are no declarations or opinions from any tax experts in the record.

13

issued by the bankruptcy court, which, at the time, was a prerequisite to a finding of mootness. Because the objector failed to seek a stay, dismissal was appropriate on that basis alone. In its alternative analysis, the Ninth Circuit evaluated the remaining factors, including that the objector permitted the distribution to proceed without objection, resulting in reliance by unsuspecting third parties that could not have realized distributions may be taken. Unwinding any distribution was inequitable under those circumstances. Here, the IRS and FTB repeatedly raised their objections and put all interested parties on notice that the tax determination was potentially erroneous and that the plan failed to properly account for any resulting tax from the Main Uber Payment. An element of surprise does not exist.

Moreover, the Trustee cannot dispute that any harm to third parties may be mitigated by drawing on future earnings and income or other assets that have not been liquidated prior to needing to unwind distributions. Instead, the Trustee asserts that this forces Levandowski into a "lifetime of servitude" for a debt that he cannot satisfy and deprives him of his clean break embodied in the purpose of the Bankruptcy Code. However, the actual amount of any potential liability has not been identified in the record. That is a merits question not reached in this analysis. Even if the Court determines that the tax determination was erroneous as a matter of law as it were issued, it remains possible that the same result could be reached on a remand. Alternatively, if there is any resulting liability stemming from further fact finding, the bankruptcy court can potentially determine that the plan remains feasible and get to the same outcome.

In any event, the Trustee's position ignores that the inquiry is focused on innocent third-parties. Levandowski, who was a common nucleus to the proceedings below, is not an innocent party. He secured a compromise of his largest claim and the protracted litigation around it. That there may be tax consequences is a risk that he voluntarily assumed by entering into the compromise and opposing a stay of the bankruptcy court's order. Again, because of the tactics taken throughout this litigation, the true impact of the Main Uber Payment has not been established by any measure. This leaves the Court to speculate. Speculation does not support dismissal.

In light of the foregoing, the Trustee's scant showing as to the third factor does not weigh

strongly in favor of dismissal.

### 4. Fashioning an Equitable Remedy without Frustrating the Plan

Finally, "[t]he fourth, and most important, consideration in the equitable mootness test is whether the bankruptcy court *could* fashion equitable relief without completely undoing the plan. Even if the relief would be only partial, [w]here equitable relief, though incomplete, is available, the appeal is not moot." *In re Transwest Resort Props., Inc.*, 801 F.3d at 1171 (internal quotation marks and citation omitted) (emphasis supplied). Similar to the analysis with the third factor, it is possible that the plan can be modified in part to account for any rights that IRS and FTB may have with tax liability, including consideration of future earnings and income or other assets to account for the *potential* tax consequences stemming from the resolution of the dispute with Google and Uber.

Without a more definitive showing from the parties, and specifically the Trustee as the movant, concerning the degree of the underlying tax liability, the Court cannot conclusively determine that that there is no remedy. Burdens have simply not been met.[12]

\*\*\*

Accordingly, having carefully considered all of the relevant factors, the motion to dismiss is denied.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss this appeal as moot is denied.

This Order terminates Docket Number 48.

**IT IS SO ORDERED.**

Dated: March 14, 2023

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

---

[12] While not raised here, the Court notes that its review of the record confirms Levandowski broadcast below that his case would have to potentially be converted to Chapter 7 if there is tax liability. Failure to dispense of this potential remedy after raising it below is also notable.

15