1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5

6    **In re:**                                      Case Nos. 4:22-cv-02781-YGR (lead case)
                                                                4:22-cv-02783-YGR
7    **ANTHONY SCOTT LEVANDOWSKI,**                            4:22-cv-02786-YGR
                                                                4:22-cv-02789-YGR
8                                      Debtor.
                                                     On appeal from:
9    **THE UNITED STATES OF AMERICA on**             Bankruptcy Case No. 20-30242 (HLB)
     **behalf of THE INTERNAL REVENUE**              Chapter 11
10   **SERVICE**
                                                     (Jointly Administered)
11          - and -
                                                     **OPINION REVERSING AND REMANDING TAX**
12   **CALIFORNIA FRANCHISE TAX**                    **ORDER; AFFIRMING IN PART AND**
     **BOARD,**                                      **REMANDING IN PART CONFIRMATION**
13                                                   **ORDER**
                                       Appellants,
14
     **v.**
15
     **ANTHONY SCOTT LEVANDOWSKI, ET**
16          **AL.**

17                                     Appellees.

18

19          The United States of America, on behalf of the Internal Revenue Service ("IRS"), and the

20   California Franchise Tax Board ("FTB") (collectively the "Tax Agencies") commenced four

21   separate appeals in connection with debtor Anthony Scott Levandowski's ("Levandowski")

22   Chapter 11 bankruptcy proceedings.  Peter Kravitz was appointed Trustee of the Levandowski

23   Residual Liquidation Trust ("Trustee") and has since joined Levandowski in these appeals as an

24   appellee.[1]  All of the appeals have been consolidated for administrative purposes under lead case

25   ───────────────

26          [1]  Levandowski and the Trustee filed a single joint omnibus brief in connection with this
     appeal.  The Court notes that the record does not make any material distinctions between
27   Levandowski and the Trustee even though they have existed at different times subject to different
     factual circumstances.  Since the merits of the appeal make no distinctions, the Court treats them
28   as the same.  No party has suggested that the Court do otherwise.

No. 4:22-cv-02781.  (Dkt. No. 19.)[2]

Relevant to the underlying appeals are two orders of the bankruptcy court that were entered on May 2, 2022: (1) Order Granting Debtor's Motion to (I) Determine Tax Effect of Settlement Payment or (II) Find the Debtor's Plan Feasible without Reserving for Tax Thereon (IRS/FTB) (the "Tax Order"); and (2) Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Debtor in Possession's Combined Disclosure Statement and Chapter 11 Plan dated March 29, 2022 (the "Confirmation Order").  Each order was appealed by the Tax Agencies and has been separately briefed.  While each tax agency has filed its own brief, the substantive arguments largely parrot one another.[3]

Having closely considered the motion and the record in this case, the Court **HEREBY ORDERS**:

1) the bankruptcy court's Tax Order is **REVERSED AND REMANDED** for further consideration consistent with this opinion;

2) to the extent the Confirmation Order turned on the Tax Order, it was approved in error, and the Court **REMANDS** for the bankruptcy court to consider whether the Confirmation Order must be modified or otherwise vacated due to legal error given the ruling on the Tax Order;

3)  with respect to the argument that the plan was not initially confirmed for tax avoidance purposes, the Court **AFFIRMS** and finds it was not; this opinion shall not be construed as having any limiting effect on future proceedings; and

4) the bankruptcy court erred as to its determination on the issue of setoff rights and can

---

[2]  All docket references are to the lead case unless otherwise stated.

[3]  The Tax Agencies have incorporated by reference the arguments raised by the other agency on more than one occasion.  This practice already had negative consequences in connection with the motion for stay because the FTB woefully under-developed the arguments it uniquely raised in the bankruptcy court below.  (Dkt. No. 25.)  The Tax Agencies are now admonished that incorporation by references is circumvention of the rules setting forth word limits and could lead to remedial measures, such as briefs being stricken in their entirety.

The Court also notes for the record that the FTB delayed these proceedings to have time to develop its briefs.  Remarkably, the agency largely duplicated the issues, echoing the exact structure and arguments of the IRS's brief, even though the FTB was the only party to address the merits below.  This practice is inefficient and burdensome.  Nevertheless, the Court has reviewed each brief in its entirety.

United States District Court
Northern District of California

consider modifications to the discharge injunction in light of the authority presented for the first time in this appeal upon REMAND.

## I.   BACKGROUND

The Court assumes the parties' general familiarity with the factual circumstances giving rise to the Chapter 11 bankruptcy proceedings and incorporates the background information previously set forth in prior orders from this Court.[4]

Relevant to the issues on appeal, Google, LLC ("Google"), Uber Technologies, Inc. ("Uber"), and Levandowski entered into a global settlement. The global settlement resolved Levandowski's and Uber's dispute concerning their rights and obligations under an indemnification agreement and outlined a confirmation plan to resolve Levandowski's Chapter 11 proceedings, including the payment of Google's claim against Levandowski premised on a judgment of $179,047,998.64. Pursuant to the global settlement, Uber would make two payments in support of confirmation: (1) an "indefeasible" payment directly to Google (the "Main Uber Payment") for an amount that was sealed by the bankruptcy court below; and (2) a $2,000,000 payment to the estate to fund additional expenses to carry out the proposed plan.

On February 10, 2022, Levandowski moved the bankruptcy court to approve the global settlement between the parties. Copies of this motion were served on the Tax Agencies and the Tax Agencies did not file any objections to approval of the global settlement, including its proposed plan for confirmation. In the motion to approve the compromise, Levandowski broadcast that he was still considering the tax consequences of the global settlement. The bankruptcy court then directed Levandowski to file a motion to determine the tax consequences of the global settlement pursuant to 11 U.S.C. § 505. A scheduling order required that the tax motion be filed no later than March 18, 2022 and indicated that if oppositions were not filed by April 1, 2022, at 4:00 p.m., the bankruptcy court "may deem the affected parties unopposed to the relief sought." Complying with the order, Levandowski timely filed his motion for a tax determination

---

[4] In connection with the appeal, the FTB has requested that the Court take judicial notice of various court filings. The unopposed request is granted, and the Court gives the documents their appropriate weight.

United States District Court
Northern District of California

United States District Court
Northern District of California

(the "Tax Motion"). In short, it sought a determination that the Main Uber Payment (not the second payment for $2,000,000) does not give rise to gross income for the debtor (not the estate), or alternatively, to find the proposed plan feasible without reserving for taxes because there was little to no risk to the debtor or the estate.

Substantively, the Tax Motion asserted that the bankruptcy court had jurisdiction to make the tax determination under 11 U.S.C. § 505(a)(1). At the highest level, the Tax Motion argued that the Main Uber Payment was a payment from Uber to Google and did not create a net increase in wealth to Levandowski to constitute gross income. Levandowski proceeded to draw four analogues to support the "obvious" result that he advanced: (1) the indemnification agreement and Main Uber Payment are akin to a non-taxable insurance payment; (2) a tax benefit was not incurred from the Main Uber Payment; (3) the Main Uber Payment is a working condition fringe that is excludable from gross income; and (4) the Main Uber Payment is a deductible employee reimbursement.

The Tax Agencies opposed the Tax Motion. Specifically, the IRS timely filed an opposition that only challenged the bankruptcy court's jurisdiction to make the tax determination requested. Because the IRS claimed that it did not have sufficient time to review the tax issues in the Tax Motion, especially given the sealed nature of the payment, it reserved addressing the substance of the Tax Motion until after a resolution of the jurisdictional issues. It never sought an extension of its deadline. The FTB also filed an opposition, however, it was technically untimely under the scheduling order because it was filed after the 4:00 p.m. deadline. Unlike the IRS, the FTB addressed the substance of the Tax Motion. However, like the IRS, the FTB indicated that it had insufficient information to seriously respond to the tax issues presented. Again, no extension or continuance was requested.

After briefing concluded, the bankruptcy court held a hearing on the Tax Motion on April 21, 2022. At the hearing, the IRS presented its arguments concerning the lack of jurisdiction and the FTB joined. However, the FTB cautioned that any determination should be made to the estate as to the debtor, even though the motion appears to have only applied to the debtor. Since only the FTB addressed the merits in its opposition, the FTB argued the substantive tax issues.

4

United States District Court
Northern District of California

1    Once argument concluded, the bankruptcy court issued an oral ruling on the Tax Motion.

2    It found that it had subject matter jurisdiction to make the tax determination pursuant to the

3    express authority conferred by 11 U.S.C. § 505(a).  The bankruptcy court also found that

4    "[c]onstitutional ripeness exists because the circumstances of this case, the pending settlement

5    motion, the request for confirmation of Mr. Levandowski's plan, the pendency of the tax motion,

6    all responses to those pleadings show that an actual immediate dispute and controversy exists."

7    Turning to the merits of the tax dispute, the bankruptcy court acknowledged that "Levandowski

8    grounds his assertion that the Uber settlement payment does not give rise to gross income

9    attributable to him or his bankruptcy estate in four alternative theories."  The Court expressly

10   noted that the IRS never requested additional time to address the substantive issues and asserted

11   that "[t]he IRS will have to live with the consequences of its dilatory conduct."  The IRS did not

12   object and did not request the bankruptcy court to reconsider the position on the record.

13   Focusing on Levandowski's insurance analogy, the bankruptcy court found that "[t]he FTB

14   and Mr. Levandowski do not dispute that insurance payments made to third parties on behalf of

15   their insureds are not included in the insured's gross income for tax purposes" and that the court

16   "must look to the common law for guidance" on what constitutes insurance given that the Internal

17   Revenue Code does not define insurance.  Drawing upon the factors set forth in *AMERCO &*

18   *Subsidiaries v. Commissioner*, 96 T.C. 18 (1991),[5] the bankruptcy court found that the transaction

19   at issue was akin to an insurance transaction for tax purposes because insurance risk existed, the

20   risk of any litigation with Google was shifted to Uber, and there was sufficient risk distribution

21   across the five employees that Uber agreed to indemnify.  It further found that the payment

22   conformed to common accepted notions of insurance because Uber acted like an insurer by

23   conducting due diligence, assumed and distributed risk, and no contrary authority was provided to

24   support a different result.  Concluding that the indemnification agreement constituted insurance,

25   the bankruptcy court found that the Main Uber Payment did not constitute gross income for

26

27   _____

28   [5]  The bankruptcy court noted that much of the authority provided by the FTB was not
persuasive because it concerned captive insurance.  However, *AMERCO & Subsidiaries*, the only
case cited in the oral ruling, is also a captive insurance case.

United States District Court
Northern District of California

1    Levandowski or for the estate, but provided no analysis of how or why the tax determination bore

2    on the estate compared to just that of Levandowski.  Since the insurance analogy dispenses of the

3    tax liability according to the bankruptcy court, the remaining alternative theories were not

4    addressed.

5        Given that the confirmation process is not central to this dispute, the Court assumes the

6    parties' familiarity with that context.  The Court addresses relevant background to the extent

7    necessary in its analysis concerning the Confirmation Order.

8    **II.   LEGAL STANDARD**

9        The parties do not dispute the applicable legal standard.  A district court is authorized to

10   affirm, reverse, modify, or remand a ruling from the bankruptcy court.  28 U.S.C. § 158(a).

11       On appellate review, the bankruptcy court's conclusions of law are reviewed de novo,

12   findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de

13   novo.  *Miller v. United States*, 363 F.3d 999, 1003-04 (9th Cir. 2004).  Whether subject matter

14   jurisdiction exists is a question of law reviewed de novo.  *Reebok Int'l, Ltd. v. Marnatech Enters.,*

15   *Inc.*, 970 F.2d 552, 554 (9th Cir. 1992).  Similarly, whether insurance is excluded from taxable

16   gross income is a question of law subject to de novo review.  *See Neilson v. United States of*

17   *America (In re Olshan)*, 356 F.3d 1078, 1083 (9th Cir. 2004).  "The ultimate decision to confirm a

18   reorganization plan is reviewed for an abuse of discretion. . . . Of course, a determination that a

19   plan meets the requisite confirmation standards necessarily requires a bankruptcy court to make

20   certain factual findings and interpret the law."  *Computer Task Grp., Inc. v. Brotby (In re Brotby)*,

21   303 B.R. 177, 184 (9th Cir. BAP 2003) (citations omitted).  A bankruptcy court abuses its

22   discretion if it fails to identify or apply the correct legal rule or the court's application of the

23   correct legal standard was illogical, implausible, or without support in inferences that may be

24   drawn from the facts in the record.  *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir.

25   2009).

26   ///

27   //

28   /

6

III.   **DISCUSSION**

A. Whether the Bankruptcy Court Had Statutory Authority to Make the Tax Determination

The first issue presented on appeal is whether the bankruptcy court had statutory authority pursuant to 11 U.S.C. § 505(a)[6] to determine that the Main Uber Payment[7] did not constitute taxable gross income. No circuit has squarely addressed this issued. Having closely considered the issue, the Court finds that statutory authority did exist to confer jurisdiction to make the tax determination.

To begin, with respect to *federal* tax disputes, federal courts have limited authority because the Declaratory Judgment Act explicitly denies courts the power to enter a declaratory judgment with respect to most federal taxes. 28 U.S.C. § 2201(a). It reads:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986, *a proceeding under section 505* or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Id.* (emphasis supplied.) As shown, and relevant to this appeal, the Declaratory Judgment Act excludes from that limitation "proceeding[s] under section 505." *Id.* As acknowledged by the Ninth Circuit, "[t]he Bankruptcy Code *broadly* authorizes the district court to 'determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether

---

[6]  The provision reads in relevant part: "the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

[7]  Since the briefing and decision below only focused on the Main Uber Payment and not the $2,000,000 paid directly to the estate, the Court focuses its analysis on the Main Uber Payment. No position has been taken as to whether the $2,000,000 direct payment to the estate was taxable.

United States District Court
Northern District of California

1   or not previously assessed, whether or not paid, and whether or not contested before and

2   adjudicated by a judicial or administrative tribunal of competent jurisdiction.'"  *Central Valley AG*

3   *Enters. v. United States*, 531 F.3d 750, 759 (9th Cir. 2008) (quoting 11 U.S.C. § 505(a)(1))

4   (emphasis supplied).  Thus, federal sovereign immunity has been waived with respect to valid

5   proceedings under section 505.

6          The Tax Agencies concede that section 505(a) is broad and unambiguous to the extent it

7   applies to the determination of the amount of tax.  That said, the Tax Agencies assert that section

8   505(a)(1) only permits a determination of the amount of income tax owed, not an element or input

9   of the tax itself.  According to the Tax Agencies, income tax is levied on an annual basis, and is

10  typically calculated over a calendar year after the applicable tax returns are filed.  Since the

11  bankruptcy court only considered one future transaction that would appear on a return, the Tax

12  Agencies submit that the bankruptcy court did not determine the amount of tax within the meaning

13  of section 505(a).

14         The Tax Agencies fail to persuade for myriad reasons.  First, the Tax Agencies'

15  interpretation is strained.  In effect, the Tax Agencies' interpretation of section 505 would mean

16  that the bankruptcy court could not determine gross income tax until a tax return is filed.

17  However, the plain text of section 505(a) does not mention tax returns, let alone require that the

18  determination be deferred until after a return is filed.  Such an interpretation would run counter to

19  the broad language of section 505(a) permitting the determination of "the amount or legality of

20  any tax," "whether or not previously assessed," and "whether or not contested before and

21  adjudicated by a judicial or administrative tribunal of competent jurisdiction."  11 U.S.C. §

22  505(a)(1).  Authority invoked by the Tax Agencies, while primarily focused on the limits of

23  Article III discussed below, further demonstrates that a tax return is not a prerequisite to a tax

24  determination as a statutory matter.  *See, e.g.*, *IRS v. Sulmeyer (In re Grand Chevrolet, Inc.)*, 153

25  B.R. 296, 300 (C.D. Cal. 1995) (recognizing that "this preliminary dispute may develop into a tax

26  liability controversy and, at that point, even if the Trustee has yet to file a tax return, section 505

27  will vest the Bankruptcy Court with jurisdiction over it").

28         Second, the Tax Agencies' interpretation of section 505(a) conveniently omits the word

United States District Court
Northern District of California

8

1    "any" from its construction.  *See* 11 U.S.C. § 505(a) ("the court may determine the amount or

2    legality of any tax, . . .").  By ignoring the word "any", the Tax Agencies seek to create the false

3    impression that that the bankruptcy court can only determine the full amount of tax liability of all

4    items after the tax period has concluded:  explicit line-item tax determinations are not permissible.

5    This interpretation constrains credulity.  Again, the plain language of section 505(a) allows the

6    bankruptcy court to "determine the amount or legality of *any* tax . . . or any *addition* to tax[.]"  11

7    U.S.C. § 505(a)(1) (emphasis supplied).  As the Ninth Circuit has explained, "[t]he statute is not

8    limited to 'tax liability'" and authorizes the bankruptcy court to determine items comprising

9    "bottom-line tax liability."  *Central Valley AG Enters.*, 531 F.3d at 759-60.  Adopting the view of

10   the Tax Agencies would mean that the bankruptcy court could determine aggregate tax on gross

11   income, but could not consider or determine the line-items giving rise to the tax and supporting

12   that aggregate calculation.  Effectively the bankruptcy court would have to take as conclusively

13   established any line-item submitted on a return, even if that line-item were clearly erroneous,

14   which further contradicts that section 505 permits determinations on the legality of tax.

15        Next, and for the first time on appeal, the Tax Agencies assert that two contextual

16   considerations compel a determination that resolving future tax issues is inappropriate.  One, they

17   assert that section 505(a) is placed in Chapter 5 of the Bankruptcy Code titled "Creditors and

18   Claims" concerning the allowance and priority claims against the estate, and does not contemplate

19   liabilities arising after confirmation.  According to the Tax Agencies, section 505 should concern

20   claims that arose before the case was filed.  Two, they assert that a broad reading of section 505

21   would make 11 U.S.C. § 1146(b), which provides further authority for the bankruptcy court to

22   declare the tax consequences of a proposed plan, surplusage.

23        Courts do not consider issues raised for the first time on appeal and this is sufficient

24   grounds to reject the Tax Agencies' new arguments.  Nevertheless, the arguments are inapposite

25   for myriad reasons.  Both agencies filed claims reserving future tax liabilities and the taxable event

26   at issue became ripe for the reasons discussed *infra*.  As to section 1146(b), the provision provides

27   that "[t]he court may authorize the proponent of a plan to request a determination" of certain state

28   and local taxes for the estate "limited to questions of law," and sets forth a timeline for

1    consideration.  11 U.S.C. § 1146(b).

2           To the extent the IRS invokes section 1146(b), it lacks standing because section 1146(b)

3    concerns state and local tax as opposed to federal tax determinations.  As noted, proceedings

4    pursuant to section 505 are exempt from the Declaratory Judgment Act.  Furthermore, it is

5    significant that the question of whether the Main Uber Payment constituted gross income was a

6    question of federal statutory law, which the FTB conceded controlled the state issues.  Like

7    section 505, section 1146(b) also does not require a return.  No other argument was presented to

8    explain why section 1146(b) would otherwise control or apply and the Court declines the tacit

9    invitation by counsel for the Court to do so on its own, especially given that the issue was not

10   raised below.[8]

11          Here, the bankruptcy court was presented with a single taxable event: payment pursuant to

12   an executed settlement.  That court then determined that the Uber Main Payment was not subject

13   to any gross income tax, effectively zeroing out any amount of the tax on a future return.  The

14   authority to do so is directly contemplated by the plain text of the statute.

15          **B.   WHETHER THE TAX DETERMINATION WAS AN ADVISORY OPINION**

16          The second issue on appeal is whether the tax determination is a hypothetical and forward-

17   looking advisory opinion on future tax liabilities.  Again, no law is directly on point to resolve the

18   issue here.  The FTB has conceded that the law in the area is unsettled.

19          The basic legal framework is not disputed.  Article III does not allow federal courts to

20   decide abstract, hypothetical, or contingent questions.  *Preiser v. Newkirk*, 422 U.S. 395, 401-02

21   (1975).  Instead, justiciability requires "an adjudication of present right upon established fact."

22   *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937).  In order to determine whether a dispute

23   is "ripe" for judicial determination, courts balance (1) the fitness of the issues for judicial decision,

24   and (2) the hardship to the parties of withholding court consideration.  *Abbott Labs. v. Gardner*,

---

[8]  The FTB argues that pursuant to *Pope Estate Co. v. Johnson*, 43 Cal. App. 2d 170, 174 (1941), the bankruptcy court cannot determine the amount of income tax without considering all income and deductions within the applicable tax period.  However, this argument directly contravenes the broad and express authority conferred by section 505(a).  The determination here also does not preclude determinations as to the balance of issues that may be taxable.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   387 U.S. 136, 148 (1967).

2       That said, as this Court explained in the context of the motion for a stay of the bankruptcy

3   court's order, some courts consider the broad scope of section 505 to be problematic because its

4   only statutory limits are those set forth in section 505(a)(2), which primarily concern the

5   bankruptcy court's adjudication compared to other tribunals, as well as disputed refunds and estate

6   tax. *See, e.g.*, *In re UAL Corp.*, 336 B.R. 370, 374 (N.D. Ill. 2006).[9]  Regardless, the Declaratory

7   Judgment Act and constitution cabin the exercise of the bankruptcy court' discretion.

8   "Bankruptcy judges, like district judges . . . can only resolve actual cases and controversies."

9   *Kilen v. United States (In re Kilen)*, 129 B.R. 538, 543 (N.D. Ill. 1991).

10       While unsettled law, courts have found that tax determinations are sufficiently ripe for

11   determination where the tax issues bear directly on the question of the plan's feasibility.  *See, e.g.*,

12   *Schwartz v. Gardiner (In re Schwartz)*, 192 B.R. 90, 94 (Bank. N.J. 1996) (finding jurisdiction

13   appropriate where "the viability of their Chapter 11 plan of reorganization depends upon a

14   determination of [the debtor's] liability to the IRS and the N.J. Div. of Tax"); *In re Kilen*, 129

15   B.R. at 548 (determining "contingent and unliquidated [claim] at this point" because the potential

16   liability is "exactly the kind of [ripe] obligation Congress wanted to have resolved within the

17   bankruptcy process").  This is the precise scenario presented to the bankruptcy court here.

18       It is well known that bankruptcy is intended, in part, to give a debtor a fresh start.  After a

19   $179 million judgment was entered against him, Levandowski sought his fresh start by

20   commencing Chapter 11 proceedings.  Those bankruptcy proceedings were contentious and

21   concerned primarily three parties: Google, Uber, and Levandowski.  After years of protracted

22   litigation, and on the cusp of what would be the start of lengthy trial proceedings, Google, Uber,

23   and Levandowski reached a global resolution that would resolve the largest claims in the

24   bankruptcy proceedings.  That resolution was distilled into a written agreement signed by the

25   parties with a comprehensive plan for confirmation to resolve the protracted Chapter 11

26   

27       [9] Exempt are determinations that "were contested before and adjudicated by a judicial or

28   administrative tribunal of competent jurisdiction before the commencement of the case under this
title[.]"  11 U.S.C. § 505(a)(2)(A).  Also exempt are "any right of the estate to a tax refund"
submitted to the government.  11 U.S.C. § 505(a)(2)(B).

1  proceedings, including funding mechanisms to see it through completion.

2          No one disputes the bankruptcy court's role to both evaluate the settlement and determine

3  whether it was in the best interest of the estate, with consideration of the creditors' paramount

4  interests in mind.  Indeed, the record shows that as part of the proceedings, the Tax Agencies

5  submitted claims and sought to preserve future tax liability.  Where the Uber payment was the key

6  resolution to the dispute, how it bore on the Tax Agencies' asserted claims, as well as the

7  feasibility of plan, were necessary, direct, and inescapable considerations.  Without a tax

8  determination, which the bankruptcy court was authorized to make by statute as highlighted

9  above, confirmation would be completely halted or potentially stayed for years pending resolution

10  of what would surely be additional and prolonged tax litigation.  Deferring the tax determination

11  was impractical and would turn a fresh start for a debtor and creditors on its head.  Issues were

12  sufficiently fit for judicial decision and potential hardship was made plain by the consequences of

13  further delay for all parties involved.  While the Tax Agencies' may have wanted to determine the

14  amount of tax in the first instance, the bankruptcy court's determination that the tax issues were

15  ripe for its determination was proper and endorsed by the legislative branch in defining the

16  parameters of bankruptcy jurisdiction.

17          To cast doubt on this determination, the Tax Agencies have argued in this appeal that a

18  bankruptcy court cannot determine the tax consequences of Chapter 11 plans *prior* to

19  confirmation.  In support of this position, substantial emphasis is placed upon *In re UAL Corp.*,

20  336 B.R. 370 (N.D. Ill. 2006), which this Court has already found distinguishable.  In *In re UAL*

21  *Corporation*, the debtor sought a determination as to whether property to be distributed pursuant

22  to a proposed Chapter 11 plan and in accordance with collective bargaining agreements

23  constituted wages subject to federal taxation.  336 B.R. at 371.  Evaluating the text of section 505,

24  the Declaratory Judgment Act, and the legislative history behind section 505(a), the court held that

25  it did not have jurisdiction to determine the *future tax consequences of the future property*

26  *distributions* under the Chapter 11 plan because the payment was a contingent taxable event.  *Id*. at

27  376-79.  Those were hypothetical and contingent events far removed from the circumstances here.

28          In the proceedings below, the bankruptcy court did not determine the future tax

consequences of distributing a debtor's property pursuant to a proposed plan. Instead, it determined the tax consequences of an executed settlement and whether the proposed plan was feasible without reserving for tax liability on reserved claims consistent with the actual liabilities evinced by that agreement. This is not a set of hypothetical and contingent facts, which contrary to the assertion of the tax authorities, is further demonstrated by their oppositions before the bankruptcy court that the plan was not feasible without a tax reserve. Without a tax determination, the bankruptcy court could not address the plan's feasibility, and in turn, provide the debtor with the fresh start contemplated in bankruptcy.

The Tax Agencies' other cited authorities are equally inapposite. All concerned procedural issues relating to how to file, which is separate and apart from the underlying substantive tax determination premised upon established facts. *See, e.g.*, *In re Grand Chevrolet, Inc.*, 153 B.R. at 299 (finding that the bankruptcy court did not have jurisdiction to determine whether a consolidated return could be filed); *Matter of Inter Urban Broad. of Cincinnati, Inc*, 180 B.R. 153, 155 (Bankr. E.D. La 1995) (determining whether a debtor could file tax returns as an "S" corporation was improper); *In re GYPC, Inc*., No. 17-31030, 2021 WL 4618410, at *2 (Bankr. S.D. Ohio October 5, 2021) (finding no authority "to determine the trustee's authority to file amended returns as a discrete and separate legal determination from the determination of the estate's tax liability"). Again, the Tax Agencies' case law undermines their position that that a dispute is not ripe absent the filing of a return. *See, e.g.*, *In re Grand Chevrolet, Inc*., 153 B.R. at 300 ("this preliminary dispute may develop into a tax liability controversy and, at that point, even if the Trustee has yet to file a tax return, section 505 will vest the Bankruptcy Court with jurisdiction over it"); *In re GYPC, Inc,* 2021 WL 4618410, at *3 (same). No authority has been proffered that a court has required a return in contravention of the statute's plain text.

Having carefully considered the exercise of jurisdiction, the Court finds that the bankruptcy court properly acted within the confines of its constitutional limits.[10]

---

[10]   The Tax Agencies submit a host of policy arguments against bankruptcy court's making tax determinations of this kind. Congress already weighed those policy considerations when it provided broad statutory authorization to bankruptcy courts. While not raised directly, the Court

13

### C. WHETHER THE MAIN UBER PAYMENT CONSTITUTES GROSS INCOME

Next, this appeal raises the question of whether the Main Uber Payment is akin to an insurance payment that is excluded from taxable gross income.  Again, it is undisputed that no party presented binding case law to the bankruptcy court dictating the answer to this tax determination.  The bankruptcy court made an oral ruling on this issue and the parties vigorously dispute the fundamental premise of the ruling that *all* insurance is excludable from taxable gross income.  On that finding, the bankruptcy court then determined that the indemnification agreement was akin to insurance and that the Main Uber Payment based thereon was analogous to an insurance payment for purposes of the exclusion.

For the reasons set forth below, the Court finds the bankruptcy court erred in excluding the Main Uber Payment from taxable gross income as a form of insurance as a matter of law.[11]

---

acknowledges that bankruptcy courts have considered abstention since section 505 is a discretionary grant as opposed to a mandatory grant.  *See, e.g.*, *Shapiro v. United States (In re Shapiro)*, 188 B.R. 140, 143-44 (Bankr. E.D. Pa. 1995).  This was not an argument presented below and is not an argument that is formally raised in this appeal.  The Court considers abstention waived.

[11]   The appellees assert that the IRS waived any substantive arguments concerning the tax determination, especially since the bankruptcy court determined that "[t]he IRS will have to live with the consequences of its dilatory conduct."  Notably, the IRS does not address its lack of diligence below and concedes that it did not address the merits.  Instead, it argues that "even if a party fails to raise an issue" below, the appellate court "generally will not deem the issue waived" if the lower court "actually considered it."  *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007).  Furthermore, where there is a waiver, a court has discretion to consider "a newly raised issue (1) in the exceptional case where review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when the issue arises while on appeal because of a change in the law, or (3) when the issue is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed."  *WildWest Inst. v. Bull*, 547 F.3d 1162, 1172 (9th Cir. 2008) (internal quotations and citation omitted).

This Court has no basis to disturb the bankruptcy court's finding that the IRS was dilatory.  However, since the question presented here was extensively addressed by the FTB on the same factual record and legal principles, the Court considers arguments advanced by the IRS.  This Court also cannot find a complete waiver because throughout its brief below, the IRS did contest at a minimum that "income tax is based not just on accumulation of income, but also losses, deductions, and credits over a specified period, usually a calendar year."  In this order, the Court finds that the bankruptcy court made an erroneous determination of what constitutes income.

United States District Court
Northern District of California

To begin, the Internal Revenue Code (IRC) defines "gross income" as follows:

> **(a) General definition.** Except as otherwise provided in this subtitle [26 USCS §§ 1 et seq.], gross income means all income from whatever source derived, including (but not limited to) the following items:
>
>> (1) Compensation for services, including fees, commissions, fringe benefits, and similar items;
>> (2) Gross income derived from business;
>> (3) Gains derived from dealings in property;
>> (4) Interest;
>> (5) Rents;
>> (6) Royalties;
>> (7) Dividends;
>> (8) Annuities;
>> (9) Income from life insurance and endowment contracts;
>> (10) Pensions;
>> (11) Income from discharge of indebtedness;
>> (12) Distributive share of partnership gross income;
>> (13) Income in respect of a decedent; and
>> (14) Income from an interest in an estate or trust.
>
> **(b) Cross references.** For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following).

26 U.S.C. § 61(a).[12] The United States Supreme Court has characterized this definition as "broad" with a "sweeping scope." *Comm'r v. Schleier*, 515 U.S. 323, 327 (1995). It has long since been established that "[t]he broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power[.]" *Helvering v. Clifford*, 309 U.S. 331, 334 (1940). Similarly to its broad inclusive scope, "exclusions from income must be narrowly construed." *Schleier*, 515 U.S. at 328 (citation omitted). As demonstrated by the text above, section 61(a) includes "but is not limited to" fourteen categories of sources.

First, section 61(a) itself disproves the premise upon which the bankruptcy court relied, i.e. that all insurance is not deemed taxable. The statutory definition of gross income expressly *in*cludes "[i]ncome from life insurance[.]" 26 U.S.C. § 61(a)(9). While this is not a life insurance

---

To the extent relevant, the IRS' lack of diligence impacts any equities which might weigh on future proceedings.

[12] While separate statutory and regulatory provisions apply to taxes under state law, the FTB asserts that California law follows federal law for purposes of this appeal.

dispute, it appears, given the oral ruling, that the bankruptcy court began an analysis untethered from the code.

Second, section 61(b) provides "Cross References[ f]or items specifically included in gross income, see part II (sec 71 and following).  For items specifically excluded from gross income, see part III (sec 101 and following)." 26 U.S.C. § 61(b).  A review of the cross references demonstrates that certain "amounts received through accident or health insurance . . . for personal injuries or sickness," are excluded from gross income, *subject to additional limitations*.  26 U.S.C. § 104(a)(3); *see also* 26 U.S.C. § 105 (setting forth additional considerations for accident and health insurance payments).  Further, certain insurance payments in connection with damage and destruction of principal residences are excluded from gross, *again subject to further enumerated limitations*.  26 U.S.C. § 123 (a)-(b).  Nowhere does the IRC contain a provision that indicates all insurance is excluded.  Analysis is required to determine whether a specific exclusion applies.

Based upon the transcript of the oral ruling, this Court is unable to conclusively discern why the bankruptcy court presumed that *all* insurance payments are excluded from gross income, especially given that the statutory definition of gross income (including life insurance) is not mentioned at all in the oral ruling.[13]  Indeed, the sole case cited by the bankruptcy court on this

---

[13]  At best, the record suggests in the proceedings below, the debtor asserted that based upon the Main Uber Payment, the "[d]ebtor will have no net increase in wealth, and therefore should not be taxable."  To support this result, the debtor invoked several analogs, including that "the Uber Settlement Payment is akin to an insurance payment from the insurer (Uber) to a third party (Google) for the benefit of the insured (the Debtor), and that payment is not taxable."  In broad terms below, and similarly in this appeal, the debtor asserted that "[i]nsurance payments by companies to third parties on behalf of policyholders in satisfaction of a judgment are not counted as gross income."  To support this proposition, debtor relies upon the following quote from a tax treatise:  "When damages resulting from a taxpayer's tortious behavior are paid by an insurance company, as in the case of an automobile accident caused by the taxpayer's negligence, the payment is not taxed, even though the taxpayer's liability to the victim is thereby discharged." BITTKER & LOKKEN, FEDERAL TAXATION OF INCOME, ESTATES, AND GIFTS ¶ 5.8.1. (Thomson Reuters/Tax & Accounting, 2d/3d ed. 1993-2019, updated March 2022).  However, even that quote contemplates accident claims, which again are expressly addressed by the tax code, and fails to refer to judgments as exists here.  It lends no primary authority to exempt a settlement payment made during a bankruptcy proceeding concerning various rights and obligations under an indemnity agreement.

topic, *AMERCO & Subsidiaries v. Commissioner*, 96 T.C. 18 (1991), concerned "the common ground" rule "that insurance premiums constitute ordinary and necessary business expenses which can be deducted in arriving at taxable income." *AMERCO, Inc. v. Comm'r*, 979 F.2d 162, 164 (9th Cir. 1992) (citing 26 U.S.C. § 162 and Treas. Reg. § 1.162-1(a) (as amended in 1988)).  That means a specific statutory deduction from taxable income was identified for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on trade or business[.]"  26 U.S.C. § 162.[14]  Having reviewed the record, Levandowski did not invoke a business deduction and made no argument why this section of the code would apply to him.  Nor has such provision or implementing regulation been identified on appeal to provide further clarity.[15]

Third, framing the issue in the context of "insurance" under federal common law, which may interpret the meaning of "insurance" for qualifying statutory deductions and exemptions, ignores the statutory definition of "gross income" in the first place.  Here, the debtor argued that he would not have an increase of wealth and should not be taxed.  Indeed, he cited the basic substantive proposition, albeit in a footnote, that taxable income is characterized by "accessions to

---

Further, the bankruptcy court may have believed that the FTB conceded the debtor's point below because the FTB failed to distinguish the treatise citation in its opposition to the tax motion as highlighted by the debtor.  That said, the FTB did repeatedly argue that the payment was taxable and that the debtor failed to carry its burden to demonstrate that a deduction was appropriate in the first instance given the government's broad taxable interests.  The treatise, which is not binding law, is not inconsistent with a mechanical application of the statutory code provisions.

[14]  Throughout this section of the code are special rules for insurance.  *See, e.g.*, 26 U.S.C. § 162(l) (setting special rules for health insurance costs of self-employed individuals).  Again, not a single one of these was identified and there is no basis for this Court to discern where the analysis started.

[15]  Notably, the appellees assert in a footnote that the Tax Agencies waived any challenge to its insurance analogy because they failed to dispute the proposition that all insurance payments are excluded.  This Court has rejected that suggestion as to the FTB.  It also finds that it would be an injustice to permit the debtor to erroneously misstate the law, where both Tax Agencies asserted that the record (which was sealed in part) was insufficiently developed on a condensed timeline to address complex issues, and no legal precedent was identified to support a broad tax determination.  The Court does not imply that the debtor acted in bad faith in order to avoid the tax repercussions.

17

wealth, clearly realized, and over which the taxpayers have complete dominion."  *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955); *but see Moore v. United States*, 36 F.4th 930, 936-938 (9th Cir. 2022) (explaining that the test in *Glenshaw Glass* may not be exhaustive).  No reference was made to any case law or regulations seeking to give further meaning or justification to this test applied to the nuance of the payment here.[16]

Given the broad statutory definition of gross income, cases abound in analyzing whether a particular fund constitutes "gross income."  The appellees also argue that the Tax Order may be affirmed on any of the alternative grounds that the bankruptcy court declined to consider.  While it is true that an appellate court may affirm the decision below on other grounds supported by the record, the Court finds that the briefing here is insufficient and that the record would benefit from further clarification below.  Having chosen to exercise statutory discretion to make a tax determination under section 505, and since this is not a court of first review, the bankruptcy court may consider the statutory definition of gross income and alternative theories in the first instance upon remand.

Here, the bankruptcy court erred in its base premise.  Given that the Tax Order was based on a defective premise, the Tax Order is reversed and remanded for further consideration.  Given possible alternative grounds for the Tax Order, the Court does not vacate it at this juncture and leaves to the bankruptcy court whether it should be.[17]

### D.  WHETHER THE CONFIRMATION ORDER WAS PROPER

The parties agree that the vast majority of the appeal concerning the Confirmation Order

---

[16]  Also lost in the litigation was the factual nuance of the payments themselves.  Throughout these proceedings, there has been substantial reference to the "Main Uber Payment."  However, there were two payments in this case that may have different treatment and tax consequences under the law.  It is unclear to this Court why the second payment to the estate has been omitted from the analysis and whether appellees intend to sweep it into the determination below.  Whether it is material that one payment was to the estate and another payment was between third parties is not before this Court and was not addressed by the bankruptcy court.  No opinion is stated now.  This is stated simply to clarify the record.

[17]  Given this order, the Court does not address whether the indemnity agreement was properly considered insurance.

rises and falls with this Court's decision on the Tax Order.  This is because it is undisputed that the plan did not make any reserves for tax liability and that Levandowski admitted that the plan would not otherwise be feasible if there were any resulting tax liability from the Main Uber Payment.  Since the Court has determined that the tax determination was erroneous as a matter of law and requires remand for further consideration, so too does the Confirmation Order.  On remand, the bankruptcy court will have to reconsider the tax implications and make any necessary modifications to the Confirmation Order to account for any potential tax liabilities that do exist.

Nevertheless, two separate issues are raised in connection with the appeal of the Confirmation Order that do not turn on the Tax Order.  First, the Tax Agencies argue that the discharge injunction violates setoff rights.  Second, the IRS argues that Confirmation Order is improper because the principal purpose of the plan is avoidance of taxes.  Each is addressed in turn.

### 1. Setoff Rights

With respect to the issue of setoff rights, the discharge injunction prohibits Levandowski's creditors from "asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, except as part of the claims resolution process set forth in Section X of this Combined Plan and Disclosure Statement."  No one disputes that a plan cannot be confirmed unless it complies with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  Also not disputed: 11 U.S.C. § 1141 provides for the discharge of the debtor's pre-petition debts after going through bankruptcy and assets retained by the debtor are then free and clear of any pre-petition debts.

According to the Tax Agencies, the discharge injunction issued pursuant to 11 U.S.C. § 1141(d) does not preserve setoff rights under 11 U.S.C. § 553(a) in violation of the Ninth Circuit's pronouncement "that section 553 must take precedence over section 1141."  *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269, 1276 (9th Cir. 1992).  Section 553(a) provides, subject to exceptions that are not raised in these proceedings, that: "this title does not affect any right of a creditor to offset *a mutual debt* owing by such creditor to the debtor that *arose before the commencement of the case* under this title [11 USCS §§ 101 et

United States District Court
Northern District of California

seq.] against a claim of such creditor against the debtor that arose before the commencement of the case[.]" 11 U.S.C. § 553(a) (emphasis supplied).  As the Ninth Circuit has recognized, "[i]f section 1141 were to take precedent over section 553, setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization.  Section 553 would then be largely superfluous, since a setoff could be written into the reorganization plan even without section 553." *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d at 1277.

The Tax Agencies' issue concerning setoff rights as presented is admittedly theoretical and abstract in part because it does not explain any concrete setoff that may be at issue.[18]  The same issue plagued the proceedings below.  As the bankruptcy court noted on the record, "the IRS articulation of that particular argument [concerning setoff] is less than clear to me, and all that Mr. Levandowski says about it in his brief in support of confirmation is that it's not clear what the IRS is concerned about."  Unlike here, no binding authority was provided to the bankruptcy court.  Oral argument also did little to resolve any ambiguity.  In light of the deficient record, the bankruptcy court found "the language in the plan as consistent with the scope of the discharge that Mr. Levandowski's entitled to under Section 1141" and overruled the objection.  However, to the extent the Tax Agencies have any "mutual debts" arising before the commencement of the proceedings, the broad injunctive language preventing that claim from being asserted is contrary to the Ninth Circuit's guidance in *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269 (9th Cir. 1992).  Since the bankruptcy court will need to reconsider the plan in light of the determination of the Tax Order, the bankruptcy court shall reconsider the relevant authority as to the injunction in the first instance.

### 2.  Tax Avoidance

The IRS also asserts that it was error for the bankruptcy court to approve the plan because the principal purpose of the plan is the avoidance of taxes.  It does not dispute that the government

---

[18]  *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269 (9th Cir. 1992) is the sole authority invoked by the Tax Agencies to justify remand.  There, the validity of the injunction was discussed in the context of a live dispute concerning tangible setoff rights.

United States District Court
Northern District of California

bears the burden of proof on tax avoidance, which is a narrow prohibition.  *In re Rath Packing Co.*, 55 B.R. 528, 536 (Bankr. N.D. Iowa 1985) (recognizing that for tax avoidance, the "purpose must be *the* principal purpose of the plan, not merely *a* principal purpose").

In the proceedings below, the bankruptcy court found on the record that it "is simply untrue" that the "principal purpose [of the plan] is the avoidance of taxes" and overruled the IRS's objection.  While the bankruptcy court did not provide further analysis, it is clear that the determination was sound and there is no error.  The IRS failed to cite to or present any admissible evidence and did not provide citation to any law to compel a contrary finding.[19]  The record demonstrates that the settlement, which set forth a detailed and comprehensive plan for confirmation, was the product of arms-length negotiations with a mediator.  The IRS chose to not oppose the settlement even though it had notice and opportunity to do so.  The principal purpose of the plan in light of the global settlement was to resolve contentious litigation (including the largest claim), pay all existing claims equally, and give Levandowski the fresh start contemplated by the Bankruptcy Code.  That the tax determination is erroneous at this juncture does not demonstrate that the principal purpose of the plan was tax avoidance.  The bankruptcy court did not err in this respect.

## IV.   CONCLUSION

For the foregoing reasons, the bankruptcy court erred in making its tax determination and the Tax Order is reversed and remanded for further consideration consistent with this opinion.  To the extent the Confirmation Order was premised upon the Tax Order, the bankruptcy court will have to reconsider the tax implications and make any necessary modifications to the Confirmation Order to account for any potential tax liabilities that do exist.  In reconsidering confirmation, the bankruptcy court shall consider binding authority concerning setoff rights.  The bankruptcy court's initial finding that the primary purpose of the plan is tax avoidance is affirmed.

Accordingly, the Clerk is **DIRECTED** to remand this case to the bankruptcy court for further

---

[19]  For the first time on appeal, the IRS attempts to cite to evidence.  The IRS had the burden to submit evidence to the bankruptcy court below.  To the extent it made a strategic choice not to, it waived the factual issues on appeal.

United States District Court
Northern District of California

proceedings and enter judgment consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 14, 2023

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE